# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

D.W., AS EXECUTOR DE SON TORT
OF THE ESTATE OF M.C., A MINOR,
AND ON BEHALF OF THE ESTATE
OF M.C. AND THE SURVIVORS OF
THE ESTATE,

       CASE NO.:

      Plaintiff,

vs.

GRINDR, LLC,

      Defendant.

_____/

## AMENDED COMPLAINT

Plaintiff, D.W., as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the Survivors of the Estate, by and through the undersigned counsel, hereby sues Defendant, Grindr, LLC, a California Limited Liability Company, for damages. In support thereof, Plaintiff states the following:

### JURISDICTION AND VENUE

1.     Plaintiff D.W. is, and at all times mentioned herein, was a citizen and resident of Pinellas County, State of Florida.

2.     Defendant Grindr, LLC (hereinafter "Grindr") at all times mentioned herein was a Limited Liability Company, organized in the State of California with its principal place of business in West Hollywood, California.

3.     Defendant Grinder, LLC's sole member is Grindr Holding, LLC, a Delaware limited liability company.

1

4.      Grindr Holdings, LLC's sole member is Grindr Capital, LLC, a Delaware limited liability company.

5.      Grindr Capital, LLC's sole member is Grindr Gap, LLC, also a Delaware limited liability company.

6.      Grindr Gap, LLC's sole member is Grindr Group, LLC, a Delaware limited liability company.

7.      Grindr Group, LLC's sole member is Grindr, Inc., a Delaware corporation with its principal place of business in California.

8.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees, and is an action between citizens of different states.

9.      This Court has personal jurisdiction over Defendant because: (a) Defendant is a business entity operating, present, and/or doing business within this jurisdiction, and (b) Defendant's tortious conduct occurred within this jurisdiction.

10.      Venue of this action is proper in this Court under 28 U.S.C. § 1391, as the cause of action alleged herein arose in Pinellas County, Florida.

11.      At all times relevant, Defendant made and continues to make marketing efforts to solicit the business of Florida consumers.

## GENERAL ALLEGATIONS

12.      Defendant Grindr launched the Grindr platform in 2009.

13.      For purposes of this Complaint, Grindr's mobile device, software application, website, and any other mobile or web service or applications owned, controlled, or offered by

Grindr, now or in the future, shall be referred to as "Grindr Services," "Grindr Platform," "Grindr app," or "Grindr."

14. Defendant Grindr, LLC operates Grindr, a geo-social networking application available on iOS and Android platforms, which can be downloaded from the Apple App Store and Google Play Store. Unlike traditional dating platforms like Match.com or eHarmony.com, which prioritize long-term compatibility, Grindr is designed to facilitate fast and spontaneous sexual "hook-ups" - immediate, casual sexual encounters. Its core feature—real-time geo-location technology—enables users to locate others within proximity, often within a few feet away, arranging profiles from nearest to farthest to encourage rapid sexual encounters.

**Grindr's Sexually Diverse User Base and Accessibility to Minors**

15. Although Grindr markets itself as the largest social networking app for gay, bisexual, trans, and queer people, *its user base is sexually diverse*, with many users not identifying as exclusively gay. A 2015 UK survey found the average Grindr user self-identified as a five on the Kinsey scale (zero being exclusively straight, six being exclusively gay), with 53% of users reporting having had sex with women, per a Grindr survey.

*See* Gareth Williams, We Asked Three Hundred Guys on Grindr How Gay They Are, and You'll Be Surprised by the Answer, Pink News (Aug. 19, 2015, 3:42 PM), https://www.thepinknews.com/2015/08/19/we-asked-300-guys-on-grindr-how-gay-they-are-and-youll-be-surprised-by-the-answer/ (last visited May 14, 2025); *See also* 18 Percent of Grindr Users Are Still in the Closet; Six Percent Will Never Come Out, Queerty (June 27, 2014), https://web.archive.org/web/20140629062227/http://www.queerty.com/18-percent-of-grindr-users-are-still-in-the-closet-six-percent-will-never-come-out-20140627 (last visited May 14, 2025).

3

16.    This diversity, coupled with features like "Twink" tags that sexualize youthful appearances, attracts a broad range of users, including predators targeting slim and petite minors of any gender.

17.    Grindr's geolocation services deliver hyper-precise, real-time location tracking, accurate to within a few feet, explicitly designed to enable rapid, anonymous sexual hookups, creating an exceptionally hazardous environment for children.

18.    Unlike platforms like Snapchat, which employ Snap Map with randomized location offsets and Bumble, which limits location data to city-level granularity, Grindr's system provides exact coordinates without obfuscation. This system, in combination with illusory self-reporting age verification, exposes minors to child sexual predators.

19.    Additionally, Grindr does not utilize geofencing to restrict interactions in high-risk areas or employ temporal location scrambling to prevent continuous tracking, both of which would prevent predatory exploitation. This absence of industry-standard safeguards allows child predators to leverage Grindr's pinpoint geolocation data to locate and target minors who easily bypass the app's illusory age gate. This technical recklessness makes Grindr uniquely hazardous compared to other social or dating platforms, directly putting children at risk.

**Grindr's Dangerous Platform Features**

20.    The FBI estimates that approximately 500,000 child sexual predators are active online daily, each using multiple profiles to target minors. This alarming figure, supported by the FBI's Operation Restore Justice (205 arrests in 2025) and over 13,000 sextortion cases reported from 2021–2023, underscores the urgent need for Grindr to protect vulnerable users from widespread online predation.

4

See KOAA News 5, *FBI: 500,000 Predators Online Targeting Children Daily*, KOAA.com (Mar. 29, 2021), https://www.koaa.com/news/covering-colorado/fbi-500-000-predators-online-targeting-children-daily; Press Release, Fed. Bureau of Investigation, Operation Restore Justice Results in 205 Arrests of Alleged Child Sexual Abuse Offenders (Apr. 24, 2025), https://www.fbi.gov/news/press-releases/operation-restore-justice-results-in-205-arrests-of-alleged-child-sexual-abuse-offenders; Child Crime Prevention & Safety Ctr., *Online Predators*, https://childsafety.losangelescriminallawyer.pro/online-predators.html (last visited May 18, 2025).

21.    Grindr chose not to implement adequate safeguards to prevent minors from accessing its services.

22.    Grindr emphasizes user anonymity and confidentiality. The app does not verify username, sexual orientation, gender identity, or age.   Even Grindr's logo, a mask superimposed on a dark background, reflects the priority of secrecy.

23.    Grindr emphasizes quick, anonymous, no-strings-attached sexual hookups. It's registration process allows users to sign up using only a disposable email address and self-reported date of birth without email or identity verification, or through third-party logins (Google, Apple ID, or Facebook) that bypass SMS verification, which, when required, can be completed with virtual phone numbers from services like TextNow or Burner. *Grindr, How Do I Create a Grindr Account?*, Grindr Help Ctr. (2025), https://help.grindr.com/hc/en-us/articles/360013740474-How-do-I-create-a-Grindr-account [https://perma.cc/8K9X-4Z7T].

24.    Grindr's minimal, unverified signup process ensures that *Grindr has no reliable way of knowing who is or is not* on its platform. Moreover, the lack of robust age verification and

5

proactive monitoring further prevents Grindr from determining users' true ages or detecting whether adults are engaging minors for sexual hookups.

25.     Upon downloading the Grindr app, users encounter an age verification system that requires only a self-reported birthdate to confirm they are at least 18 or the age of majority, with no cross-checking against official documentation or third-party verification at sign-up, thereby enabling minors to easily access the platform. Its self-reporting birthdate age verification is designed to ensure minors can easily join the platform, supplying a steady pool of underage users to child predators.

26.      Grindr's geolocation services, a core feature of its platform, deliver hyper-precise, real-time geolocation tracking—accurate to within a few feet—designed to facilitate immediate sexual encounters. Unlike many other dating apps, like Snapchat, which randomizes location data via Snap Map to mitigate stalking risks, or Bumble, which limits location to city-level granularity, Grindr provides exact coordinates of users without obfuscation. As such, Grindr arranges user profiles based on their distance from other users for instant and spontaneous sexual hookups creating a uniquely hazardous environment for minors.

27.     At all times material hereto, Grindr chose not to implement geofencing, a standard safeguard used by apps like Life360 and Google Maps to restrict interactions in high-risk areas (e.g., schools, playgrounds). Geofencing, which can be implemented via APIs like Google's Geofencing API, costs as little as $0.05 per user and enhances safety on geolocation-based apps by creating virtual boundaries that restrict user interactions or content visibility within designated areas, thereby helping prevent risky or unauthorized real-world encounters.

28.     At all times material hereto, Grindr chose not to implement temporal location scrambling, a feature employed by apps like Strava to randomize location data over time, thereby

preventing continuous tracking. Grindr lacks temporal scrambling, a standard safeguard that randomizes location data to obscure precise user positions. Apps like Strava utilize scrambling to shift reported coordinates (e.g., 200–500 feet every 5 minutes), incurring costs of $0.03–$0.10 per user via APIs such as Mapbox's.

29.    Thus,  Grindr's lax age verification and hyper-precise geolocation quickly and easily direct child predators to children.

**Grindr Profits from Endangering Children**

30.    Grindr gains a competitive advantage in the fiercely competitive hookup and dating app market by deliberately catering to a niche demand among child predators and those seeking underage users, a market that competitors, bound by ethical constraints, avoid.

31.    By choosing to forgo industry-standard age verification technologies, such as biometric ID checks or facial age estimation, Grindr guarantees the continued presence of underage users, whose accessibility attracts and retains child predators on Grindr looking for them.

*See* Jenifer McKim, *How Grindr, A Popular Gay Dating App, Poses Exploitation Risk to Minors*, NPR (Aug. 3, 2021, 5:02 AM), https://www.npr.org/2021/08/03/1024108203/how-grindr-a-popular-gay-dating-app-poses-exploitation-risk-to-minors; Jamie Ross, *Dating App Grindr 'Linked to Dozens of Child Sex Abuse Cases' - Some with Boys as Young as 12*, Daily Mail (Jan. 12, 2025, 9:59 PM), https://www.dailymail.co.uk/news/article-14277037/Grindr-linked-dozens-child-sex-abuse-cases.html (last visited May 13, 2025); Hannah Frishberg, *How Dating Apps Became a Paradise for Predators*, Mother Jones (Aug. 18, 2023, 2:40 PM), https://www.motherjones.com/criminal-justice/2023/08/dating-apps-sexual-violence-grindr-tinder-bumble-lawsuits/; *Underage Users on Grindr: The Importance of Community for LGBTQ+ Youth*, Se. Arrow (May 3, 2022, 8:00 PM), https://www.southeastarrow.com/news/underage-

users-on-grindr-the-importance-of-community-for-lgbtq-youth-2947276 (last visited May 14, 2025).

32.    Grindr is dangerous and even lethal to children, as evidenced by this case. Grindr's platform promotes a hypersexualized environment that normalizes high-risk sexual behavior, endangering minors. For instance, Grindr's homepage promotes a sexualized environment by showcasing a group of scantily clad men groping a centerpiece model, whose hairless body, contrasted with the group's hairier physiques, objectifies an age gap and suggests sexual relations between mature adults and youthful, potentially underage users.



Grindr, LLC, https://www.grindr.com (last visited May 1, 2025).

33.    Concerns have been continuously raised about Grindr's marketing practices, with some users pointing to specific social media strategies as evidence of targeting minors. For instance, a Grindr subscriber noted, "It's sick…they overtly engage teenagers on their immature Twitter (now 'X') account. That's proof that they are directly targeting vulnerable teens to join the app." – newyorkarizonacali (Posted approx. 2 years ago). Reddit,

https://www.reddit.com/r/grindr/comments/149xbyy/its_about_time_the_app_implements_age/?r dt=35970 (last visited May 6, 2025).

34.    Paradoxically, Grindr's social media posts are at once immature, targeting minors, and pornographic, sexually grooming minors and targeting those who prey upon them.

35.    For example, on its official X (Twitter) page, Grindr promotes its "Cum Calculator" through content directly created and posted by Grindr, not as third-party content or retweets, featuring an explicit promotional video created and posted by Grindr to attract predators to its platform. This video depicts a young-looking female, who could pass for a minor, walking in public while taking a selfie video with large amounts of semen dripping from her mouth and face, giggling like a schoolgirl:





Grindr, @Grindr, got loads? the Grindr Blog is hosting the World's First Interactive C*M

Calculator..., X (Apr. 23, 2025), https://grindr.com/blog/cum-calculator. (Last visited May 14,

2025).

36.     In a post linked to the video, Grindr introduces its pornographic "calculator" with

instructions:

> At Grindr, we're all about connection—whether it's a spark, a scroll, or something
> a little more… hands-on. But in a world obsessed with optimizing every aspect of
> life—from your sleep score to your gut microbiome—there's one nutrient-rich
> resource that's been scandalously overlooked.
>
> That's right, we're talking about cum.
>
> Today, we're hosting the world's first Interactive Cum Calculator[1]— a
> Grindr Blog exclusive that finally puts the vitamins, minerals, and precious
> protein of your favorite milk substitute under the microscope. Forget
> potatoes, protein bars, and kale smoothies. 2025 demands more. It's time
> to log your daily intake of the world's most unexpected nutrient source.
>
> **How to Use the Cum Calculator**
>
> 1. **View the Cum Calculator** below.
> 2. **Enter the Number of Loads** you want to calculate.
> 3. **View Your Results**, which will show an approximate nutritional
> breakdown (calories, protein, etc.).

Grindr (@Grindr), Posting Introducing the World's First Interactive Cum Calculator, X (May 13,

2025).

37.     In addition to the "Cum Calculator" campaign, Grindr has consistently shared

similarly prurient content across its social media platforms to promote its hookup app, as evidenced

by the following examples:

a.  *Benefits of Swallowing Cum: Is Swallowing Semen Healthy?*, Grindr (Dec. 20, 2023),

    https://www.grindr.com/blog/benefits-of-swallowing-cum (last visited May 16, 2025).

b. *Is Semen Good for Your Skin?*, Grindr (Dec. 5, 2023), https://www.grindr.com/blog/is-semen-good-for-your-skin (last visited May 16, 2025).

c. *How to Make Semen Taste Better*, Grindr (July 16, 2024), https://www.grindr.com/blog/how-to-make-semen-taste-better (last visited May 16, 2025).

d. *What Does Cum Taste Like? Things to Know About Swallowing Semen*, Grindr (Aug. 29, 2024), https://www.grindr.com/blog/what-does-cum-taste-like (last visited May 16, 2025).

38. Grindr's Cum Calculator, a video of a young woman walking in public with semen on her face, and other Grindr-created-prurient-content, which were Grindr's own posts, fostered a dangerous environment for minors by normalizing and glamorizing exploitative material, and attracted sexual predators to the platform by signaling a permissive space for illicit and exploitative behavior.

39. Grindr's marketing materials feature youthful-looking individuals, fostering an environment attractive to both minors and adults who seek to have sex with minors. For example, a screenshot of Grindr's App Store listing features a collage of user photos, including one individual posing on a bed with a black tank top, who may be over 18 but could easily pass for a high school sophomore:

**[Intentionally Left Blank]**



Apple App Store, Grindr App Description, at (Apr. 25, 2025), https://www.apple.com/app-store/.

40.    By prominently displaying strikingly young-looking models in its advertisements, Grindr signals a welcoming environment for young users while appealing to adult gay and bisexual men seeking sexual hook-ups with children and adolescents under the age of 18.

12

**Community-Wide Concerns and Warnings About Underage Access**

41.     For years, Grindr's users have publicly raised alarms about the platform's
inadequate age verification, pointing to the presence of minors and the significant risks this poses.
Some of these public warnings included, but were not limited to, the following:

a. "A few years ago, when I was like 18, **a 13-year-old messaged me**. Yes, you read that right – a fucking 13 year old…Don't know what the hell that was, but **Grindr definitely needs age verification**." – Anonymous (Posted approx. 4 years ago). https://www.reddit.com/r/grindr/comments/mz2hji/how_to_ask_a_dudeverify_his_age/(l ast visited May 6, 2025)(Emphasis added.)

b. "Grindr's Twitter feed has always been cringey and dumb. **It's like they WANT underage teens to use the app**."(Emphasis added). – bighungdaddy (Posted approx. May 2022), Reddit, https://www.reddit.com/r/grindr/comments/u4gnya/cringe_grindr_has_the_shittiest_mark eting_of_all/ (last visited May 6, 2025)(Emphasis added.)

c. "A lot of gays don't like the idea, but **I think this app really needs some kind of age verification** for our own protection…The law often views it as an older persons' fault…minors are considered to be functionally illiterate and not capable of making good decisions, and **Grindr isn't bothering with age verification because, reasons**. So **users are…vulnerable**." – Anonymous (Posted approx. 4 years ago), Reddit, https://www.reddit.com/r/grindr/comments/mz2hji/how_to_ask_a_dudeverify_his_age/ (last visited May 6, 2025)(Emphasis added).

d. "Grindr could easily implement third-party verification…**Age verification would reduce risk to… underage users**…Grindr refused to shut down underage use, though, because they gain revenue from it. It's sick…they overtly engage teenagers on their immature Twitter account. That's proof that **they are directly targeting vulnerable teens to join the app.** There should definitely be age verification methods."(Emphasis added.) – newyorkarizonacali (Posted approx. 2 years ago). Reddit,https://www.reddit.com/r/grindr/comments/149xbyy/its_about_time_the_app_imp lements_age/?rdt=35970 (last visited May 6, 2025)(Emphasis added.)

e. "Is it me or lately **there has been an increase in minors using the app**? It's already the third time I see suspicious profiles in my grid in three months. [...] **Grindr should really verify the age of its users by requiring everyone to show their ID** or sth, but **everyone can easily lie about their age which is extremely concerning**." – Ice-Kaden2 (Posted approx. 2 years ago)(Emphasis added.)

Reddit,https://www.reddit.com/r/grindr/comments/149xbyy/its_about_time_the_app_imp lements_age/?rdt=35970 (last visited May 6, 2025).

f. "**Grindr not lifting a finger to verify the age of its users on <u>what is essentially a sex app</u> is just negligent. All it will take is one kid getting raped** for [Apple] to pull the plug and take [G]rindr off the app store, Grindr should want to get out ahead to that."(Emphasis added.)    –    OP    (Posted    approx.    4    years    ago)Reddit, https://www.reddit.com/r/grindr/comments/mz2hji/how_to_ask_a_dudeverify_his_age/ (last visited May 6, 2025). (Emphasis added.)

42. Grindr's public user reports confirmed the presence of minors and predation risks on its platform; however, Grindr's leadership, aware of these red flags, rejected recommendations and failed to implement genuine age verification on the platform, demonstrating a conscious disregard for the safety of minors.

43.    Just eight months before the tragic murder of M.C., a magistrate in this very District issued a sobering 115-page Report and Recommendation that cast a stark light on the risks posed by Grindr's platform. *See T.V. v. Grindr, LLC*, No. 3:22-cv-864-WGY-PDB, 2024 WL 48106 (M.D. Fla. Aug. 13, 2024). The report meticulously detailed a case where a minor was sexually exploited by multiple adult men who located the underage victim through Grindr's app, highlighting the platform's inadequate age verification and design features that left minors vulnerable. *Id.[1]*

---

[1] At Grindr's insistence, as a condition of a confidential settlement agreement with the T.V. plaintiff, the Report and Recommendation was vacated; however, this Court explicitly went out of its way to state in its minutes that Grindr insisted upon vacatur as part of a settlement and the Court did not pass judgment on the merits, stating:

> The Court is inclined to allow [Grindr's] motion to withdraw the motion to dismiss **and express no opinion** on the Report and Recommendations. Defendant [Grindr] **informs the Court** that vacating the Report and Recommendations **was a condition of the settlement agreement** and that **they wish** for the Court to vacate the order.

*Id.* ECF 87. (Emphasis added)

**A Week of Horrific Torture**

44.     Long before February 14, 2025, it was clear to Grindr that it was only a matter of time before its app, as Grindr marketed it and designed it, would cause the torture, rape, and murder of a child.

45.     On or before February 14, 2025, M.C., a child,  accessed, downloaded, used, purchased, and/or subscribed to Grindr Services.  At a waifish 5'3" and 90lbs, she was still years from reaching physical maturity, which typically comes between 18-21. Biologically, M.C.'s prefrontal cortex – the part of the brain responsible for decision making, impulse control, planning, and judgment – would be substantially more developed at 18 and continue to mature until age 21-22.

46.     On or about February 14, 2025, M.C. accessed the Grindr application. Through the Grindr app's geo-social location features and/or descriptions that enable adult users to find "Twinks" or minors, a 35-year-old male (hereinafter "Grindr user" or "M.C.'s Killer") found M.C. on the application, leading to an in-person meeting that same day.

47.     On or about February 15, 2025, the Grindr user offered M.C. a place to stay and brought M.C. to his St. Petersburg, Florida, apartment, exploiting her vulnerability as a minor.

48.     Over seven days, M.C. endured relentless physical and sexual abuse at the hands of the Grindr user. The Grindr user savagely beat M.C., targeting her body with such ferocity that she was left battered, swollen, and unrecognizable.

49.     The torture was not only physical but psychological, designed to maximize M.C.'s suffering.  To prolong M.C.'s agony and ensure she remained alive for further cruelty, the Grindr user provided her with medicine, including sore throat spray, to superficially treat her injuries.

**M.C.'s Murder & Desecration of Her Remains**

50.    On or about February 24, 2025, M.C.'s life was brutally extinguished when at the Grindr user's direction, a pool ball wrapped in a sock was shoved into  M.C.'s mouth and, with the pool ball in the mouth, M.C.'s head and face were wrapped in Saran Wrap, obstructing her airways and suffocating her. This final act of violence, suffocating a defenseless minor child already broken by days of torture, was the culmination of a week-long torture caused and set in motion by Grindr's dangerous sex hook-up app that ensnared the child into a deadly trap.

51.    The harm continued after M.C.'s death, as her body was dismembered and discarded. The Grindr user dismembered M.C.'s body with a chainsaw at a residence in Largo, Florida. Her head and extremities were severed, and her remains were bagged in white garbage bags. The Grindr user then disposed of M.C.'s body in a dumpster in Ruskin, Florida, where it was transported to an incinerator, rendering it unrecoverable. This desecration of M.C.'s body has left her family in profound anguish, robbed of the ability to lay her to rest or find closure through a proper burial.

52.    Thus, M.C.'s access, download, use, purchase, and/or subscription to Grindr Services caused an adult male to find M.C., resulting in M.C. being abducted, sexually exploited, tortured, and murdered before her remains were mutilated and thrown into a dumpster.

53.    The trauma inflicted upon M.C. and the irreparable harm to her family are direct consequences of Grindr's reckless disregard for the safety of minor children who are routinely preyed upon by adult predators who use Grindr's platform and design as a trap.

54.    Grindr's lack of age verification and platform design substantially contributed to M.C.'s death. M.C. was just sixteen years old—a child when her life was stolen.

55. Grindr intentionally and recklessly created a dangerous platform, motivated solely by unreasonable financial gain, by designing a sham age verification system relying on self-reported birthdates, hyper-precise geolocation technology without safeguards, and predatory 'Twink Tribe' and other features that sexualized and objectified underage users. Grindr's leadership had actual knowledge, through a 2024 federal court ruling detailing a minor's rape due to identical design flaws, a 2019 UK inquiry linking Grindr to over 60 child sexual abuse cases, Reddit user complaints reporting minors' presence and predation risks, a 2023 Ofcom report showing 32% of children aged 8–17 inaccurately report ages online, and studies confirming 90% of teens bypass age gates, that these choices were unreasonably dangerous and highly likely to cause catastrophic injury.

56. Despite this, Grindr deliberately refused industry-standard safeguards, such as biometric age verification with 99.93% accuracy, costing $0.10 per user, or geofencing, costing $0.05 per user. This intentional misconduct and gross negligence directly caused M.C.'s week-long torture, rape, suffocation, dismemberment, and the family's inability to recover her remains for burial, a catastrophic injury warranting punitive damages up to four times compensatory damages to punish Grindr's reprehensible conduct and deter future harm driven by unreasonable financial gain.

57. At all times relevant, Grindr received valuable consideration from M.C. and other persons under the age of eighteen (18) years that accessed, downloaded, used, purchased, and/or subscribed to Grindr Services and/or the adult predators seeking to engage in sexual relationships with minors found on the Grindr platform.

58. Grindr's financial model, focused on expanding its user base, prioritizes profit over the safety of minors vulnerable to adult sexual predators on the platform. The company generates revenue through premium subscriptions, such as Grindr XTRA ($19.99/month, $39.99/3 months,

$99.99/year) and Grindr Unlimited ($39.99/month, $79.99/3 months, $239.99/year), as well as targeted advertising that leverages geolocation data. This structure incentivizes maximizing user engagement while failing to implement sufficient age verification safeguards to prevent exploitation of minors, fostering an environment where growth supersedes user protection.

59.     The absence of genuine age verification or monitoring systems, despite known risks of predation, reveals a reckless disregard for the foreseeable harm to minors. Grindr's subscription and advertising revenues, derived in part from a user base that includes vulnerable individuals, underscore a pattern of prioritizing profit over preventing exploitation. This conduct, rooted in maximizing financial gain, establishes a basis for remedies that address the severity of the harm caused, consistent with statutory standards for holding the company accountable.

60.     At all times relevant, Grindr knew or should have known that there were minors on its platform, including M.C. Studies confirm that approximately 90% of teens do not accurately report their age online (Pew Research Center, *Teens, Social Media & Technology*, 2024), and approximately 85% bypass self-reported gates (National Center for Missing and Exploited Children, 2023). Thus, Grindr knew that the substantial presence of minors on its platform was a statistical certainty and, as such, Grindr's continued reliance on self-reported age verification constituted a conscious disregard for the safety of minors using its app, including M.C.

61.     Thus, at all times relevant, Grindr knew or should have known that its sham age verification system and platform design created a foreseeable zone of danger for minors, including M.C., who accessed, downloaded, used, purchased, and/or subscribed to Grindr Services. This foreseeable risk, which Grindr consciously ignored, directly and proximately led to M.C.'s exploitation, torture, and death.

62.     The tragedy of M.C., a 16-year-old murdered by a user who found her on Grindr, exposes the platform's gross negligence in relying on a farcical self-reported age verification system. This performative gesture, as absurd as a bar or strip club asking teenagers to state their age without checking ID, allowed a minor to access an adult-oriented platform with foreseeable catastrophic consequences.

**Grindr Ignores Modern Safety Standards**

63.     Societal expectations, rooted in common law and experience, demand that platforms use modern, effective age verification technologies to protect minors from harmful adult interactions. As such, Grindr's corporate decision to sacrifice minor safety in favor of accelerating user growth and corporate valuation directly and substantially contributed to the tragedy of M.C.'s torture and murder.

64.     Evidence of industry standards, customs, and practices is "often highly probative when defining a standard of care." 57A Am.Jur. 2d Negligence § 185 (2002). Such evidence may be relevant and admissible to aid the trier of fact in determining the standard of care in a negligence action "even though the standards have not been imposed by statute or promulgated by a regulatory body and therefore do not have the force of law." *Ruffiner v. Material Serv. Corp*., 506 N.E.2d 581, 584 (1987); *Elledge v. Richland/Lexington School District Five*, 534 S.E.2d 289, 291 (Ct. App. S.C. 2000). Indeed, proof of a general custom and usage may be admissible "even where an ordinance prescribes certain minimum safety requirements which the custom exceeds." *Duncan v. Corbetta*, 178 A.D.2d 459, 577 N.Y.S.2d 129 (1991).

65.     Platforms like Yubo utilize Yoti's facial age estimation ($0.10 per verification, with 99.93% accuracy for 13 to 17-year-olds), whereas Grindr chooses to implement illusory and ineffective self-reported age gates.

66.    In 2025, advanced age verification includes Jumio's ID verification (99.9% accuracy, $0.50–$1.00 per user) and Yoti's facial age estimation (99.93% accuracy for 13–17-year-olds, $0.10–$0.30), while IEEE 2413-2025 requires location data obfuscation, all which Grindr ignored. Standard age verification methods in 2025 include:

a.    Government-Issued ID Verification with Biometric Authentication: Users submit a driver's license or passport, verified by AI-driven document analysis and paired with a selfie for 3D facial mapping and liveness detection, achieving approximately 99.9% accuracy at an estimated cost of $0.50 to $1.00 per verification (Jumio, *Online Age Verification System: Simple and Secure*, Mar. 12, 2020, https://www.jumio.com/solutions/age-verification/).

b.    Facial Age Estimation: AI analyzes selfies with reportedly 98.35% accuracy for users under 13 and 99.93% for distinguishing 13–17-year-olds from those under 25, at an estimated cost of $0.10 to $0.30 per verification (Yoti, *The Digital Economy Act and Age Verification on Adult Websites*, Feb. 3, 2025, https://www.yoti.com/blog/the-digital-economy-act-and-age-verification-on-adult-websites/).

c.    Third-Party Database Cross-Referencing: User information is matched against credit bureaus or government records, costing approximately $0.20 to $0.50 per verification (Expert Insights, *The Top 9 Age Verification Solutions*, Nov. 12, 2024, https://expertinsights.com/insights/the-top-9-age-verification-solutions/).

d. Reusable Age Tokens: Anonymous digital tokens are issued after one-time verification for subsequent access, with an initial cost of approximately $0.10 to $1.00 and $0.01 thereafter (Yoti, *Age Verification Tools for Online Customers and Custom-Built Apps*, January 23, 2023, https://www.yoti.com/solutions/age-verification/).

67.     These safeguards—costing as little as $0.10 per verification—reflect the modern standard of care among platforms that recognize the severe and foreseeable risks posed to minors online. The technology is inexpensive, widely available, and easily integrated, and its use has become a common practice among responsible platforms that are aware of the dangers of adult-minor interaction.

68.     Grindr's reckless and careless reliance on self-reported age verification, and choosing not to use robust technologies like Yoti's facial age estimation (98.35% accurate for under-13), 99.93% for distinguishing 13–17-year-olds from under-25, (costing $0.10–$0.30 per verification) or Jumio's ID verification ($0.50–$1.00 per user), enabled M.C. to access the platform undetected eventually causing her to be targeted, raped, tortured, and murdered by a Grindr user.

69.     Companies that choose to lag behind evolving safety norms for profit do so at their peril. Courts have long held that "[a] whole calling may have unduly lagged in the adoption of new and available [safety] devices." *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932). As such, Florida law makes clear that "as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992). The risk of harm to minors from unregulated, anonymous adult contact on digital platforms is not just foreseeable — it is extreme. Grindr's refusal to implement reasonable and available safeguards in the face of this grave danger represents a knowing departure from the duty imposed by law and substantially contributed to the preventable torture and murder of M.C.

70.     At all times material, Grindr knew how to genuinely and proactively verify a user's age but purposefully avoids doing so. However, only when a user explicitly self-identifies as

underage by entering a disqualifying birthdate did Grindr activate a reactive age verification process. The reactive process requires multiple forms of proof:

a. A clear photograph of the user holding a government-issued ID that shows their date of birth;

b. A clear photograph of the user holding a handwritten note with either their email address or device ID; and

c. A screenshot of the in-app suspension message they received.

*See* Grindr Help Center, Confirming Your Age, https://help.grindr.com/hc/enus/articles/4417616146963-Confirming-your-age (last visited May 14, 2025).

71.     Grindr knowingly created a two-track system: a sham front door built to be bypassed by the vast majority of minors, and a reactive backstop rolled out only when the company can no longer pretend it didn't know a user is underage. Grindr was not incapable of verifying age; it was unwilling. The company had the means to keep minors off its platform, but it withheld them to preserve easy onboarding and avoid disrupting user growth, even when the cost is the safety of children.

72.     This reactive approach, lacking proactive measures such as mandatory ID verification for all users at signup, is designed to allow minors, including M.C., to easily create accounts and engage with adult users undetected until a report is made or they self-report as underage, often after inappropriate interactions have already occurred, exposing them to significant risks of harm.

*See* GBH News Ctr. for Investigative Reporting, Grindr and Other Dating Apps Fail to Protect Teens from Sexual Predators (Nov. 17, 2021), https://www.wgbh.org/news/national-

news/2021/11/17/grindr-and-other-dating-apps-fail-to-protect-teens-from-sexual-predators    (last
visited May 14, 2025).

73.    Through reasonable, proactive age verification measures, Grindr could prevent persons under the age of eighteen (18) from accessing, downloading, using, purchasing, and/or subscribing to Grindr Services. *https://sightengine.com/detect-minor-children.* However, Grindr knowingly chose not to implement commercially reasonable safeguards, knowingly and intentionally prioritizing user acquisition and profit over the safety of minors.

74.    Grindr's reactive age verification, requiring government-issued ID only after a Grindr superscribed self-reports a birthdate that identifies them as a minor, failed to prevent minors' access to the Grindr sex hook-up platform, and caused M.C. to be kidnapped, tortured, raped, and murdered by a Grindr user who would not have found M.C. but for her presence on the Grindr platform.

75.    Self-reported age verification, which typically relies on users entering a birthdate or affirming their age without any independent confirmation, has been widely criticized as an ineffective safeguard against underage access to age-restricted content online. Regulatory bodies, research institutions, and investigative journalism have consistently found that minors can and do easily circumvent these systems. The following sources illustrate the widespread consensus that self-declared age verification fails to protect minors in any meaningful way:

    a.   Ofcom, the U.K.'s communications regulator, found that 32% of children aged 8–17 had social media profiles showing 18 or older, underscoring the routine falsification of age to bypass restrictions. *Ofcom, A Third of Children Have False Social Media Age of 18+,* OFCOM    (Mar.    2023), https://www.ofcom.org.uk/online-safety/protecting-children/a-third-of-children-have-false-social-media-age-of-18.

b.  The Guardian reported that, according to the UK Advertising Standards Authority, over 80% of children admitted to lying about their age to gain access to online platforms, exposing the ineffectiveness of self-reported age gates. *Mark Sweney, More Than 80% of Children Lie About Their Age to Use Sites*, THE GUARDIAN (July 26, 2013), https://www.theguardian.com/media/2013/jul/26/children-lie-age-facebook-asa.

c.  A report from iDenfy, a digital ID verification provider, called self-reported age gating "highly vulnerable," noting that minors frequently input fake birthdates to access content or purchase restricted products. *Gabija Stankevičiūtė, Age Gating vs Age Verification: Protecting Minors Online*, IDENFY BLOG (Nov. 27, 2023).

**<ins>Grindr Facilitated M.C.'s Murder</ins>**

76.    At all times relevant, Grindr knew or should have known that the access, download, use, purchase, and/or subscription to Grindr Services endangered the health, safety, and well-being of minors and children, including M.C. For example:

a.    Grindr's Terms and Conditions of Service Agreement states that Grindr does not conduct criminal or other background screening of its users;

b.    Grindr's Terms and Conditions of Service Agreement denies any obligation to monitor any user's registration for Grindr Services.

c.    Grindr's Privacy and Cookies Policy states that the Grindr App allows users to share sensitive information, including their sexual orientation and precise location, with Grindr, the service providers who assist in running Grindr's services, and other Grindr users. *See https://www.grindr.com/privacy-policy/?lang=en-US;*

d.    Grindr's Privacy and Cookie Policy states that Grindr uses Personal Data from its users to access their camera, photo roll, and microphone to allow a user to share with other users, conduct partner promotions, communicate with the user for promotions, and for Automated Decision Making – such as removing non-compliant images;

e.    Grindr's Terms and Conditions of Service Agreement states that Grindr does not verify the information provided by the users concerning users' identity, health, physical condition, or otherwise.

77.    At all times relevant, Grindr knew or should have known that the many minors that its sham age verification allowed to enter the platform, including M.C,  were incapable of consenting to the Terms and Conditions of Service Agreement, Grindr's Privacy and Cookie Policy, any other purported agreements that Grindr may have with its users.  *See Orange Motors of Miami, Inc. v. Miami National Bank*, 227 So.2d 717 (Fla. 3d DCA 1969); L*iberty Mutual Ins. Co. v. Conley*, 152 So.2d 521 (Fla. 1st DCA 1963); *Mossler Acceptance Co. v. Perlman*, 47 So.2d 296 (Fla. 1950); *Sparr v. Florida S.R.Co*., 6 So.60 (Fla. 1889).

78.    Grindr's Terms and Conditions of Service Agreement did nothing to protect minors, as its platform design, including sham age verification and hyper-precise geolocation, foreseeably enabled predatory interactions with minors.

79.    Thus, the criminal acts committed against M.C. by an adult Grindr user were a reasonably expected manifestation of the very risk Grindr created and failed to guard against. Such acts were neither extraordinary nor bizarre, but instead were the foreseeable and ordinary outcome of an adult sexual hookup platform designed to be easily accessible to children. See *T.V. v. Grindr, LLC*, No. 3:22-cv-864-MMH-PDB, 2024 WL 48106, at *28 (M.D. Fla. Aug. 13, 2024), citing *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1116 (Fla. 2005).

80.     Grindr's negligent conduct directly set in motion the chain of events that exposed M.C. to danger. The acts of M.C.'s attacker were not independent of Grindr's wrongdoing but were facilitated and made substantially more probable by Grindr's deliberate failure to implement meaningful safeguards against underage access and exploitation.

81.     The foreseeable risk that adult users would commit criminal misconduct against minors using Grindr's platform was well-documented and known to Grindr through public criticism, internal data, regulatory scrutiny, industry studies, and, eight months before the murder of M.C., by a 115-page Report and Recommendation from this very Court involving Grindr's illusory age verification resulting in the sexual exploitation of a minor by multiple men who found the child on the Grindr platform. See *T.V. v. Grindr, LLC*, No. 3:22-cv-864-WGY-PDB, 2024 WL 48106 (M.D. Fla. Aug. 13, 2024).

82.     Grindr consciously ignored these warnings and failed to act, ensuring that foreseeable harms, including the acts suffered by M.C., remained an inevitable consequence of its business model and practices.

83.     Grindr's deliberate refusal to implement available protections substantially contributed to and directly and foreseeably led to M.C.'s exploitation, torture, and death.

**Media Reports on Child Safety Risks on Grindr**

84.     Grindr's continued use of sham self-reporting age verification, despite years of public warnings about underage access, demonstrates negligent and willful failure to protect minors, including M.C. For years, Grindr faced criticism for failing to implement reasonable precautions to prevent persons under the age of eighteen from accessing, downloading, using, purchasing, and/or subscribing to Grindr Services. For example:

a.  "Child Molesters Moving to Grindr to Find Underage Victims." Queerty, Queerty, 28 Apr. 2010, https://www.queerty.com/child- molesters-moving-to-grindr-to-find-underage-victims-20100428.

b.  Jozsa, Kyle, et al. "'Safe behind My Screen': Adolescent Sexual Minority Males' Perceptions of Safety and Trustworthiness on Geosocial and Social Networking Apps." Archives of Sexual Behavior, vol. 50, no. 7, 2021, pp. 2965–2980., https://doi.org/10.1007/s10508-021-01962-5.

c.  Macapagal, Kathryn, et al. "Hookup App Use, Sexual Behavior, and Sexual Health among Adolescent Men Who Have Sex with Men in the United States." Journal of Adolescent Health, vol. 62, no. 6, 2018, pp. 708–715., https://doi.org/10.1016/j.jadohealth.2018.01.001.

d.  McKim, Jenifer. "How Grindr, a Popular Gay Dating App, Poses Exploitation Risk to Minors." NPR, NPR, 3 Aug.2021 https://www.npr.org/2021/08/ 03.

e.  McKim, Jenifer B., et al. "Unseen, Part 3: Popular Gay Dating App Grindr Poses Exploitation Risk to Minors." News, GBH, 26 Jan. 2022, https://www.wgbh.org/news/national-news/2021/07/12/popular-gay-dating-app-grindr-poses-  exploitation-risk-to-minors.

f.  "There Are a Lot of Child Sexual Assaults on Grindr. Here's Why." Protect Children from Meeting Strangers Online with SaferKid™, https://www.saferkid.com/blog/there-are-a-lot-of-child-sexual-assaults-on-grindr-here-s-why.

g.  Smith, S.E. "The Real Problem with Children Using Hookup Apps." The Daily Dot, 2 Sept. 2014, https://www.dailydot.com/.

h.      Mendez II, Moises. "The Teens Slipping Through the Cracks Dating Apps." The Atlantic, Atlantic Media Company, 6 June 2022, https://www.theatlantic.com/ family/archive/2022/06/teens-minors-using-dating-apps-grindr/661187/.

85.     At all times relevant to this matter, Grindr faced criticism for the physical and mental harm suffered by persons under the age of eighteen (18) years from their access, download, use, purchase, and/or subscription to Grindr Services.  For example:

a.      Smith, S.E. "The Real Problem with Children Using Hookup Apps."

b.      McKim, Jenifer B., et al. "Unseen, Part 3: Popular Gay Dating App Grindr Poses Exploitation Risk to Minors." News, GBH, 26 Jan. 2022, https://www.wgbh.org/news/national-news/2021/07/12/popular-gay-dating-app-grindr-poses-exploitation-risk-to-minors.

c.      Mendez II, Moises. "The Teens Slipping Through the Cracks on Dating Apps." The Atlantic, Atlantic Media Company, 6 June 2022, https://www.theatlantic.com/family/archive/2022/06/teens-    minors-using-dating-apps-grindr/661187/.

d.      Suto, Daniel J., et al. "Geosocial Networking Application Use among Sexual Minority Adolescents." Journal of the American Academy of Child & Adolescent Psychiatry, vol. 60, no. 4, 2021, pp. 429–431., https://doi.org/10.1016/j.jaac.2020.11.018.

e.      "Texas Teacher Who Committed Suicide After Being Snagged in Underage Grindr Sex Sting Was Unfairly Set Up by Cops, Family Says." Criminal Legal News, Aug. 2021, https://www.criminallegalnews.org/news/2021/aug/20/texas-teacher-who-committed-suicide-after-being-snagged-underage-grindr-sex-sting-was-unfairly-set-cops-family-says/.

f. "There Are a Lot of Child Sexual Assaults on Grindr. Here's Why Protect Children from Meeting Strangers Online with SaferKid™, https://www.saferkid.com/blog/there-are-a-lot-of-child-sexual-assaults-on-grindr-here-s-why.

g. McKim, Jenifer B., et al. "Unseen, Part 3: Popular Gay Dating App Grindr Poses Exploitation Risk to Minors." News, GBH, 26 Jan. 2022, https://www.wgbh.org/news/national-news/2021/07/12/popular-gay-dating-app-grindr-poses-exploitation-risk-to-minors.

h. Taylor, Samuel Hardman, et al. "Social Consequences of Grindr Use." Proceedings of the 2017 CHI Conference on Human Factors in Computing Systems, 2017, https://doi.org/10.1145/3025453.3025775.

**The U.K. Flags 60 Child Sexual Abuse Cases Linked to Grindr, Grindr Fails to Act**

86. In early 2019, six years before Grindr lead M.C.'s rapist and killer to find her, the UK Secretary of State for Digital, Culture, Media and Sport, Jeremy Wright, announced a formal inquiry into the companies' safety practices in response to media reports detailing over 60 cases of child sexual abuse linked to dating apps including Grindr.

*See* Ben Quinn, Tinder and Grindr Face Questions over Age Checks After Rape Cases, The Guardian (Feb. 10, 2019), https://www.theguardian.com/society/2019/feb/10/tinder-and-grindr-face-questions-over-age-checks-children (last visited May 14, 2025).

87. As such, Secretary Wright specifically signaled out Grindr's lax age verification, stating, " I will be writing to these companies asking what measures they have in place to keep children safe from harm, including verifying their age…." *Id*.

88. In the wake of over 60 cases of child sexual abuse linked to dating apps like Grindr, *Id*., rather than enact reform, Grindr issued a generic public relations statement meant to placate

regulators and deflect responsibility. Grindr claimed, "Grindr is committed to creating a safe and secure environment to help our community connect and thrive, and any account of sexual abuse or other illegal behavior is troubling to us." *Id*.

89.    Following the UK Secretary of State's warnings of lax age verification and child exploitation on Grindr, Grindr's slick public relations and hollow expressions of concern for child safety have proven as dishonest after 6 years as a "the-check-is-in-the-mail" promise of a squatter after not paying rent for six years.  In that time, Grindr was handed every opportunity—legal, technological, and moral—to reform. It chose not to. In more than half a decade before M.C.'s murder, Grindr continued to:

    a.  Use sham self-reported age verification gates that could notoriously be bypassed in seconds;

    b.  Refuse to implement third-party identity checks, biometric screening, or facial age estimation;

    c.  Promote categories like "Twink Tribe" that explicitly sexualize youth;

    d.  Maintain Terms of Service, disclaiming responsibility for age verification or user conduct.

**Grindr's Dishonest Claim to Support the Fight Against Online Child Exploitation**

90.    This pattern of deception extends to Grindr's public touting of its membership in the WeProtect Global Alliance, an international movement dedicated to ending the sexual exploitation of children online. On its Help Center page, dated May 5, 2025, Grindr states: "Grindr is a member of the WeProtect Global Alliance, an international movement dedicated to global action to end the sexual exploitation of children online, and has endorsed the Oasis User Safety Standards."  *See* Grindr, How Grindr Moderates Content and Profiles, Grindr Help Center,

https://help.grindr.com/hc/en-us/articles/1500009296922-How-Grindr-moderates-content-and-profiles (last visited May 14, 2025).

91.    Grindr's public assertion of its membership in the WeProtect Global Alliance, a coalition dedicated to eliminating online child sexual exploitation, is a deliberate misrepresentation designed to avoid public scrutiny as a platform that profits from the sexual exploitation of children.

92.    The WeProtect Global Alliance's November 2022 Intelligence Briefing explicitly denounces the self-reported age verification method used by Grindr, noting: "The first approach was traditionally self-assertion just asking someone to insert their age or tick a box to confirm their age. Given this **is easily falsified and open to abuse**, more effective and robust age verification is needed for almost all sectors."

*See* WeProtect Global Alliance & Yoti Intelligence Briefing, The Role of Age Verification Technology in Tackling Child Sexual Exploitation and Abuse Online, at 2 (Nov. 2022), https://www.weprotect.org/resources/library/the-role-of-age-verification-technology-in-tackling-child-sexual-exploitation-and-abuse-online/(Last visited May 14, 2025)(Emphasis added.)

93.    By choosing to use this discredited method, Grindr purposely undermines the very principles it publicly claims to uphold through its advertised WeProtect affiliation.

94.    Moreover, WeProtect Global Alliance's November 2022 Intelligence Briefing outlines critical recommendations to prevent child sexual exploitation, which are absent from Grindr's sex hookup platform, including:

a.    **Adoption of robust age verification methods**, such as facial age estimation or ID document checks, to prevent minors from accessing adult platforms at registration, unlike Grindr's reliance on self-reported age gates that allow minors to enter unchecked. *Id.* at 2, 3, 4, and 12.

31

b.      **Proactive age assurance**, ensuring age verification occurs before platform access, in contrast to Grindr's allowance of initial access without verification, increasing the risk of exploitation. *Id.* at 1-2, 4, 6-8, 11 and 15.

c.      **Age-appropriate platform design**, including disabling geolocation tracking and restricting adult-minor interactions, which Grindr fails to implement despite its geolocation-driven platform and lack of age-based user segregation, enabling predators to target minors. *Id,* at 6, 8, and 11.

d.      **Use of privacy-preserving technologies**, such as facial age estimation that deletes images instantly, which Grindr has not adopted, opting instead for minimal verification that risks minor exposure to child sexual exploitation and abuse. *Id.* at 4, 11, and 12.

e.      **Transparency and adherence to international standards**, such as ISO and IEEE age assurance standards, which Grindr ignores by maintaining outdated methods that fail to protect children. *Id.* at 11, 13, and 14.

95.     Grindr's deliberate refusal to adopt the preceding WeProtect's recommended protections, directly caused M.C.'s kidnapping, rape, torture, and death.

96.     Grindr's cynical charade as a WeProtect Global Alliance "member," falsely claiming to champion the fight against child sexual exploitation, is deceptive and deplorable. Flouting WeProtect's November 2022 Intelligence Briefing, which brands self-reported age gates as "easily falsified" and demands robust age checks, Grindr's flimsy verification let M.C., a minor, onto its predatory platform. There, its geolocation tools and "Twink Tribe" tags—designed to lure—enabled depraved predators to hunt, torture, and murder her. Grindr's lies didn't just betray WeProtect's mission; they caused M.C.'s rape, torture, and death.

**Grindr's Child Endangerment Driven by Unreasonable Financial Gain**

97.     Grindr's deception is motivated by profit. Grindr financially benefited from minors, including M.C., who accessed, downloaded, used, purchased, and/or subscribed to Grindr services. A 2018 Northwestern University study found that over 50% of sexually active gay and bisexual adolescent boys under 18 used apps like Grindr, contributing to Grindr's approximately 13.5 million monthly active users as of September 2023 (Northwestern University, *Study on Adolescent Sexual Behavior and Dating Apps* (2018); Top10.com, *Grindr Dating Site & App Review (2024)*, https://www.top10.com/dating/grindr-review (last visited Apr. 25, 2025)) Minors' engagement, including potential subscriptions, increased ad revenue, and attracted adult users, enhancing Grindr's financial gain.

98.     Users of Grindr Services can more efficiently identify persons under the age of eighteen (18) years by narrowing the search results to the Twink Tribe. Thus, Grindr's creation and promotion of the "Twink" Tribe and other descriptive terms Grindr designed and authored expressly facilitated the targeting of underage users, including M.C., by adult predators.

99.     Grindr's Privacy and Cookie Policy states that user profiles and distance information are shared with the Grindr Community. Grindr's decision to publicize users' precise locations further magnified the foreseeable risk to minor users, including M.C.

100.    This decision was driven by the company's financial interest: a larger and more active user base meant higher advertising revenue, increased subscription sales, stronger engagement metrics, and enhanced corporate valuation. As evidenced by years of ignored warnings, Grindr profited from the exploitation of minors on its platform. Grindr deliberately chose to accept the catastrophic risk of harm to minors, including M.C., as an acceptable cost of

doing business. This conscious indifference to human safety in favor of financial gain directly and foreseeably resulted in the exploitation and death of M.C.

101.    At all times relevant, as evidenced by years of ignored warnings, as Grindr profited from the exploitation of minors on its platform, Grindr intentionally allowed users under the age of eighteen (18) years to access, download, use, purchase, and/or subscribe to Grindr Services.  In turn, Grindr served minors to adult predators using Grindr Services, viewing them as collateral damage in pursuit of user growth and corporate profitability.

102.    By failing to implement robust safeguards and profiting from minors' use, Grindr caused M.C.  and other minors to suffer damages.

103.    At all times relevant to this matter, Grindr knew that users of Grindr Services – especially persons under the age of eighteen (18) years – are exposed to physical danger because of their access, download, use, purchase, and/or subscription to Grindr Services.

104.    Grindr's failure to implement adequate safeguards enabled minors to interact with adult users, exposing them to inappropriate and harmful encounters. Evidence of this failure includes:

a.   A 2021 GBH News investigation reporting that Grindr is "teeming with underage gay, bisexual, and questioning boys," creating an environment where minors are vulnerable to adult users, with cases such as a 2019 conviction of a Newburyport official for raping a 15-year-old met on Grindr and a 2017 Colorado case involving minors targeted by an adult user (GBH News, *Grindr and Other Dating Apps Fail to Protect Teens from Sexual Predators*, GBH News Ctr. for Investigative Reporting (Nov. 17, 2021), https://www.wgbh.org/news/national-news/2021/11/17/grindr-and-other-dating-apps-fail-to-protect-teens-from-sexual-predators).

b.  A 2022 article in The Southeast Arrow documenting a student's underage use of Grindr and a dangerous encounter at 17 with an adult who misrepresented himself (Lila O'Malley, *The Dangers of Grindr*, The Se. Arrow (Feb. 23, 2022), https://southeastarrow.com/stories/the-dangers-of-grindr,2603).

c.  A 2023 CNA investigation where journalists posing as 15-year-olds on Grindr received sexual propositions from adults, demonstrating the platform's vulnerability to underage access (CNA, *Dangerous Liaisons: Investigating Underage Access to Dating Apps* (2023), https://www.channelnewsasia.com/asia/dating-apps-underage-access-investigation).

d.  Law enforcement sting operations, including a 2021 case charging a Northborough man for attempting to meet a decoy posing as a 15-year-old on Grindr (GBH News, *Grindr and Other Dating Apps Fail to Protect Teens from Sexual Predators*, GBH News Ctr. for Investigative Reporting (Nov. 17, 2021), https://www.wgbh.org/news/national-news/2021/11/17/grindr-and-other-dating-apps-fail-to-protect-teens-from-sexual-predators).

**Grindr's Negligent Undertaking**

105.    Grinder undertook a duty to ensure that Grindr Services provided a safe space where users can discover, navigate, and interact with others in the Grindr Community.  This contention is supported by the following:

a.    On its website, Grindr states, "Safety is not merely the responsibility of users, and Grindr is continuously seeking to develop and improve security features – not only to protect users, but also to provide them with critical safety information needed to ensure a safe experience."

b. Grindr's Privacy and Cookie Policy states that Grindr provides a safe space where users can discover, navigate, and interact with others within the Grindr Community.

35

c.    Grindr's Terms and Conditions of Service Agreement reserves for Grindr the right to remove content.

106.    Grindr's duty to ensure that Grindr Services provides a safe space where users can discover, navigate, and interact with others in the Grindr Community includes, but is not limited to, implementing adequate policies, procedures, and software to screen persons attempting to access, download, use, purchase, and/or subscribe to Grindr Services to ensure that they are over the age of eighteen (18) years.

107.    This duty is necessary to protect the health, safety, and well-being of persons under the age of eighteen (18) years attempting to access, download, use, purchase, and/or subscribe to Grindr Services. In addition, the duty is necessary to shield persons over the age of eighteen (18) who access, download, use, purchase, and/or subscribe to Grindr Services from engaging in unlawful activity with children.

**Grindr's Actions Directly Contributed to M.C.'s Death**

108.    This action challenges Grindr's independent misconduct, including its product design choices, platform architecture, marketing representations, and deliberate refusal to implement reasonable safety measures to protect minors.

109.    In enacting § 230, Congress expressly sought to protect minors and other vulnerable users from harmful online content and internet-based crimes, as reflected in the statute's titles and structure. The Act itself is titled the *Communications Decency Act*; § 230 is labeled the *Online Family Empowerment Act*; and the section is further titled *Protection for private blocking and screening of offensive material*. As explained in *T.V. v. Grindr, LLC*, No. 3:22-cv-864-MMH-PDB, 2024 WL 48106, at *16 (M.D. Fla. Aug. 13, 2024), these titles demonstrate that one of §

230's central purposes was to shield children from online harm—not to insulate companies that design their platforms in ways that facilitate the exploitation of minors and profit from same.

110.    It would be an inversion of § 230's goals to permit platforms like Grindr to weaponize its protections as a means of avoiding responsibility for design choices that knowingly endanger children. Accordingly, § 230 must be construed narrowly to prevent undermining its fundamental purpose of promoting safety, not enabling harm. *Id at* *106 (explaining that § 230 immunity does not extend to a defendant's own design choices and product structures).

111.    As detailed herein, Grindr's design and operational decisions created a platform foreseeably dangerous to minors, and caused the kidnapping, torture, rape, and death of M.C.

112.    Accordingly, Grindr is not entitled to immunity under § 230(c)(1) for its acts of affirmative misconduct. Plaintiff seeks to impose liability for Grindr's negligent design and operational decisions, which fall outside the scope of protections afforded to publishers or speakers of third-party content. *See T.V.* at 48. (pointing out that defective product design claims against a platform are not barred by § 230(c)(1)).

## COUNT I
## WRONGFUL DEATH – STRICT LIABILITY PRODUCT DESIGN DEFECT

113.    Plaintiff incorporates each allegation in paragraphs 1 through 112 as if fully set forth herein.

114.    At all times relevant, Grindr was a designer, manufacturer, distributor, importer, seller, and/or retailer of the Grindr Services it provided to consumers.

115.    Each designer, manufacturer, distributor, importer, or seller in the chain of distribution is liable for injury caused by a defective product.

116.   A product is defective because of a design defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.  A product is unreasonably dangerous because of its design if (1) the product fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer, or (2) the risk of danger in the design outweighs the benefits.

117.   At all times relevant, Grindr Services was unreasonably dangerous to M.C. and the ordinary consumer.

118.   The defective design of Grindr's geolocation services, as detailed herein, renders the product unreasonably dangerous by enabling hyper-precise location tracking without robust age verification, geofencing, temporal scrambling, or foreseeably endangering minors, such as M.C.

119.   At all times relevant, M.C. accessed, downloaded, used, purchased, and/or subscribed to Grindr Services without substantial change affecting the product.

120.   At all times relevant, Grindr Services failed to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by Grindr.

121.   At all times relevant, Grindr knew or should have known that person(s) under the age of eighteen (18) years – including M.C. - accessed, downloaded, used, purchased, and/or subscribed to Grindr Services and that condition was unreasonably dangerous to M.C. and the ordinary consumer.

122.   At all times relevant, Grindr Services were unreasonably dangerous because the danger in the design outweighed the benefits.

123.   At all times relevant, Grindr knew or should have known that person(s) under the age of eighteen (18) years – including M.C. - accessed, downloaded, used, purchased, and/or subscribed to Grindr Services and engaged in sexual relationships and activity with adult users of Grindr Services.

124.   As a direct and proximate result of the previously mentioned defective product, M.C. suffered severe emotional distress and bodily injuries, culminating in her death.

125.   The statutory survivors of M.C., deceased, are as follows:

   a.    The Estate of M.C., for the payment of medical expenses, burial, and funeral expenses as defined by Fla. Stat. § 768.21.

   b.    M.C.'s son, A.C. – mental pain and suffering, anguish, loss of decedent's parental companionship, instruction, and guidance, loss of decedent's support and services, all both past and future as defined by Fla. Stat. § 768.21.

126.   As a direct and proximate result of the subject incident, and the previously mentioned defective product of Grindr in causing the death of the M.C., the survivors of M.C., have lost the support, love, affection, comfort, and companionship of M.C., and have experienced mental pain and suffering in the past and will continue to suffer such losses in the future.

127.   Grindr willfully, wantonly, and recklessly designed a defective platform, motivated solely by unreasonable financial gain, by creating a sham age verification system and

39

hyper-precise geolocation features that endangered minors like M.C. Grindr's policymakers had actual knowledge of the unreasonably dangerous nature of these design choices and their high likelihood of injury, yet pursued them, constituting intentional misconduct and gross negligence. Punitive damages, including up to four times compensatory damages, are warranted to punish Grindr's dangerous design and deter future harm.

**WHEREFORE**, Plaintiff, D.W., as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands a trial by jury and judgment against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times the compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused M.C.'s rape, torture, and death.

**COUNT II**
**WRONGFUL DEATH – NEGLIGENCE AND NEGLIGENCE PER SE PRODUCT DESIGN DEFECT**

128.   Plaintiff incorporates each allegation in paragraphs 1 through 112 as if fully set forth herein.

129.   Based on the allegations articulated in the preceding paragraphs, Grindr is also liable under negligence and negligence per se theories for the defectively designed Grindr Services.

130.   At all times relevant, Grindr owed a duty of care (negligence) to M.C. to exercise reasonable care to prevent foreseeable and known harms, including, but not limited to, the online sexual grooming of children.

131.   At all times relevant, Grindr owed a duty of care (negligence per se) to

M.C. not to violate laws and to exercise reasonable care to prevent foreseeable and known harms, including, but not limited to, the online sexual grooming of children.

132. At all times relevant, Grindr breached these duties by providing defectively designed services, tools, and products to M.C. that rendered no protection from the known and reasonably foreseeable harms. Specifically, Grindr's lack of proper age verification and defective geolocation system, lacking geofencing and other safeguards, enabled a predator to locate and exploit M.C., causing her death.

133. As a direct and proximate result of each of the previously mentioned breached duties, M.C. suffered severe emotional distress and bodily injuries, culminating in her death.

134. The statutory survivors of M.C., deceased, are as follows:

a. The Estate of M.C., for the payment of medical expenses, burial, and funeral expenses as defined by Fla. Stat. § 768.21.

b. M.C.'s son, A.C. – mental pain and suffering, anguish, loss of decedent's parental companionship, instruction, and guidance, loss of decedent's support and services, all both past and future as defined by Fla. Stat. § 768.21.

135. As a direct and proximate result of the subject incident, and the previously mentioned negligence and negligence per se of Grindr in causing the death of the M.C., the survivors of M.C., have lost the support, love, affection, comfort, and companionship of M.C., and have experienced mental pain and suffering in the past and will continue to suffer such losses in the future.

136. Grindr willfully, wantonly, and recklessly created a dangerous platform through negligent design choices, motivated solely by unreasonable financial gain, by

41

implementing ineffective age verification and geolocation systems that exposed minors to predators. Grindr's policymakers had actual knowledge of the high likelihood of injury, yet pursued these choices, constituting intentional misconduct and gross negligence. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's reckless conduct.

**WHEREFORE**, Plaintiff, D.W., as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused M.C.'s rape, torture, and death.

<u>**COUNT III**</u>
<u>**WRONGFUL DEATH – NEGLIGENCE**</u>

137. Plaintiff incorporates each allegation in paragraphs 1 through 112 as if fully set forth herein.

138. At all times relevant, Grindr owed a duty of care (negligence) to M.C. to exercise reasonable care to prevent foreseeable and known harms resulting from Grindr Services, including, but not limited to, the online sexual grooming of children.

139. At all times relevant, Grindr undertook a duty to ensure that persons under the age of eighteen (18) years do not access, download, use, purchase, and/or subscribe to Grindr Services.

140. At all times relevant, Grindr undertook a duty to design and operate Grindr Services to prevent harmful interactions, including by implementing effective age

verification and geolocation safeguards to protect minors.

141.    At all times relevant, Grindr undertook a duty to ensure that Grindr Services was safe for users of Grindr Services, including persons under the age of eighteen (18) years accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.

142.    Grindr's acts and omissions breached each of the duties above. Below are some, but not all, of Grindr's acts and omissions that breached the aforesaid duties of care owed to M.C:

a.    Grindr knowingly, intentionally, and negligently designed Grindr Services with a sham age verification system that enabled persons under the age of eighteen (18) years, including M.C., to access, download, use, purchase, and/or subscribe to the platform;

b.    Grindr knowingly, intentionally, and negligently created a platform with hyper-precise geolocation and predatory features, such as 'Twink Tribe' tags, that facilitated sexual relationships and activity between minors and adult users;

c.    Grindr knowingly, intentionally, and negligently implemented a defective design lacking industry-standard safeguards, such as robust age verification, geofencing, or temporal scrambling, foreseeably exposing minors to exploitation;

d.    Grindr knowingly, intentionally, and negligently engineered Grindr Services to enable adult users to engage in or attempt sexual relationships with minors, including M.C., through its design choices;

e.    Grindr knowingly, intentionally, and negligently misrepresented that Grindr Services were safe, inducing minors like M.C. to use the platform;

f.    Grindr knowingly, intentionally, and negligently misrepresented that Grindr

Services enforced safety standards, despite designing a platform conducive to predation;

g.    Other acts and omissions by Grindr described in the foregoing and subsequent paragraphs of Count III.

143.    The negligent actions and conditions were caused and created by Grindr.

144.    As a direct and proximate result of each of the previously mentioned breached duties, M.C. suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

145.    The statutory survivors of M.C., deceased, are as follows:

a.    The Estate of M.C., for the payment of medical expenses, burial, and funeral expenses as defined by Fla. Stat. § 768.21.

b.    M.C.'s son, A.C. – mental pain and suffering, anguish, loss of decedent's parental companionship, instruction, and guidance, loss of decedent's support and services, all both past and future as defined by Fla. Stat. § 768.21.

146.    As a direct and proximate result of the subject incident, and the previously mentioned negligence of Grindr in causing the death of the M.C., the survivors of M.C., have lost the support, love, affection, comfort, and companionship of M.C., and have experienced mental pain and suffering in the past and will continue to suffer such losses in the future.

147.    Grindr willfully, wantonly, and recklessly created a dangerous platform, motivated solely by unreasonable financial gain, by designing sham age verification, hyper-precise geolocation, and predatory 'Twink Tribe' features that enabled predators to target and

44

torture and suffocate minors like M.C. Grindr's policymakers had actual knowledge of the unreasonably dangerous nature of these design choices and their high likelihood of injury, constituting intentional misconduct and gross negligence. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's reckless conduct and endangerment of children, including M.C.

**WHEREFORE**, Plaintiff, D.W, as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused M.C.'s rape, torture and death.

## COUNT IV
## NEGLIGENCE

148.    Plaintiff incorporates each allegation in paragraphs 1 through 112 as if fully set forth herein.

149.    In the alternative to the foregoing wrongful death claims, Plaintiff brings this cause of action for negligence.

150.    At all times relevant, Grindr owed a duty of care (negligence) to M.C. to exercise reasonable care to prevent foreseeable and known harms resulting from Grindr Services, including, but not limited to, the online sexual grooming of children.

151.    At all times relevant, Grindr undertook a duty to ensure that persons under the age of eighteen years do not access Grindr Services.

152.    At all times relevant, Grindr undertook a duty to ensure Grindr Services

were designed and operated to prevent predatory interactions, including through robust age verification and geolocation safeguards to protect minors.

153.    At all times relevant, Grindr undertook a duty to ensure that Grindr Services was safe for users of Grindr Services, including persons under the age of eighteen (18) years accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.

154.    Grindr's acts and omissions breached each of the duties above. Below are some, but not all, of Grindr's acts and omissions that breached the aforesaid duties of care owed to M.C.:

a. Grindr knowingly, intentionally, and negligently designed Grindr Services with a sham age verification system that enabled persons under the age of eighteen (18) years, including M.C., to access, download, use, purchase, and/or subscribe to the platform;

b. Grindr knowingly, intentionally, and negligently created a platform with hyper-precise geolocation and predatory features that facilitated sexual relationships and activity between minors and adult users;

c. Grinder knowingly, intentionally, and negligently implemented a defective design lacking industry-standard safeguards, such as robust age verification, geofencing, or temporal scrambling, foreseeably exposing minors to exploitation;

d. Grindr knowingly, intentionally, and negligently engineered Grindr Services to enable adult users to engage in or attempt sexual relationships with minors, including M.C., through its design choices;

e.  Grindr knowingly, intentionally, and negligently misrepresented that Grindr Services were safe, inducing minors like M.C. to use the platform;

f.  Grindr knowingly, intentionally, and negligently misrepresented that Grindr Services enforced safety standards, despite designing a platform conducive to predation;

g.  Other acts and omissions by Grindr described in the foregoing and subsequent paragraphs of Count IV.

155.    The negligent actions, omissions, and conditions were caused or allowed to exist by Grindr, or were known to Grindr, or had existed for a sufficient length of time that Grindr should have known of the negligent actions, omissions, and conditions.

156.    As a direct and proximate result of each of the previously mentioned breached duties, M.C. suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, loss of capacity for the enjoyment of life. These injuries, directly caused by Grindr's reckless platform design, culminated in M.C.'s torture, rape, and murder, as detailed herein.

157.    These losses are recoverable by the Estate of M.C.

158.    Grindr willfully, wantonly, and recklessly created a dangerous platform, motivated solely by unreasonable financial gain. By designing ineffective age verification, hyper-precise geolocation, and predatory features that cause predators to exploit children, torture, suffocate, and murder, M.C. Grindr's policymakers had actual knowledge of the high likelihood of injury, constituting gross negligence. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's reckless endangerment

of M.C.

**WHEREFORE**, Plaintiff, D.W., as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused M.C.'s rape, torture, and death.

<u>COUNT V</u>
<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

159.    Plaintiff incorporates each allegation in paragraphs 1 through 112 as if fully set forth herein.

160.    In the alternative to the foregoing wrongful death claims, Plaintiff brings this cause of action for Intentional Infliction of Emotional Distress.

161.    At all times relevant, Grindr's design and operation of Grindr Services with a sham age verification system, hyper-precise geolocation, and predatory features like the 'Twink Tribe' were extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, enabling minors like M.C. to be targeted by predators.

162.    At all times relevant, Grindr was intentional and reckless in designing and operating Grindr Services with a sham age verification system, hyper-precise geolocation, and predatory features like the 'Twink Tribe' that enabled child predators to find minors on the platform, including M.C., thereby foreseeably causing severe emotional distress.

163.    At all times relevant, Grindr intended to cause or disregarded the substantial probability of causing M.C. severe emotional distress.

48

164.    M.C. experienced emotional distress as a result of Grindr's actions and omissions.

165.    At all times relevant, Grindr's actions and omissions directly caused M.C.'s emotional distress.

166.    At all times relevant, Grindr was in the exclusive position to stop the harm M.C. experienced, but refused to do so.

167.    As a direct and proximate result of Grindr's intentional conduct, M.C. suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

168.    These losses are recoverable by the Estate of M.C.

169.    At all times relevant, Grindr acted intentionally and recklessly in designing and operating Grindr Services with a sham age verification system, hyper-precise geolocation, and predatory features like the 'Twink Tribe' that enabled minors, including M.C., to access the platform and engage with adult predators, foreseeably causing severe emotional distress.

**WHEREFORE**, Plaintiff, D.W, as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused M.C.'s rape, torture, and death.

## COUNT VI
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

170.    Plaintiff incorporates each allegation in paragraphs 1 through 112 as if fully set forth herein.

171.    In the alternative to the foregoing wrongful death claims, Plaintiff brings this cause of action for Negligent Infliction of Emotional Distress.

172.    At all times relevant, Grindr owed a duty of care to M.C. to abide by its terms of use and to prevent M.C. and other persons under the age of eighteen (18) years from accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.

173.    Grindr breached this duty of care to M.C.

174.    At all times relevant, Grindr was negligent in the actions and omissions that ignored M.C. and other persons under the age of eighteen (18) years accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.

175.    M.C. experienced severe emotional distress as a direct result of Grindr's breached duties, actions, and omissions.

176.    At all times relevant, Grindr's design and operation of Grindr Services with a sham age verification system, hyper-precise geolocation, and predatory features like the 'Twink Tribe' were extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, enabling minors like M.C. to be targeted by predators

177.    At all times relevant, Grindr was negligent in designing and operating Grindr Services with ineffective age verification, geolocation, and predatory features that enabled minors, including M.C., to access the platform and engage with adult predators, foreseeably causing severe emotional distress

178.    At all times relevant, Grindr was in the exclusive position to stop the harm

M.C. experienced, but refused to do so.

179.    M.C.'s use of Grindr Services resulted in M.C. 's exposure to and engagement in sexual relationships and activities with adults; thus, such use directly and proximately caused and substantially contributed to her torture, battering, suffocation, and death. *See Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 848-51 (Fla. 2007)( The outside force need not be applied by the defendant; for example, in an action against a hotel owner, the Florida Supreme Court held that a hotel guest who was robbed by an unknown assailant across the street from the hotel satisfied the physical impact requirement.)

180.    As a direct and proximate result of Grindr's negligent conduct, M.C. suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

181.    These losses are recoverable by the Estate of M.C.

182.    Grindr willfully, wantonly, and recklessly endangered minors' emotional well-being, motivated solely by unreasonable financial gain, by designing a platform with sham verification, geolocation, and predatory features that caused M.C.'s torture, rape, suffocation, and death. Grindr's policymakers had actual knowledge of the high likelihood of harm, constituting gross negligence. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's reckless conduct.

**WHEREFORE**, Plaintiff, D.W., as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable

financial gain that caused M.C.'s rape, torture, and death.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

183.    Plaintiff incorporates each allegation in paragraphs 1 through 112 as if fully set forth herein.

184.    In the alternative to the foregoing wrongful death claims, Plaintiff brings this cause of action for Negligent Misrepresentation.

185.    At all times relevant, Grindr made statements in its Terms and Conditions of Service Agreement, marketing materials, help center articles, onboarding screens, and user guidelines. Grindr knew and intended that these statements would be relied upon by users, including minors, to create the appearance of a secure and monitored platform.

186.    At all times relevant, Grindr specifically and repeatedly made safety assurances, including, but not limited to, promises that it enforced community standards, prohibited underage access, and acted swiftly to remove dangerous users, thereby leading users like M.C. to reasonably believe that the Grindr Services were safe to use.

187.    At all times relevant, M.C. and other users of Grindr Services were exposed to and reasonably relied upon Grindr's ubiquitous and repeated representations concerning the safety and monitoring of Grindr Services, including statements incorporated into mandatory agreements and prominently displayed safety messaging across the platform.

188.    Upon information and belief, M.C., like other users of Grindr Services, was exposed to Grindr's representations regarding user safety and enforcement of community standards through multiple channels, including, but not limited to, Grindr's onboarding screens during account creation, safety tips and community guideline reminders displayed within the

52

application, publicly available Terms and Conditions of Service, and safety-related marketing statements promoted through Grindr's official website and customer communications.

189.    These representations included specific assurances by Grindr that "Safety is not merely the responsibility of users, and Grindr is continuously seeking to develop and improve security features — not only to protect users, but also to provide them with critical safety information needed to ensure a safe experience." Grindr also marketed and promoted Grindr Services as a "safe place" for users to meet others, repeatedly representing that it actively enforced community standards and swiftly addressed safety threats.

190.    Grindr made these statements with the intent that users, including vulnerable individuals such as minors, would rely upon them when deciding to access, download, use, and/or subscribe to Grindr Services.

191.    On or before February 14, 2025, when M.C. accessed and downloaded the Grindr Services application, she was presented with onboarding screens that required her to accept Grindr's Terms and Conditions of Service Agreement. This agreement included assurances that Grindr enforced community standards and prohibited underage access to ensure user safety.

192.    During the account creation process, M.C. encountered in-app prompts and safety tips stating that Grindr was a "safe space" and actively monitored to remove dangerous users, reinforcing her belief that the platform was secure for her use.

193.  M.C. was further exposed to Grindr's safety representations through Grindr's official website, advertising, and social media posts, accessible via her mobile device, which promoted Grindr as committed to user protection, including the assurance that "Grindr is continuously seeking to develop and improve security features" to ensure a safe experience, as displayed on Grindr's public-facing pages, promotional campaigns, and help center articles.

194. M.C. actually relied upon their assurances of safety, including Grindr's representations that it enforced community standards, prohibited underage access, and actively monitored the platform, when she accessed, downloaded, and used Grindr Services on or about February 14, 2025, and were reinforced before and after by Grindr's conspicuous claims in its advertising, social media posts, directly influencing her decision to create an account and engage with other users, including the adult male who exploited and murdered her.

195. M.C.'s exposure to these assurances occurred at critical decision points—app installation, account setup, and ongoing navigation—where Grindr's representations in its advertising and social media posts, alongside in-app messaging, were designed to instill and maintain confidence in the platform's safety for vulnerable users like M.C., a 16-year-old minor.

196. M.C., being a minor child, had no reasonable means to independently verify the accuracy of Grindr's safety representations. Minors, like M.C., were wholly dependent on Grindr's superior knowledge and internal enforcement practices to ensure that Grindr Services operated as represented. Accordingly, M.C.'s reliance on Grindr's public assurances of safety was not only actual but reasonable under the circumstances.

197. At all times relevant, Grindr's statements and conduct materially misstated or exaggerated facts relating to the oversight, enforcement, and safety of its Services, falsely suggesting active monitoring and meaningful enforcement when, in fact, Grindr had abdicated these duties.

198. Grindr knew or should have known that its user base would foreseeably rely upon its public assurances of safety when deciding to access, download, use, or subscribe to Grindr Services.

199.    Grindr was negligent and/or lacked due diligence when making statements about the safety of Grindr Services, given its actual practices of failing to enforce safety policies, including the failure to implement adequate safeguards to prevent persons under the age of eighteen (18) from accessing and using Grindr Services.

200.    Grindr owed a duty of care to M.C. beyond a purported contract, arising from Grindr's position of superior knowledge, exclusive control over platform safety features, and its voluntary undertakings to assure users of the platform's security.

201.    Grindr occupied a special position of confidence and trust in relation to M.C. by making targeted representations about platform safety that were intended to induce reliance by all users, including vulnerable minors.

202.    Grindr was in the unique and exclusive position to prevent the injuries and damages to M.C. but failed to do so despite being on actual and constructive notice that its platform was unsafe for minors and inadequately monitored.

203.    M.C. actually relied on Grindr's representations. M.C. accessed, downloaded, used, and subscribed to Grindr Services based on the understanding and belief, induced by Grindr's widespread and repeated statements, that Grindr was a safe environment subject to active policy enforcement.

204.    M.C.'s reliance on Grindr's representations was reasonable. A reasonable user, particularly a vulnerable minor such as M.C., would have accepted the truth of Grindr's assurances concerning the enforcement of safety policies. Grindr's official documents, in-app messaging, and marketing communications presented these safety representations in a manner calculated to elicit reliance, and no reasonable user would expect that an internationally marketed platform would knowingly misrepresent such critical matters.

205.    Had M.C. known the facts — that Grindr Services were not adequately monitored or enforced and that minors were regularly able to access and use the Services — M.C. would not have accessed, downloaded, used, purchased, or subscribed to Grindr Services.

206.    As a direct and proximate result of Grindr's negligent misrepresentations, M.C. suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

207.    These losses are recoverable by the Estate of M.C.

208.    Grindr willfully, wantonly, and recklessly misrepresented its platform's safety, motivated solely by unreasonable financial gain, by promoting it as safe while designing dangerous features like sham age gates. Grindr's policymakers had actual knowledge that these misrepresentations posed a risk to minors, constituting gross negligence. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's deceptive conduct.

**WHEREFORE**, Plaintiff, D.W., as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused M.C.'s rape, torture, and death.

**COUNT VIII**
**CIVIL LIABILITY UNDER 18 U.S.C. § 1595 – PARTICIPATION IN A SEX**
**TRAFFICKING VENTURE**

209.    Plaintiff incorporates each allegation in paragraphs 1 through 112 as if fully set forth herein.

210.    Under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), and pursuant to the Fight Online Sex Trafficking Act (FOSTA), Pub. L. 115-164, which amends 47 U.S.C. § 230 to permit civil claims against platforms knowingly facilitating sex trafficking in violation of 18 U.S.C. § 1591, a civil action may be brought against any person or entity who knowingly benefits, financially or by receiving anything of value, from participation in a venture which that person or entity knew or should have known has engaged in an act in violation of 18 U.S.C. § 1591. This statute is specifically designed to protect troubled teens like M.C., a vulnerable young girl caught in the throes of youthful struggles, from predators who deliberately target them precisely because of their vulnerabilities, ensuring such vulnerable youth are shielded from exploitation.

211.    A 35-year-old adult male used Grindr Services to locate, contact, and exploit M.C., a 16-year-old female minor. The Grindr user engaged in sex acts with M.C., offered her shelter in his apartment for nearly a week, and ultimately caused her death.

212.    According to sworn law enforcement records, a resident of the apartment where the Grindr user lived informed detectives that the Grindr user routinely targeted 'disadvantaged women and girls who were either homeless or vulnerable due to their circumstances.' This pattern is documented and corroborated.

213.    M.C.'s vulnerability due to her young age and circumstances placed her squarely within the demographic that the Grindr user routinely targeted for sexual exploitation.

214.    After locating M.C. on Grindr, the Grinder user offered her a place to stay.

215.    The offer of lodging or a place to stay constituted 'things of value' under 18 U.S.C. § 1591(a)(2). The Grindr user provided it in exchange for sex and to maintain continued access and control over M.C. for ongoing sexual exploitation.

216.    Defendant Grindr, LLC knowingly participated in this sex trafficking venture by designing, marketing, and maintaining a platform that lacked meaningful age verification, promoted youth-targeting classifications such as 'Twink,' enabled real-time location-based access to nearby users, and failed to implement even minimal safeguards to prevent adult-minor contact.

217.    Grindr's participation in the sex trafficking venture was facilitated by its geolocation system, as detailed herein, which lacked geofencing, temporal scrambling, and robust age verification, allowing predators like a Grindr user to target minors like M.C. with ease.

218.    Grindr's operational practices, including its deliberate design of a platform with ineffective age verification, hyper-precise geolocation, and youth-targeting features like 'Twink' tags, created a virtual environment where trafficking thrived, much like a business that designs its premises to facilitate illegal activity. Grindr's platform, by prioritizing user engagement and profit over safety, foreseeably enabled predators to exploit minors like M.C. through its defective features.

219.    Grindr knowingly benefited financially and otherwise from this venture, including through subscription payments from the Grindr user, monetization of data linked to user engagement between adults and minors, and growth in platform valuation resulting from lax onboarding and unrestricted access. Grindr's business model was structured to profit directly from the unchecked presence of minors and predators on its platform, generating revenue from subscriptions, advertising, and data analytics fueled by illicit interactions, in a manner akin to

businesses that profit from renting space to known traffickers while ignoring overt signs of exploitation.

220.    Grindr was on actual and constructive notice, long before M.C.'s death, that its platform was being used to facilitate the sexual exploitation of minors. It was warned by the media, advocacy groups, and, most notably, by this Court in *T.V. v. Grindr*, No. 3:22-cv-864-WGY-PDB, 2024 WL 48106 (M.D. Fla. Aug. 13, 2024). Grindr's corporate leadership, like entities that knowingly allow trafficking to persist for profit, received repeated alerts through industry studies, regulatory inquiries, and internal data showing that minors routinely bypassed its sham age gates and were targeted by adult predators. These warnings, including reports of minors soliciting or being solicited in patterns detectable by basic algorithmic monitoring, constituted unmistakable indicators of trafficking that Grindr willfully disregarded.

221.    Grindr deliberately chose not to act. It did not implement biometric age checks, did not restrict geolocation matching, did not eliminate categories facilitating the targeting of youthful users, and did not suspend accounts linked to grooming behavior. This inaction was not mere negligence but a calculated corporate strategy to maintain a low-friction onboarding process that maximized user acquisition, even at the cost of enabling rampant trafficking, mirroring businesses that prioritize revenue over addressing clear evidence of criminal activity on their premises.

222.    Grindr's corporate decisions—driven by profit, user growth, and monetization— were not passive. They constituted affirmative, knowing participation in a system that foreseeably and repeatedly placed minors in sexual contact with adult predators. By designing and maintaining a platform that effectively served as a digital marketplace for predators to locate and exploit vulnerable minors, Grindr actively facilitated the trafficking venture, much like entities that knowingly provide infrastructure for trafficking operations while ignoring cries for help or visible

signs of abuse.

223.    As a direct and proximate result of Grindr's knowing participation in this sex trafficking venture, M.C. was sexually exploited and lost her life. Her estate and surviving family members have suffered incalculable harm. Grindr's failure to address the glaring "red flags" of minor exploitation on its platform, coupled with its profit-driven design choices, created the very conditions that enabled the Grindr user to target and destroy M.C., a troubled teen whose life was stolen by a predator exploiting her youthful vulnerabilities, in direct contravention of the TVPRA's purpose to protect such vulnerable youth from those who prey on their fragility, leaving her family without closure or her remains for burial.

224.    Grindr willfully, wantonly, and recklessly facilitated a sex trafficking venture, motivated solely by unreasonable financial gain, by designing a platform that enabled predators to exploit minors like M.C. Grindr's policymakers had actual knowledge of the unreasonably dangerous nature of these design choices, constituting intentional misconduct. Punitive damages, including up to four times compensatory damages, are warranted to punish Grindr's reprehensible conduct.

**WHEREFORE**, Plaintiff, D.W., as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused M.C.'s rape, torture, and death.

## COUNT IX
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

225.    Plaintiff incorporates each allegation in paragraphs 1 through 112 and 211-222 as if fully set forth herein.

226.    In the alternative to the foregoing wrongful death claims, or in addition thereto, Plaintiff brings this cause of action against Defendant, Grindr, LLC, for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–501.213 ("FDUTPA").

227.    At all times relevant, Grinder engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8), by operating the Grindr Services, a geo-social networking application available for download and subscription on iOS and Android platforms, generating revenue through subscriptions (e.g., Grindr XTRA, Grindr Unlimited) and advertising.

228.    Grindr committed deceptive acts and unfair practices in the conduct of its trade or commerce, in violation of Fla. Stat. § 501.204(1), by:

a. Knowingly and recklessly hosting and publishing material harmful to minors, including pornographic content such as images of girls with semen on their faces, references to "cum calculators," and other obscene material appealing to prurient interests, as defined by Fla. Stat. § 847.001(8), without implementing reasonable age verification methods to prevent access by persons under the age of eighteen (18) years, in violation of Fla. Stat. § 501.1737 (House Bill 3, effective July 1, 2024);

b. Maintaining an ineffective, self-reported age verification system that allowed minors, including M.C., to access Grindr Services easily.

c. Misrepresenting Grindr Services as a "safe space" for users, through statements in its Terms and Conditions of Service Agreement, Privacy and Cookie Policy, marketing materials, and onboarding screens, claiming to enforce community standards and protect

61

users, when in fact Grindr failed to implement adequate safeguards or monitor user interactions to prevent harm to minors;

d.      Representing to the public that "Safety is not merely the responsibility of users, and Grindr is continuously seeking to develop and improve security features — not only to protect users, but also to provide them with critical safety information needed to ensure a safe experience."

e. Designing and promoting platform features, such as the "Twink Tribe" and marketing materials featuring youthful-looking models, that implicitly solicited minors and adult predators, creating an environment conducive to the exploitation of minors like M.C;

f. Prioritizing financial gain over user safety by deliberately refusing to adopt inexpensive, industry-standard age verification technologies (e.g., biometric ID verification, facial age estimation, costing $0.10 to $1.00 per verification), despite knowing the extreme risks of harm to minors from unregulated adult-minor interactions.

229.    Grindr's violation of Fla. Stat. § 501.1737 constitutes a per se violation of FDUTPA, under Fla. Stat. § 501.203(3)(c). Specifically:

a. Grindr Services knowingly or recklessly published material harmful to minors, as defined by Fla. Stat. § 847.001(8), including but not limited to pornographic content. As such, Grindr's promotional video on X featuring a young-looking woman with semen dripping from her face; Grindr's "Cum Calculator" hosted on Grindr's blog that encourages users to track nutritional intake from "loads" of semen; and the "National Send Nudes Day" campaign urging users to send nude images to their "girlfriends" and "hoes" on Grindr, are representative of the pornographic content on Grindr's platform that appeal to prurient interests and lack serious literary, artistic, political, or scientific value for minors.

b. Grindr failed to implement "reasonable age verification methods," such as government-issued ID checks, biometric authentication, or third-party database cross-referencing, as required by Fla. Stat. § 501.1737(2), relying instead on a self-reported age gate that M.C. and other minors easily bypassed.

c. The presence of material harmful to minors on Grindr Services, including the pornographic promotions and other content appealing to prurient interests, combined with inadequate age verification, violated contemporary community standards and posed a substantial risk to minors, including M.C., who accessed the platform and was exposed to predatory adult users. Grindr Services knowingly or recklessly published material harmful to minors, as defined by Fla. Stat. § 847.001(8), including pornographic images and references that appeal to prurient interests and lack serious literary, artistic, political, or scientific value for minors, accessible to users without reasonable age verification.

d. Grindr failed to implement "reasonable age verification methods," such as government-issued ID checks, biometric authentication, or third-party database cross-referencing, as required by Fla. Stat. § 501.1737(2), relying instead on a self-reported age gate that M.C. and other minors easily bypassed.

e. The presence of material harmful to minors on Grindr Services, combined with inadequate age verification, violated contemporary community standards and posed a substantial risk to minors, including M.C., who accessed the platform and was exposed to predatory adult users.

230.    Grindr's acts and practices were deceptive because they misled M.C., a minor acting reasonably under the circumstances, to believe Grindr Services were safe. M.C. relied on Grindr's onboarding screens, in-app safety tips, and marketing assurances of active monitoring

and underage access prevention when she accessed the platform on or about February 14, 2025, directly leading to her exposure to a predator.

231.    Grindr's acts and practices were unfair because they offended established public policy, were immoral, unethical, oppressive, and substantially injurious to consumers, particularly minors. By hosting pornographic content, failing to verify user ages, and designing a platform that facilitated adult-minor interactions, Grindr violated societal expectations and industry standards for protecting minors from harmful online environments, as evidenced by warnings from regulatory bodies, academic studies, and media reports.

232.    Grindr knew or should have known that its practices were deceptive and unfair, as it was on actual and constructive notice of the risks to minors through public criticism, internal data, and industry standards for age verification. Despite this knowledge, Grindr deliberately maintained its deficient policies to maximize user growth and revenue, demonstrating a conscious disregard for consumer safety.

233.    As a direct and proximate result of Grindr's deceptive and unfair trade practices, including its per se violation of Fla. Stat. § 501.1737, M.C. accessed Grindr Services, was exposed to harmful content and adult predators, and suffered severe emotional distress, bodily injuries, and death on or about February 24, 2025. Had M.C. known the true nature of Grindr's practices, including its failure to prevent minor access and its hosting of pornographic content, she would not have accessed, downloaded, used, purchased, or subscribed to Grindr Services.

234.    The Estate of M.C. suffered actual damages recoverable under FDUTPA, including emotional distress, pain and suffering, medical expenses, and other losses resulting from M.C.'s injuries and death, as well as the profound harm to her survivors, including her son, A.C.

235.     Plaintiff is entitled to injunctive relief under Fla. Stat. § 501.211(1) to enjoin Grindr from continuing its deceptive and unfair practices, including requiring Grindr to implement reasonable age verification methods compliant with Fla. Stat. § 501.1737 and to remove or restrict access to material harmful to minors.

236.     Plaintiff is entitled to actual damages, attorney's fees, and costs under Fla. Stat. § 501.211(2), as well as pre-judgment interest, due to Grindr's violations of FDUTPA.

237.     Grindr's conduct is not shielded by 47 U.S.C. § 230, as this count arises from Grindr's own deceptive and unfair practices, including its platform design, marketing representations, and failure to implement age verification, rather than liability for third-party content.

238.     Grindr willfully, wantonly, and recklessly engaged in deceptive practices, motivated solely by unreasonable financial gain, by creating a platform with pornographic content and ineffective age verification that endangered minors. Grindr's policymakers had actual knowledge of the high likelihood of harm, constituting gross negligence. Punitive damages, including up to four times compensatory damages, are warranted to punish Grindr's unfair conduct.

**WHEREFORE**, Plaintiff, D.W., as Executor De Son Tort of the Estate of M.C., a minor, and on behalf of the Estate of M.C. and the survivors of the Estate, demands judgment against Defendant, Grindr, LLC, for: (a) Actual damages for the losses suffered by the Estate of M.C., including emotional distress, pain and suffering, medical expenses, and other harms; (b) Injunctive relief to enjoin Grindr from continuing its deceptive and unfair practices, including requiring reasonable age verification and restricting access to material harmful to minors; (c) Attorney's fees

65

and costs under Fla. Stat. § 501.211(2); (d) Pre-judgment interest; (e) Such other and further relief

as the Court deems just and proper; and (f) demands a trial by jury.

Dated: May 18, 2025.

**Kaiser Romanello, P.A.**
By: /s/   *Lorne Adam Kaiser*_____
Lorne Adam Kaiser
*Kaiser Romanello, P.A.*
Attorneys for Plaintiff
11555 Heron Bay Boulevard, Suite 200
Parkland, Florida 33076
Telephone: 954.603.0100
Facsimile: 954.827.0472
Email: lkaiser@kaiserromanello.com
Florida Bar No.: 0568491