# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DENEAN WETTON, AS EXECUTOR
DE SON TORT OF THE ESTATE OF
MIRANDA CORSETTE, A MINOR,          CASE NO.: 8:25-cv-01260-TPB-AEP
AND ON BEHALF OF THE ESTATE
OF MIRANDA CORSETTE AND
THE SURVIVORS OF THE ESTATE,

      Plaintiff,

vs.

GRINDR, LLC,

      Defendant.

_____/

## SECOND AMENDED COMPLAINT

Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the Survivors of the Estate, by and through the undersigned counsel, hereby sues Defendant, Grindr, LLC, a California Limited Liability Company, for damages. In support thereof, Plaintiff states the following:

## JURISDICTION AND VENUE

1.      Plaintiff Denean Wetton is, and at all times mentioned herein, was a citizen and resident of Pinellas County, State of Florida.

2.      Defendant Grindr, LLC (hereinafter "Grindr") at all times mentioned herein was a Limited Liability Company, organized in the State of California with its principal place of business in West Hollywood, California.

3.      Defendant Grinder, LLC's sole member is Grindr Holding, LLC, a Delaware limited liability company.

4. Grindr Holdings, LLC's sole member is Grindr Capital, LLC, a Delaware limited liability company.

5. Grindr Capital, LLC's sole member is Grindr Gap, LLC, also a Delaware limited liability company.

6. Grindr Gap, LLC's sole member is Grindr Group, LLC, a Delaware limited liability company.

7. Grindr Group, LLC's sole member is Grindr, Inc., a Delaware corporation with its principal place of business in California.

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs, and attorney fees, and is an action between citizens of different states.

9. This Court has personal jurisdiction over Defendant because: (a) Defendant is a business entity operating, present, and/or doing business within this jurisdiction, and (b) Defendant's tortious conduct occurred within this jurisdiction.

10. Venue of this action is proper in this Court under 28 U.S.C. § 1391, as the cause of action alleged herein arose in Pinellas County, Florida.

11. At all times relevant, Defendant made and continues to make marketing efforts to solicit the business of Florida consumers.

## GENERAL ALLEGATIONS

12. Defendant Grindr launched the Grindr platform in 2009.

13. For purposes of this Complaint, Grindr's mobile device, software application, website, and any other mobile or web service or applications owned, controlled, or offered by

2

Grindr, now or in the future, shall be referred to as "Grindr Services," "Grindr Platform," "Grindr app," or "Grindr."

14. Defendant Grindr, LLC operates Grindr, a geo-social networking application available on iOS and Android platforms, which can be downloaded from the Apple App Store and Google Play Store. Unlike traditional dating platforms like Match.com or eHarmony.com, which prioritize long-term compatibility, Grindr is designed to facilitate fast and spontaneous sexual "hook-ups" - immediate, casual sexual encounters. Its core feature—real-time geo-location technology— enables users to locate others within proximity, often within a few feet away, arranging profiles from nearest to farthest to encourage rapid sexual encounters.

**Grindr's Sexually Diverse User Base and Accessibility to Minors**

15.    Although Grindr markets itself as the largest social networking app for gay, bisexual, trans, and queer people, *its user base is sexually diverse*, with many users not identifying as exclusively gay. A 2015 UK survey found the average Grindr user self-identified as a five on the Kinsey scale (zero being exclusively straight, six being exclusively gay), with 53% of users reporting having had sex with women, per a Grindr survey.

*See* Gareth Williams, We Asked Three Hundred Guys on Grindr How Gay They Are, and You'll Be Surprised by the Answer, Pink News (Aug. 19, 2015, 3:42 PM), https://www.thepinknews.com/2015/08/19/we-asked-300-guys-on-grindr-how-gay-they-are-and-youll-be-surprised-by-the-answer/ (last visited May 14, 2025);  *See also* 18 Percent of Grindr Users Are Still in the Closet; Six Percent Will Never Come Out, Queerty (June 27, 2014), https://web.archive.org/web/20140629062227/http://www.queerty.com/18-percent-of-grindr-users-are-still-in-the-closet-six-percent-will-never-come-out-20140627 (last visited May 14, 2025).

16.     This diversity, coupled with features like "Twink" tags that sexualize youthful appearances, attracts a broad range of users, including predators targeting slim and petite minors of any gender.

17.     Grindr's geolocation services deliver hyper-precise, real-time location tracking, accurate to within a few feet, explicitly designed to enable rapid, anonymous sexual hookups, creating an exceptionally hazardous environment for children.

18.     Unlike platforms like Snapchat, which employ Snap Map with randomized location offsets and Bumble, which limits location data to city-level granularity, Grindr's system provides exact coordinates without obfuscation. This system, in combination with illusory self-reporting age verification, exposes minors to child sexual predators.

19.     Additionally, Grindr does not utilize geofencing to restrict interactions in high-risk areas or employ temporal location scrambling to prevent continuous tracking, both of which would prevent predatory exploitation. This absence of industry-standard safeguards allows child predators to leverage Grindr's pinpoint geolocation data to locate and target minors who easily bypass the app's illusory age gate. This technical recklessness makes Grindr uniquely hazardous compared to other social or dating platforms, directly putting children at risk.

**Grindr's Dangerous Platform Features**

20.     The FBI estimates that approximately 500,000 child sexual predators are active online daily, each using multiple profiles to target minors. This alarming figure, supported by the FBI's Operation Restore Justice (205 arrests in 2025) and over 13,000 sextortion cases reported from 2021–2023, underscores the urgent need for Grindr to protect vulnerable users from widespread online predation.

4

*See* KOAA News 5, *FBI: 500,000 Predators Online Targeting Children Daily*, KOAA.com (Mar. 29, 2021), https://www.koaa.com/news/covering-colorado/fbi-500-000-predators-online-targeting-children-daily; Press Release, Fed. Bureau of Investigation, Operation Restore Justice Results in 205 Arrests of Alleged Child Sexual Abuse Offenders (Apr. 24, 2025), https://www.fbi.gov/news/press-releases/operation-restore-justice-results-in-205-arrests-of-alleged-child-sexual-abuse-offenders; Child Crime Prevention & Safety Ctr., *Online Predators*, https://childsafety.losangelescriminallawyer.pro/online-predators.html (last visited May 18, 2025).

21.     Grindr chose not to implement adequate safeguards to prevent minors from accessing its services.

22.     Grindr emphasizes user anonymity and confidentiality. The app does not verify username, sexual orientation, gender identity, or age.   Even Grindr's logo, a mask superimposed on a dark background, reflects the priority of secrecy.

23.     Grindr emphasizes quick, anonymous, no-strings-attached sexual hookups. It's registration process allows users to sign up using only a disposable email address and self-reported date of birth without email or identity verification, or through third-party logins (Google, Apple ID, or Facebook) that bypass SMS verification, which, when required, can be completed with virtual phone numbers from services like TextNow or Burner. *Grindr, How Do I Create a Grindr Account?*, Grindr Help Ctr. (2025), https://help.grindr.com/hc/en-us/articles/360013740474-How-do-I-create-a-Grindr-account [https://perma.cc/8K9X-4Z7T].

24.     Grindr's minimal, unverified signup process ensures that *Grindr has no reliable way of knowing who is or is not* on its platform. Moreover, the lack of robust age verification and

proactive monitoring further prevents Grindr from determining users' true ages or detecting whether adults are engaging minors for sexual hookups.

25.     Upon downloading the Grindr app, users encounter an age verification system that requires only a self-reported birthdate to confirm they are at least 18 or the age of majority, with no cross-checking against official documentation or third-party verification at sign-up, thereby enabling minors to easily access the platform. Its self-reporting birthdate age verification is designed to ensure minors can easily join the platform, supplying a steady pool of underage users to child predators.

26.     Grindr's geolocation services, a core feature of its platform, deliver hyper-precise, real-time geolocation tracking—accurate to within a few feet—designed to facilitate immediate sexual encounters. Unlike many other dating apps, like Snapchat, which randomizes location data via Snap Map to mitigate stalking risks, or Bumble, which limits location to city-level granularity, Grindr provides exact coordinates of users without obfuscation. As such, Grindr arranges user profiles based on their distance from other users for instant and spontaneous sexual hookups creating a uniquely hazardous environment for minors.

27.     At all times material hereto, Grindr chose not to implement geofencing, a standard safeguard used by apps like Life360 and Google Maps to restrict interactions in high-risk areas (e.g., schools, playgrounds). Geofencing, which can be implemented via APIs like Google's Geofencing API, costs as little as $0.05 per user and enhances safety on geolocation-based apps by creating virtual boundaries that restrict user interactions or content visibility within designated areas, thereby helping prevent risky or unauthorized real-world encounters.

28.     At all times material hereto, Grindr chose not to implement temporal location scrambling, a feature employed by apps like Strava to randomize location data over time, thereby

preventing continuous tracking. Grindr lacks temporal scrambling, a standard safeguard that randomizes location data to obscure precise user positions. Apps like Strava utilize scrambling to shift reported coordinates (e.g., 200–500 feet every 5 minutes), incurring costs of $0.03–$0.10 per user via APIs such as Mapbox's.

29.     Thus, Grindr's lax age verification and hyper-precise geolocation quickly and easily direct child predators to children.

**Grindr Profits from Endangering Children**

30.     Grindr gains a competitive advantage in the fiercely competitive hookup and dating app market by deliberately catering to a niche demand among child predators and those seeking underage users, a market that competitors, bound by ethical constraints, avoid.

31.     By choosing to forgo industry-standard age verification technologies, such as biometric ID checks or facial age estimation, Grindr guarantees the continued presence of underage users, whose accessibility attracts and retains child predators on Grindr looking for them.

*See* Jenifer McKim, *How Grindr, A Popular Gay Dating App, Poses Exploitation Risk to Minors*, NPR (Aug. 3, 2021, 5:02 AM), https://www.npr.org/2021/08/03/1024108203/how-grindr-a-popular-gay-dating-app-poses-exploitation-risk-to-minors; Jamie Ross, *Dating App Grindr 'Linked to Dozens of Child Sex Abuse Cases' - Some with Boys as Young as 12*, Daily Mail (Jan. 12, 2025, 9:59 PM), https://www.dailymail.co.uk/news/article-14277037/Grindr-linked-dozens-child-sex-abuse-cases.html (last visited May 13, 2025); Hannah Frishberg, *How Dating Apps Became a Paradise for Predators*, Mother Jones (Aug. 18, 2023, 2:40 PM), https://www.motherjones.com/criminal-justice/2023/08/dating-apps-sexual-violence-grindr-tinder-bumble-lawsuits/; *Underage Users on Grindr: The Importance of Community for LGBTQ+ Youth*, Se. Arrow (May 3, 2022, 8:00 PM), https://www.southeastarrow.com/news/underage-

users-on-grindr-the-importance-of-community-for-lgbtq-youth-2947276 (last visited May 14, 2025).

32.    Grindr is dangerous and even lethal to children, as evidenced by this case. Grindr's platform promotes a hypersexualized environment that normalizes high-risk sexual behavior, endangering minors. For instance, Grindr's homepage promotes a sexualized environment by showcasing a group of scantily clad men groping a centerpiece model, whose hairless body, contrasted with the group's hairier physiques, objectifies an age gap and suggests sexual relations between mature adults and youthful, potentially underage users.



Grindr, LLC, https://www.grindr.com (last visited May 1, 2025).

33.    Concerns have been continuously raised about Grindr's marketing practices, with some users pointing to specific social media strategies as evidence of targeting minors. For instance, a Grindr subscriber noted, "It's sick…they overtly engage teenagers on their immature Twitter (now 'X') account. That's proof that they are directly targeting vulnerable teens to join the app." – newyorkarizonacali (Posted approx. 2 years ago). Reddit,

https://www.reddit.com/r/grindr/comments/149xbyy/its_about_time_the_app_implements_age/?r
dt=35970 (last visited May 6, 2025).

34.     Paradoxically, Grindr's social media posts are at once immature, targeting minors,
and pornographic, sexually grooming minors and targeting those who prey upon them.

35.     For example, on its official X (Twitter) page, Grindr promotes its "Cum Calculator"
through content directly created and posted by Grindr, not as third-party content or retweets,
featuring an explicit promotional video created and posted by Grindr to attract predators to its
platform. This video depicts a young-looking female, who could pass for a minor, walking in
public while taking a selfie video with large amounts of semen dripping from her mouth and face,
giggling like a schoolgirl:



Grindr, @Grindr, got loads? the Grindr Blog is hosting the World's First Interactive C*M Calculator..., X (Apr. 23, 2025), https://grindr.com/blog/cum-calculator. (Last visited May 14, 2025).

36.     In a post linked to the video, Grindr introduces its pornographic "calculator" with instructions:

> At Grindr, we're all about connection—whether it's a spark, a scroll, or something a little more… hands-on. But in a world obsessed with optimizing every aspect of life—from your sleep score to your gut microbiome—there's one nutrient-rich resource that's been scandalously overlooked.
>
> That's right, we're talking about cum.
>
> Today, we're hosting the world's first Interactive Cum Calculator[1]— a Grindr Blog exclusive that finally puts the vitamins, minerals, and precious protein of your favorite milk substitute under the microscope. Forget potatoes, protein bars, and kale smoothies. 2025 demands more. It's time to log your daily intake of the world's most unexpected nutrient source.
>
> **How to Use the Cum Calculator**
>
> 1. **View the Cum Calculator** below.
> 2. **Enter the Number of Loads** you want to calculate.
> 3. **View Your Results**, which will show an approximate nutritional breakdown (calories, protein, etc.).

Grindr (@Grindr), Posting Introducing the World's First Interactive Cum Calculator, X (May 13, 2025).

37.     In addition to the "Cum Calculator" campaign, Grindr has consistently shared similarly prurient content across its social media platforms to promote its hookup app, as evidenced by the following examples:

a.   *Benefits of Swallowing Cum: Is Swallowing Semen Healthy?*, Grindr (Dec. 20, 2023), https://www.grindr.com/blog/benefits-of-swallowing-cum (last visited May 16, 2025).

b. *Is Semen Good for Your Skin?*, Grindr (Dec. 5, 2023), https://www.grindr.com/blog/is-semen-good-for-your-skin (last visited May 16, 2025).

c. *How to Make Semen Taste Better*, Grindr (July 16, 2024), https://www.grindr.com/blog/how-to-make-semen-taste-better (last visited May 16, 2025).

d. *What Does Cum Taste Like? Things to Know About Swallowing Semen*, Grindr (Aug. 29, 2024), https://www.grindr.com/blog/what-does-cum-taste-like (last visited May 16, 2025).

38.    Grindr's Cum Calculator, a video of a young woman walking in public with semen on her face, and other Grindr-created-prurient-content, which were Grindr's own posts, fostered a dangerous environment for minors by normalizing and glamorizing exploitative material, and attracted sexual predators to the platform by signaling a permissive space for illicit and exploitative behavior.

39.    Grindr's marketing materials feature youthful-looking individuals, fostering an environment attractive to both minors and adults who seek to have sex with minors. For example, a screenshot of Grindr's App Store listing features a collage of user photos, including one individual posing on a bed with a black tank top, who may be over 18 but could easily pass for a high school sophomore:

**[Intentionally Left Blank]**

11



Apple App Store, Grindr App Description, at (Apr. 25, 2025), https://www.apple.com/app-store/.

40. By prominently displaying strikingly young-looking models in its advertisements, Grindr signals a welcoming environment for young users while appealing to adult gay and bisexual men seeking sexual hook-ups with children and adolescents under the age of 18.

**Community-Wide Concerns and Warnings About Underage Access**

41. For years, Grindr's users have publicly raised alarms about the platform's inadequate age verification, pointing to the presence of minors and the significant risks this poses. Some of these public warnings included, but were not limited to, the following:

a. "A few years ago, when I was like 18, **a 13-year-old messaged me**. Yes, you read that right – a fucking 13 year old…Don't know what the hell that was, but **Grindr definitely needs age verification**." – Anonymous (Posted approx. 4 years ago). https://www.reddit.com/r/grindr/comments/mz2hji/how_to_ask_a_dudeverify_his_age/(last visited May 6, 2025)(Emphasis added.)

b. "Grindr's Twitter feed has always been cringey and dumb. **It's like they WANT underage teens to use the app**."(Emphasis added). – bighungdaddy (Posted approx. May 2022), Reddit, https://www.reddit.com/r/grindr/comments/u4gnya/cringe_grindr_has_the_shittiest_marketing_of_all/ (last visited May 6, 2025)(Emphasis added.)

c. "A lot of gays don't like the idea, but **I think this app really needs some kind of age verification** for our own protection…The law often views it as an older persons' fault…minors are considered to be functionally illiterate and not capable of making good decisions, and **Grindr isn't bothering with age verification because, reasons**. So **users are…vulnerable**." – Anonymous (Posted approx. 4 years ago), Reddit, https://www.reddit.com/r/grindr/comments/mz2hji/how_to_ask_a_dudeverify_his_age/ (last visited May 6, 2025)(Emphasis added).

d. "Grindr could easily implement third-party verification…**Age verification would reduce risk to… underage users**…Grindr refused to shut down underage use, though, because they gain revenue from it. It's sick…they overtly engage teenagers on their immature Twitter account. That's proof that **they are directly targeting vulnerable teens to join the app.** There should definitely be age verification methods."(Emphasis added.) – newyorkarizonacali (Posted approx. 2 years ago). Reddit,https://www.reddit.com/r/grindr/comments/149xbyy/its_about_time_the_app_implements_age_/?rdt=35970 (last visited May 6, 2025)(Emphasis added.)

e. "Is it me or lately **there has been an increase in minors using the app**? It's already the third time I see suspicious profiles in my grid in three months. [...] **Grindr should really verify the age of its users by requiring everyone to show their ID** or sth, but **everyone can easily lie about their age which is extremely concerning**." – Ice-Kaden2 (Posted approx. 2 years ago)(Emphasis added.)

Reddit,https://www.reddit.com/r/grindr/comments/149xbyy/its_about_time_the_app_implements_age_/?rdt=35970 (last visited May 6, 2025).

f. "**Grindr not lifting a finger to verify the age of its users on <u>what is essentially a sex app</u>** is just negligent. **All it will take is one kid getting raped** for [Apple] to pull the plug and take [G]rindr off the app store, Grindr should want to get out ahead to that."(Emphasis added.)         –         OP         (Posted    approx.    4    years    ago)Reddit, https://www.reddit.com/r/grindr/comments/mz2hji/how_to_ask_a_dudeverify_his_age/ (last visited May 6, 2025). (Emphasis added.)

42. Grindr's public user reports confirmed the presence of minors and predation risks on its platform; however, Grindr's leadership, aware of these red flags, rejected recommendations and failed to implement genuine age verification on the platform, demonstrating a conscious disregard for the safety of minors.

43.    Just eight months before the tragic murder of Miranda Corsette, a magistrate in this very District issued a sobering 115-page Report and Recommendation that cast a stark light on the risks posed by Grindr's platform. *See T.V. v. Grindr, LLC*, No. 3:22-cv-864-WGY-PDB, 2024 WL 48106 (M.D. Fla. Aug. 13, 2024). The report meticulously detailed a case where a minor was sexually exploited by multiple adult men who located the underage victim through Grindr's app, highlighting the platform's inadequate age verification and design features that left minors vulnerable. *Id.*[1]

---

[1] At Grindr's insistence, as a condition of a confidential settlement agreement with the T.V. plaintiff, the Report and Recommendation was vacated; however, this Court explicitly went out of its way to state in its minutes that Grindr insisted upon vacatur as part of a settlement and the Court did not pass judgment on the merits, stating:

The Court is inclined to allow [Grindr's] motion to withdraw the motion to dismiss **and express no opinion** on the Report and Recommendations. Defendant [Grindr] **informs the Court** that vacating

**A Week of Horrific Torture**

44.     Long before February 14, 2025, it was clear to Grindr that it was only a matter of time before its app, as Grindr marketed it and designed it, would cause the torture, rape, and murder of a child.

45.     In 2017, a Grindr user walked out of prison after 10.5 years behind bars for, among other things, armed burglary. Freedom came with its own problems.  He shared a house with his girlfriend and a roommate. They would always be behind on rent, which made the Grindr user stress over the thought of eviction. Moreover, to him, its seemed that his roommate and girlfriend constantly "bitched about nothing."

46.     According to the Grindr user's police confessions, so that he would not hurt his roommate and girlfriend and to deal with his anger and stress, he would log onto Craigslist and find animals that people were giving away, torture and kill them before throwing their remains in a dumpster. He killed so many animals it was hard for him to say how many, but it was "a lot." Any kind of animal would do. He killed so many guinea pigs, rabbits, dogs, and cats that if one turned on a black light to find blood, his "entire house might glow."

47.     On or about February 14, 2025, the Grindr user picked up his phone, but instead of going on Craigslist, this time he logged onto the Grindr app. As such, it was Grindr's policy not to conduct "criminal or other background screening of …users" but reserved the right "to conduct any background check…at any time and to use available public records for any purpose." At that

---

the Report and Recommendations **was a condition of the settlement agreement** and that **they wish** for the Court to vacate the order.

*Id.* ECF 87. (Emphasis added)

time, a background check of the Grindr user would have revealed that he served more than 10 years in prison for armed burglary.

48.    At that same time, Grindr maintained an "age verification" system that relied on user to self-report their age and granted anyone access who reported a birthdate that was 18 years or older.

49.    On or before February 14, 2025, Miranda Corsette, a minor, accessed, downloaded, used, purchased, and/or subscribed to Grindr Services. She signed in as "Randa" or a similar name. Standing at a waifish 5'3" and weighing 90 pounds, she was still years away from reaching physical maturity, which typically occurs between 18 and 21. Biologically, Miranda Corsette's prefrontal cortex—the part of the brain responsible for decision-making, impulse control, planning, and judgment—would expected be significantly more developed at 18 and continue maturing until age 21-22.

50.    On or about February 14, 2025, Miranda Corsette accessed the Grindr application. Through the Grindr app's geo-social location features and/or descriptions that enable adult users to find "Twinks" or minors, a 35-year-old male (hereinafter "Grindr user" or "Miranda Corsette's Killer") found Miranda Corsette on the application, leading to an in-person meeting that same day.

51.    On or about February 15, 2025, the Grindr user offered Miranda Corsette a place to stay and brought Miranda Corsette to his St. Petersburg, Florida, apartment, exploiting her vulnerability as a minor.

52.    Shortly after Miranda Corsette arrived at the Grindr user's house, he became angry and stressed over a lost ring. Over seven days, Miranda Corsette endured relentless physical abuse at the hands of the Grindr user. The Grindr user repeatedly raped Miranda Corsette's vagina and

anus with his fingers searching for the lost ring and savagely beat her until she was swollen and unrecognizable.

53.     The torture was not only physical but psychological, designed to maximize Miranda Corsette's suffering.   To prolong Miranda Corsette's agony and ensure she remained alive for further cruelty, the Grindr user provided her with medicine, including sore throat spray, to superficially treat her injuries.

**Miranda Corsette's Murder & Desecration of Her Remains**

54.     On or about February 24, 2025, Miranda Corsette's life was brutally extinguished when at the Grindr user's direction, a pool ball wrapped in a sock was shoved into Miranda Corsette's mouth and, with the pool ball in the mouth, Miranda Corsette's head and face were wrapped in Saran Wrap, obstructing her airways and suffocating her. This final act of violence, suffocating a defenseless minor child already broken by days of torture, was the culmination of a week-long torture caused and set in motion by Grindr's dangerous sex hook-up app that ensnared the child into a deadly trap.

55.     The harm continued after Miranda Corsette's death, as her body was dismembered with a chainsaw at a residence in Largo, Florida. Her head and extremities were severed, and her remains were bagged in white garbage bags and thrown into a dumpster where it was transported to an incinerator. This desecration of Miranda Corsette's body has left her family in profound anguish, robbed of the ability to lay her to rest or find closure through a proper burial.

56.     Thus, Miranda Corsette's access, download, use, purchase, and/or subscription to Grindr Services caused an adult male to find Miranda Corsette, resulting in Miranda Corsette being abducted, sexually exploited, tortured, and murdered before her remains were mutilated and thrown into a dumpster.

57.    The trauma inflicted upon Miranda Corsette and the irreparable harm to her family are direct consequences of Grindr's reckless disregard for the safety of minor children who are routinely preyed upon by adult predators who use Grindr's platform and design as a trap.

58.    Grindr's lack of age verification and platform design substantially contributed to Miranda Corsette's death. Miranda Corsette was just sixteen years old—a child when her life was stolen.

59.    Grindr intentionally and recklessly created a dangerous platform, motivated solely by unreasonable financial gain, by designing a sham age verification system relying on self-reported birthdates, hyper-precise geolocation technology without safeguards, and predatory 'Twink Tribe' and other features that sexualized and objectified underage users. Grindr's leadership had actual knowledge, through a 2024 federal court ruling detailing a minor's rape due to identical design flaws, a 2019 UK inquiry linking Grindr to over 60 child sexual abuse cases, Reddit user complaints reporting minors' presence and predation risks, a 2023 Ofcom report showing 32% of children aged 8–17 inaccurately report ages online, and studies confirming 90% of teens bypass age gates, that these choices were unreasonably dangerous and highly likely to cause catastrophic injury.

60. Despite this, Grindr deliberately refused industry-standard safeguards, such as biometric age verification with 99.93% accuracy, costing $0.10 per user, or geofencing, costing $0.05 per user. This intentional misconduct and gross negligence directly caused Miranda Corsette's week-long torture, rape, suffocation, dismemberment, and the family's inability to recover her remains for burial, a catastrophic injury warranting punitive damages up to four times compensatory damages to punish Grindr's reprehensible conduct and deter future harm driven by unreasonable financial gain.

61.     At all times relevant, Grindr received valuable consideration from Miranda Corsette and other persons under the age of eighteen (18) years that accessed, downloaded, used, purchased, and/or subscribed to Grindr Services and/or the adult predators seeking to engage in sexual relationships with minors found on the Grindr platform.

62.     Grindr's financial model, focused on expanding its user base, prioritizes profit over the safety of minors vulnerable to adult sexual predators on the platform. The company generates revenue through premium subscriptions, such as Grindr XTRA ($19.99/month, $39.99/3 months, $99.99/year) and Grindr Unlimited ($39.99/month, $79.99/3 months, $239.99/year), as well as targeted advertising that leverages geolocation data. This structure incentivizes maximizing user engagement while failing to implement sufficient age verification safeguards to prevent exploitation of minors, fostering an environment where growth supersedes user protection.

63.     The absence of genuine age verification or monitoring systems, despite known risks of predation, reveals a reckless disregard for the foreseeable harm to minors. Grindr's subscription and advertising revenues, derived in part from a user base that includes vulnerable individuals, underscore a pattern of prioritizing profit over preventing exploitation. This conduct, rooted in maximizing financial gain, establishes a basis for remedies that address the severity of the harm caused, consistent with statutory standards for holding the company accountable.

64.     At all times relevant, Grindr knew or should have known that there were minors on its platform, including Miranda Corsette Studies confirm that approximately 90% of teens do not accurately report their age online (Pew Research Center, *Teens, Social Media & Technology*, 2024), and approximately 85% bypass self-reported gates (National Center for Missing and Exploited Children, 2023). Thus, Grindr knew that the substantial presence of minors on its platform was a statistical certainty and, as such, Grindr's continued reliance on self-reported age

verification constituted a conscious disregard for the safety of minors using its app, including Miranda Corsette.

65.     Thus, at all times relevant, Grindr knew or should have known that its sham age verification system and platform design created a foreseeable zone of danger for minors, including Miranda Corsette, who accessed, downloaded, used, purchased, and/or subscribed to Grindr Services. This foreseeable risk, which Grindr consciously ignored, directly and proximately led to Miranda Corsette's exploitation, torture, and death.

66.     The tragedy of Miranda Corsette, a 16-year-old murdered by a user who found her on Grindr, exposes the platform's gross negligence in relying on a farcical self-reported age verification system. This performative gesture, as absurd as a bar or strip club asking teenagers to state their age without checking ID, allowed a minor to access an adult-oriented platform with foreseeable catastrophic consequences.

**Grindr Ignores Modern Safety Standards**

67.     Societal expectations, rooted in common law and experience, demand that platforms use modern, effective age verification technologies to protect minors from harmful adult interactions. As such, Grindr's corporate decision to sacrifice minor safety in favor of accelerating user growth and corporate valuation directly and substantially contributed to the tragedy of Miranda Corsette's torture and murder.

68.     Evidence of industry standards, customs, and practices is "often highly probative when defining a standard of care." 57A Am.Jur. 2d Negligence § 185 (2002). Such evidence may be relevant and admissible to aid the trier of fact in determining the standard of care in a negligence action "even though the standards have not been imposed by statute or promulgated by a regulatory body and therefore do not have the force of law." *Ruffiner v. Material Serv. Corp.*, 506 N.E.2d

581, 584 (1987); *Elledge v. Richland/Lexington School District Five*, 534 S.E.2d 289, 291 (Ct. App. S.C. 2000). Indeed, proof of a general custom and usage may be admissible "even where an ordinance prescribes certain minimum safety requirements which the custom exceeds." *Duncan v. Corbetta*, 178 A.D.2d 459, 577 N.Y.S.2d 129 (1991).

69.     Platforms like Yubo utilize Yoti's facial age estimation ($0.10 per verification, with 99.93% accuracy for 13 to 17-year-olds), whereas Grindr chooses to implement illusory and ineffective self-reported age gates.

70.     In 2025, advanced age verification includes Jumio's ID verification (99.9% accuracy, $0.50–$1.00 per user) and Yoti's facial age estimation (99.93% accuracy for 13–17-year-olds, $0.10–$0.30), while IEEE 2413-2025 requires location data obfuscation, all which Grindr ignored. Standard age verification methods in 2025 include:

**a.** Government-Issued ID Verification with Biometric Authentication: Users submit a driver's license or passport, verified by AI-driven document analysis and paired with a selfie for 3D facial mapping and liveness detection, achieving approximately 99.9% accuracy at an estimated cost of $0.50 to $1.00 per verification (Jumio, *Online Age Verification System: Simple and Secure*, Mar. 12, 2020, https://www.jumio.com/solutions/age-verification/).

**b.** Facial Age Estimation: AI analyzes selfies with reportedly 98.35% accuracy for users under 13 and 99.93% for distinguishing 13–17-year-olds from those under 25, at an estimated cost of $0.10 to $0.30 per verification (Yoti, *The Digital Economy Act and Age Verification on Adult Websites*, Feb. 3, 2025, https://www.yoti.com/blog/the-digital-economy-act-and-age-verification-on-adult-websites/).

**c.** Third-Party Database Cross-Referencing: User information is matched against credit bureaus or government records, costing approximately $0.20 to $0.50 per verification (Expert

Insights, *The Top 9 Age Verification Solutions*, Nov. 12, 2024, https://expertinsights.com/insights/the-top-9-age-verification-solutions/).

d. Reusable Age Tokens: Anonymous digital tokens are issued after one-time verification for subsequent access, with an initial cost of approximately $0.10 to $1.00 and $0.01 thereafter (Yoti, *Age Verification Tools for Online Customers and Custom-Built Apps*, January 23, 2023, https://www.yoti.com/solutions/age-verification/).

71.     These safeguards—costing as little as $0.10 per verification—reflect the modern standard of care among platforms that recognize the severe and foreseeable risks posed to minors online. The technology is inexpensive, widely available, and easily integrated, and its use has become a common practice among responsible platforms that are aware of the dangers of adult-minor interaction.

72.     Grindr's reckless and careless reliance on self-reported age verification, and choosing not to use robust technologies like Yoti's facial age estimation (98.35% accurate for under-13), 99.93% for distinguishing 13–17-year-olds from under-25, (costing $0.10–$0.30 per verification) or Jumio's ID verification ($0.50–$1.00 per user), enabled Miranda Corsette to access the platform undetected eventually causing her to be targeted, raped, tortured, and murdered by a Grindr user.

73.     Companies that choose to lag behind evolving safety norms for profit do so at their peril. Courts have long held that "[a] whole calling may have unduly lagged in the adoption of new and available [safety] devices." *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932). As such, Florida law makes clear that "as the risk grows greater, so does the duty, because the risk to be perceived defines the duty that must be undertaken." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992). The risk of harm to minors from unregulated, anonymous adult contact on digital platforms

is not just foreseeable — it is extreme. Grindr's refusal to implement reasonable and available safeguards in the face of this grave danger represents a knowing departure from the duty imposed by law and substantially contributed to the preventable torture and murder of Miranda Corsette.

74.    At all times material, Grindr knew how to genuinely and proactively verify a user's age but purposefully avoids doing so. However, only when a user explicitly self-identifies as underage by entering a disqualifying birthdate did Grindr activate a reactive age verification process. The reactive process requires multiple forms of proof:

a.    A clear photograph of the user holding a government-issued ID that shows their date of birth;

b.    A clear photograph of the user holding a handwritten note with either their email address or device ID; and

c.    A screenshot of the in-app suspension message they received.

*See* Grindr Help Center, *Confirming Your Age*, https://help.grindr.com/hc/enus/articles/4417616146963-Confirming-your-age (last visited May 14, 2025).

75.    Grindr knowingly created a two-track system: a sham front door built to be bypassed by the vast majority of minors, and a reactive backstop rolled out only when the company can no longer pretend it didn't know a user is underage. Grindr was not incapable of verifying age; it was unwilling. The company had the means to keep minors off its platform, but it withheld them to preserve easy onboarding and avoid disrupting user growth, even when the cost is the safety of children.

76.    This reactive approach, lacking proactive measures such as mandatory ID verification for all users at signup, is designed to allow minors, including Miranda Corsette, to

easily create accounts and engage with adult users undetected until a report is made or they self-report as underage, often after inappropriate interactions have already occurred, exposing them to significant risks of harm.

*See* GBH News Ctr. for Investigative Reporting, Grindr and Other Dating Apps Fail to Protect Teens from Sexual Predators (Nov. 17, 2021), https://www.wgbh.org/news/national-news/2021/11/17/grindr-and-other-dating-apps-fail-to-protect-teens-from-sexual-predators   (last visited May 14, 2025).

77.    Through reasonable, proactive age verification measures, Grindr could prevent persons under the age of eighteen (18) from accessing, downloading, using, purchasing, and/or subscribing to Grindr Services. *https://sightengine.com/detect-minor-children.* However, Grindr knowingly chose not to implement commercially reasonable safeguards, knowingly and intentionally prioritizing user acquisition and profit over the safety of minors.

78.    Grindr's reactive age verification, requiring government-issued ID only after a Grindr superscribed self-reports a birthdate that identifies them as a minor, failed to prevent minors' access to the Grindr sex hook-up platform, and caused Miranda Corsette to be kidnapped, tortured, raped, and murdered by a Grindr user who would not have found Miranda Corsette but for her presence on the Grindr platform.

79.    Self-reported age verification, which typically relies on users entering a birthdate or affirming their age without any independent confirmation, has been widely criticized as an ineffective safeguard against underage access to age-restricted content online. Regulatory bodies, research institutions, and investigative journalism have consistently found that minors can and do easily circumvent these systems. The following sources illustrate the widespread consensus that self-declared age verification fails to protect minors in any meaningful way:

a. Ofcom, the U.K.'s communications regulator, found that 32% of children aged 8–17 had social media profiles showing 18 or older, underscoring the routine falsification of age to bypass restrictions. *Ofcom, A Third of Children Have False Social Media Age of 18+,* OFCOM (Mar. 2023), https://www.ofcom.org.uk/online-safety/protecting-children/a-third-of-children-have-false-social-media-age-of-18.

b. The Guardian reported that, according to the UK Advertising Standards Authority, over 80% of children admitted to lying about their age to gain access to online platforms, exposing the ineffectiveness of self-reported age gates. *Mark Sweney, More Than 80% of Children Lie About Their Age to Use Sites,* THE GUARDIAN (July 26, 2013), https://www.theguardian.com/media/2013/jul/26/children-lie-age-facebook-asa.

c. A report from iDenfy, a digital ID verification provider, called self-reported age gating "highly vulnerable," noting that minors frequently input fake birthdates to access content or purchase restricted products. *Gabija Stankevičiūtė, Age Gating vs Age Verification: Protecting Minors Online,* IDENFY BLOG (Nov. 27, 2023).

**Grindr Facilitated Miranda Corsette's Murder**

80. At all times relevant, Grindr knew or should have known that the access, download, use, purchase, and/or subscription to Grindr Services endangered the health, safety, and well-being of minors and children, including Miranda Corsette. For example:

a. Grindr's Terms and Conditions of Service Agreement states that Grindr does not conduct criminal or other background screening of its users;

b. Grindr's Terms and Conditions of Service Agreement denies any obligation to monitor any user's registration for Grindr Services.

c.      Grindr's Privacy and Cookies Policy states that the Grindr App allows users to share sensitive information, including their sexual orientation and precise location, with Grindr, the service providers who assist in running Grindr's services, and other Grindr users. *See https://www.grindr.com/privacy-policy/?lang=en-US;*

d.      Grindr's Privacy and Cookie Policy states that Grindr uses Personal Data from its users to access their camera, photo roll, and microphone to allow a user to share with other users, conduct partner promotions, communicate with the user for promotions, and for Automated Decision Making – such as removing non-compliant images;

e.      Grindr's Terms and Conditions of Service Agreement states that Grindr does not verify the information provided by the users concerning users' identity, health, physical condition, or otherwise.

81.     At all times relevant, Grindr knew or should have known that the many minors that its sham age verification allowed to enter the platform, including Miranda Corsette, were incapable of consenting to the Terms and Conditions of Service Agreement, Grindr's Privacy and Cookie Policy, any other purported agreements that Grindr may have with its users. *See Orange Motors of Miami, Inc. v. Miami National Bank*, 227 So.2d 717 (Fla. 3d DCA 1969); L*iberty Mutual Ins. Co. v. Conley*, 152 So.2d 521 (Fla. 1st DCA 1963); *Mossler Acceptance Co. v. Perlman*, 47 So.2d 296 (Fla. 1950); *Sparr v. Florida S.R.Co.*, 6 So.60 (Fla. 1889).

82.     Grindr's Terms and Conditions of Service Agreement did nothing to protect minors, as its platform design, including sham age verification and hyper-precise geolocation, foreseeably enabled predatory interactions with minors.

83.     Thus, the criminal acts committed against Miranda Corsette by an adult Grindr user were a reasonably expected manifestation of the very risk Grindr created and failed to guard against. Such acts were neither extraordinary nor bizarre, but instead were the foreseeable and

ordinary outcome of an adult sexual hookup platform designed to be easily accessible to children. See *T.V. v. Grindr, LLC*, No. 3:22-cv-864-MMH-PDB, 2024 WL 48106, at *28 (M.D. Fla. Aug. 13, 2024), citing *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1116 (Fla. 2005).

84.     Grindr's negligent conduct directly set in motion the chain of events that exposed Miranda Corsette to danger. The acts of Miranda Corsette's attacker were not independent of Grindr's wrongdoing but were facilitated and made substantially more probable by Grindr's deliberate failure to implement meaningful safeguards against underage access and exploitation.

85.     The foreseeable risk that adult users would commit criminal misconduct against minors using Grindr's platform was well-documented and known to Grindr through public criticism, internal data, regulatory scrutiny, industry studies, and, eight months before the murder of Miranda Corsette,  by a 115-page Report and Recommendation from this very Court involving Grindr's illusory age verification resulting in the sexual exploitation of a minor by multiple men who found the child on the Grindr platform. See *T.V. v. Grindr, LLC*, No. 3:22-cv-864-WGY-PDB, 2024 WL 48106 (M.D. Fla. Aug. 13, 2024).

86.     Grindr consciously ignored these warnings and failed to act, ensuring that foreseeable harms, including the acts suffered by Miranda Corsette, remained an inevitable consequence of its business model and practices.

87.     Grindr's deliberate refusal to implement available protections substantially contributed to and directly and foreseeably led to Miranda Corsette's exploitation, torture, and death.

**Media Reports on Child Safety Risks on Grindr**

88.     Grindr's continued use of sham self-reporting age verification, despite years of public warnings about underage access, demonstrates negligent and willful failure to protect

minors, including Miranda Corsette.  For years, Grindr faced criticism for failing to implement reasonable precautions to prevent persons under the age of eighteen from accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.  For example:

a.      "Child Molesters Moving to Grindr to Find Underage Victims." Queerty, Queerty, 28 Apr. 2010, https://www.queerty.com/child- molesters-moving-to-grindr-to-find-underage-victims-20100428.

b.      Jozsa, Kyle, et al. "'Safe behind My Screen': Adolescent Sexual Minority Males' Perceptions of Safety and Trustworthiness on Geosocial and Social Networking Apps." Archives of Sexual Behavior, vol. 50, no. 7, 2021, pp. 2965–2980., https://doi.org/10.1007/s10508-021-01962-5.

c.      Macapagal, Kathryn, et al. "Hookup App Use, Sexual Behavior, and Sexual Health among Adolescent Men Who Have Sex with Men in the United States." Journal of Adolescent Health, vol. 62, no. 6, 2018, pp. 708–715., https://doi.org/10.1016/j.jadohealth.2018.01.001.

d.      McKim, Jenifer. "How Grindr, a Popular Gay Dating App, Poses Exploitation Risk to Minors." NPR, NPR, 3 Aug.2021 https://www.npr.org/2021/08/ 03.

e.      McKim, Jenifer B., et al. "Unseen, Part 3: Popular Gay Dating App Grindr Poses Exploitation Risk to Minors." News, GBH, 26 Jan. 2022, https://www.wgbh.org/news/national-news/2021/07/12/popular-gay-dating-app-grindr-poses-exploitation-risk-to-minors.

f.      "There Are a Lot of Child Sexual Assaults on Grindr. Here's Why." Protect Children from Meeting Strangers Online with SaferKid™, https://www.saferkid.com/blog/there-are-a-lot-of-child-sexual-assaults-on-grindr-here-s-why.

g.    Smith, S.E. "The Real Problem with Children Using Hookup Apps." The Daily Dot, 2 Sept. 2014, https://www.dailydot.com/.

h.    Mendez II, Moises. "The Teens Slipping Through the Cracks Dating Apps." The Atlantic, Atlantic Media Company, 6 June 2022, https://www.theatlantic.com/ family/archive/2022/06/teens-minors-using-dating-apps-grindr/661187/.

89.    At all times relevant to this matter, Grindr faced criticism for the physical and mental harm suffered by persons under the age of eighteen (18) years from their access, download, use, purchase, and/or subscription to Grindr Services.  For example:

a.    Smith, S.E. "The Real Problem with Children Using Hookup Apps."

b.    McKim, Jenifer B., et al. "Unseen, Part 3: Popular Gay Dating App Grindr Poses   Exploitation   Risk   to   Minors."   News,   GBH,   26   Jan.   2022, https://www.wgbh.org/news/national-news/2021/07/12/popular-gay-dating-app-grindr-poses-exploitation-risk-to-minors.

c.    Mendez II, Moises. "The Teens Slipping Through the Cracks on Dating Apps."   The   Atlantic,   Atlantic   Media   Company,   6   June   2022, https://www.theatlantic.com/family/archive/2022/06/teens-    minors-using-dating-apps-grindr/661187/.

d.    Suto, Daniel J., et al. "Geosocial Networking Application Use among Sexual Minority Adolescents." Journal of the American Academy of Child & Adolescent Psychiatry, vol. 60, no. 4, 2021, pp. 429–431., https://doi.org/10.1016/j.jaac.2020.11.018.

e.    "Texas Teacher Who Committed Suicide After Being Snagged in Underage Grindr Sex Sting Was Unfairly Set Up by Cops, Family Says." Criminal Legal News, Aug.   2021,   https://www.criminallegalnews.org/news/2021/aug/20/texas-teacher-who-

committed-suicide-after-being-snagged-underage-grindr-sex-sting-was-unfairly-set-cops-family-says/.

 f. "There Are a Lot of Child Sexual Assaults on Grindr. Here's Why Protect Children from Meeting Strangers Online with SaferKid™, https://www.saferkid.com/blog/there-are-a-lot-of-child-sexual-assaults-on-grindr-here-s-why.

 g. McKim, Jenifer B., et al. "Unseen, Part 3: Popular Gay Dating App Grindr Poses Exploitation Risk to Minors." News, GBH, 26 Jan. 2022, https://www.wgbh.org/news/national-news/2021/07/12/popular-gay-dating-app-grindr-poses-exploitation-risk-to-minors.

 h. Taylor, Samuel Hardman, et al. "Social Consequences of Grindr Use." Proceedings of the 2017 CHI Conference on Human Factors in Computing Systems, 2017, https://doi.org/10.1145/3025453.3025775.

**The U.K. Flags 60 Child Sexual Abuse Cases Linked to Grindr, Grindr Fails to Act**

 90. In early 2019, six years before Grindr lead Miranda Corsette's rapist and killer to find her, the UK Secretary of State for Digital, Culture, Media and Sport, Jeremy Wright, announced a formal inquiry into the companies' safety practices in response to media reports detailing over 60 cases of child sexual abuse linked to dating apps including Grindr.

 *See* Ben Quinn, Tinder and Grindr Face Questions over Age Checks After Rape Cases, The Guardian (Feb. 10, 2019), https://www.theguardian.com/society/2019/feb/10/tinder-and-grindr-face-questions-over-age-checks-children (last visited May 14, 2025).

 91. As such, Secretary Wright specifically signaled out Grindr's lax age verification, stating, " I will be writing to these companies asking what measures they have in place to keep children safe from harm, including verifying their age…." *Id*.

92.    In the wake of over 60 cases of child sexual abuse linked to dating apps like Grindr, *Id.*, rather than enact reform, Grindr issued a generic public relations statement meant to placate regulators and deflect responsibility. Grindr claimed, "Grindr is committed to creating a safe and secure environment to help our community connect and thrive, and any account of sexual abuse or other illegal behavior is troubling to us." *Id*.

93.    Following the UK Secretary of State's warnings of lax age verification and child exploitation on Grindr, Grindr's slick public relations and hollow expressions of concern for child safety have proven as dishonest after 6 years as a "the-check-is-in-the-mail" promise of a squatter after not paying rent for six years.  In that time, Grindr was handed every opportunity—legal, technological, and moral—to reform. It chose not to. In more than half a decade before Miranda Corsette's murder, Grindr continued to:

a.    Use sham self-reported age verification gates that could notoriously be bypassed in seconds;

b.    Refuse to implement third-party identity checks, biometric screening, or facial age estimation;

c.    Promote categories like "Twink Tribe" that explicitly sexualize youth;

d.    Maintain Terms of Service, disclaiming responsibility for age verification or user conduct.

**Grindr's Dishonest Claim to Support the Fight Against Online Child Exploitation**

94.    This pattern of deception extends to Grindr's public touting of its membership in the WeProtect Global Alliance, an international movement dedicated to ending the sexual exploitation of children online. On its Help Center page, dated May 5, 2025, Grindr states: "Grindr is a member of the WeProtect Global Alliance, an international movement dedicated to global action to end the sexual exploitation of children online, and has endorsed the Oasis User Safety

Standards." *See* Grindr, How Grindr Moderates Content and Profiles, Grindr Help Center, https://help.grindr.com/hc/en-us/articles/1500009296922-How-Grindr-moderates-content-and-profiles (last visited May 14, 2025).

95.    Grindr's public assertion of its membership in the WeProtect Global Alliance, a coalition dedicated to eliminating online child sexual exploitation, is a deliberate misrepresentation designed to avoid public scrutiny as a platform that profits from the sexual exploitation of children.

96.    The WeProtect Global Alliance's November 2022 Intelligence Briefing explicitly denounces the self-reported age verification method used by Grindr, noting: "The first approach was traditionally self-assertion just asking someone to insert their age or tick a box to confirm their age. Given this **is easily falsified and open to abuse**, more effective and robust age verification is needed for almost all sectors."

*See* WeProtect Global Alliance & Yoti Intelligence Briefing, The Role of Age Verification Technology in Tackling Child Sexual Exploitation and Abuse Online, at 2 (Nov. 2022), https://www.weprotect.org/resources/library/the-role-of-age-verification-technology-in-tackling-child-sexual-exploitation-and-abuse-online/(Last visited May 14, 2025)(Emphasis added.)

97.    By choosing to use this discredited method, Grindr purposely undermines the very principles it publicly claims to uphold through its advertised WeProtect affiliation.

98.    Moreover, WeProtect Global Alliance's November 2022 Intelligence Briefing outlines critical recommendations to prevent child sexual exploitation, which are absent from Grindr's sex hookup platform, including:

a**.    Adoption of robust age verification methods**, such as facial age estimation or ID document checks, to prevent minors from accessing adult platforms at registration, unlike Grindr's reliance on self-reported age gates that allow minors to enter unchecked. *Id.* at 2, 3, 4, and 12.

b.      **Proactive age assurance**, ensuring age verification occurs before platform access, in contrast to Grindr's allowance of initial access without verification, increasing the risk of exploitation. *Id.* at 1-2, 4, 6-8, 11 and 15.

c.      **Age-appropriate platform design**, including disabling geolocation tracking and restricting adult-minor interactions, which Grindr fails to implement despite its geolocation-driven platform and lack of age-based user segregation, enabling predators to target minors. *Id,* at 6, 8, and 11.

d.      **Use of privacy-preserving technologies**, such as facial age estimation that deletes images instantly, which Grindr has not adopted, opting instead for minimal verification that risks minor exposure to child sexual exploitation and abuse. *Id*. at 4, 11, and 12.

e.      **Transparency and adherence to international standards**, such as ISO and IEEE age assurance standards, which Grindr ignores by maintaining outdated methods that fail to protect children.  *Id.* at 11, 13, and 14.

99.     Grindr's deliberate refusal to adopt the preceding WeProtect's recommended protections, directly caused Miranda Corsette's kidnapping, rape, torture, and death.

100.    Grindr's cynical charade as a WeProtect Global Alliance "member," falsely claiming to champion the fight against child sexual exploitation, is deceptive and deplorable. Flouting WeProtect's November 2022 Intelligence Briefing, which brands self-reported age gates as "easily falsified" and demands robust age checks, Grindr's flimsy verification let Miranda Corsette, a minor, onto its predatory platform. There, its geolocation tools and "Twink Tribe" tags—designed to lure—enabled depraved predators to hunt, torture, and murder her. Grindr's lies didn't just betray WeProtect's mission; they caused Miranda Corsette's rape, torture, and death.

**Grindr's Child Endangerment Driven by Unreasonable Financial Gain**

101.    Grindr's deception is motivated by profit. Grindr financially benefited from minors, including Miranda Corsette, who accessed, downloaded, used, purchased, and/or subscribed to Grindr services. A 2018 Northwestern University study found that over 50% of sexually active gay and bisexual adolescent boys under 18 used apps like Grindr, contributing to Grindr's approximately 13.5 million monthly active users as of September 2023 (Northwestern University, *Study on Adolescent Sexual Behavior and Dating Apps* (2018); Top10.com, *Grindr Dating Site & App Review (2024)*, https://www.top10.com/dating/grindr-review (last visited Apr. 25, 2025)) Minors' engagement, including potential subscriptions, increased ad revenue, and attracted adult users, enhancing Grindr's financial gain.

102.    Users of Grindr Services can more efficiently identify persons under the age of eighteen (18) years by narrowing the search results to the Twink Tribe. Thus, Grindr's creation and promotion of the "Twink" Tribe and other descriptive terms Grindr designed and authored expressly facilitated the targeting of underage users, including Miranda Corsette, by adult predators.

103.    Grindr's Privacy and Cookie Policy states that user profiles and distance information are shared with the Grindr Community. Grindr's decision to publicize users' precise locations further magnified the foreseeable risk to minor users, including Miranda Corsette.

104.    This decision was driven by the company's financial interest: a larger and more active user base meant higher advertising revenue, increased subscription sales, stronger engagement metrics, and enhanced corporate valuation. As evidenced by years of ignored warnings, Grindr profited from the exploitation of minors on its platform. Grindr deliberately chose to accept the catastrophic risk of harm to minors, including Miranda Corsette, as an

acceptable cost of doing business. This conscious indifference to human safety in favor of financial gain directly and foreseeably resulted in the exploitation and death of Miranda Corsette.

105.    At all times relevant, as evidenced by years of ignored warnings, as Grindr profited from the exploitation of minors on its platform, Grindr intentionally allowed users under the age of eighteen (18) years to access, download, use, purchase, and/or subscribe to Grindr Services.  In turn, Grindr served minors to adult predators using Grindr Services, viewing them as collateral damage in pursuit of user growth and corporate profitability.

106.    By failing to implement robust safeguards and profiting from minors' use, Grindr caused Miranda Corsette and other minors to suffer damages.

107.    At all times relevant to this matter, Grindr knew that users of Grindr Services – especially persons under the age of eighteen (18) years – are exposed to physical danger because of their access, download, use, purchase, and/or subscription to Grindr Services.

108.    Grindr's failure to implement adequate safeguards enabled minors to interact with adult users, exposing them to inappropriate and harmful encounters. Evidence of this failure includes:

a.  A 2021 GBH News investigation reporting that Grindr is "teeming with underage gay, bisexual, and questioning boys," creating an environment where minors are vulnerable to adult users, with cases such as a 2019 conviction of a Newburyport official for raping a 15-year-old met on Grindr and a 2017 Colorado case involving minors targeted by an adult user (GBH News, *Grindr and Other Dating Apps Fail to Protect Teens from Sexual Predators*, GBH News Ctr. for Investigative Reporting (Nov. 17, 2021), https://www.wgbh.org/news/national-news/2021/11/17/grindr-and-other-dating-apps-fail-to-protect-teens-from-sexual-predators).

b.  A 2022 article in The Southeast Arrow documenting a student's underage use of Grindr and a dangerous encounter at 17 with an adult who misrepresented himself (Lila O'Malley, *The Dangers of Grindr*, The Se. Arrow (Feb. 23, 2022), https://southeastarrow.com/stories/the-dangers-of-grindr,2603).

c.  A 2023 CNA investigation where journalists posing as 15-year-olds on Grindr received sexual propositions from adults, demonstrating the platform's vulnerability to underage access (CNA, *Dangerous Liaisons: Investigating Underage Access to Dating Apps* (2023), https://www.channelnewsasia.com/asia/dating-apps-underage-access-investigation).

d.  Law enforcement sting operations, including a 2021 case charging a Northborough man for attempting to meet a decoy posing as a 15-year-old on Grindr (GBH News, *Grindr and Other Dating Apps Fail to Protect Teens from Sexual Predators*, GBH News Ctr. for Investigative Reporting (Nov. 17, 2021), https://www.wgbh.org/news/national-news/2021/11/17/grindr-and-other-dating-apps-fail-to-protect-teens-from-sexual-predators).

**Grindr's Negligent Undertaking**

109.  Grinder undertook a duty to ensure that Grindr Services provided a safe space where users can discover, navigate, and interact with others in the Grindr Community.  This contention is supported by the following:

a.  On its website, Grindr states, "Safety is not merely the responsibility of users, and Grindr is continuously seeking to develop and improve security features – not only to protect users, but also to provide them with critical safety information needed to ensure a safe experience."

b. Grindr's Privacy and Cookie Policy states that Grindr provides a safe space where users can discover, navigate, and interact with others within the Grindr Community.

36

c.      Grindr's Terms and Conditions of Service Agreement reserves for Grindr the right to remove content.

110.    Grindr's duty to ensure that Grindr Services provides a safe space where users can discover, navigate, and interact with others in the Grindr Community includes, but is not limited to, implementing adequate policies, procedures, and software to screen persons attempting to access, download, use, purchase, and/or subscribe to Grindr Services to ensure that they are over the age of eighteen (18) years.

111.    This duty is necessary to protect the health, safety, and well-being of persons under the age of eighteen (18) years attempting to access, download, use, purchase, and/or subscribe to Grindr Services. In addition, the duty is necessary to shield persons over the age of eighteen (18) who access, download, use, purchase, and/or subscribe to Grindr Services from engaging in unlawful activity with children.

**Grindr's Actions Directly Contributed to Miranda Corsette's Death**

112.    This action challenges Grindr's independent misconduct, including its product design choices, platform architecture, marketing representations, and deliberate refusal to implement reasonable safety measures to protect minors.

113.    In enacting § 230, Congress expressly sought to protect minors and other vulnerable users from harmful online content and internet-based crimes, as reflected in the statute's titles and structure. The Act itself is titled the *Communications Decency Act*; § 230 is labeled the *Online Family Empowerment Act*; and the section is further titled *Protection for private blocking and screening of offensive material*. As explained in *T.V. v. Grindr, LLC*, No. 3:22-cv-864-MMH-PDB, 2024 WL 48106, at *16 (M.D. Fla. Aug. 13, 2024), these titles demonstrate that one of §

230's central purposes was to shield children from online harm—not to insulate companies that design their platforms in ways that facilitate the exploitation of minors and profit from same.

114.    It would be an inversion of § 230's goals to permit platforms like Grindr to weaponize its protections as a means of avoiding responsibility for design choices that knowingly endanger children. Accordingly, § 230 must be construed narrowly to prevent undermining its fundamental purpose of promoting safety, not enabling harm. *Id at* \*106 (explaining that § 230 immunity does not extend to a defendant's own design choices and product structures).

115.    In his statement respecting the denial of certiorari in *Malwarebytes, Inc. v. Enigma Software Group. USA, LLC*, 141 S.Ct. 13 (2020), Justice Clarence Thomas argued for a ***narrow interpretation*** of Section 230's protections.   He expressed concern that lower courts have interpreted the statute too broadly, conferring "sweeping immunity on some of the largest companies in the world."   Justice Thomas signaled that the retraction of broad 230 immunity was only a matter of the "appropriate case" coming before the Court put sweeping §230 in its proper place. Specifically, Justice Thomas wrote:

> I write to explain why, **in an appropriate case**, we should consider whether the text of this increasingly important statute aligns with the current state of immunity enjoyed by Internet platforms. Id at 14. ***Enacted at the dawn of the dot-com era***, § 230 contains two subsections that protect computer service providers from some **civil**…claims. *Id.*  Taken at face value, § 230(c)…indicates that an Internet provider does not become the publisher of a piece of third-party content—and thus subjected to strict liability—simply by hosting or distributing that content…[and] § 230(c)(2)(A) provides an additional degree of immunity when companies take down or restrict access to objectionable content, so long as the company acts in good faith. *Id.* at 15…**This modest understanding is a far cry from what has prevailed in court.** Adopting the **too-common practice of reading extra immunity into statutes** *where it does not belong*, courts have relied on policy and purpose arguments to grant sweeping protection to Internet platforms… Courts have ***extended the immunity in § 230 far beyond anything that plausibly could have been intended by Congress***. Id. (Quotations and citations omitted.)… Section 230(c)(1) protects a company from publisher liability only when content is "provided by *another* information content provider." (Emphasis added.) **Nowhere**

**does this provision protect a company that is itself the information content provider**. And an information content provider is not just the primary author or creator; it is anyone "responsible, *in whole or in part,* for the creation or development" of the content. § 230(f)(3) (emphasis added). Id. at 16.

(Emphasis in bold added.)

116.    Justice Thomas continued:

**Paring back the sweeping immunity** courts have read into § 230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place…**Extending § 230 immunity *beyond the natural reading of the text* can have serious consequences**. Before giving companies immunity from civil claims for "**knowingly host[ing] illegal child pornography**," we should be certain that is what the law demands…we need not **decide today the correct interpretation of § 230**. But in an appropriate case, it behooves us to do so.

Id. at 18. (Emphasis added.)

117.    On June 27, 2025, in *Free Speech Coal. v. Paxton*, 606 U.S. ___, slip op. (2025), the Supreme Court held "adults have no First Amendment right to avoid age verification." *Id.* at *2.  There, against a First Amendment and Section 230 challenge, the Supreme Court upheld Texas H.B. 1181, which required platforms that contained sexual material harmful to minors to "use reasonable age verification methods…to verify that an individual attempting to access the material is 18 years of age or older." *Id* at *2. .  As such, the Supreme Court noted that Florida's age verification law, Fla. Laws ch. 42, §2 (to be codified at Fla. Stat. §501.1737(2) is "materially similar" to Texas H.B. 1181 that survived First Amendment and §230 scrutiny. *See Id.* at *3, fn. 2.

118.    As such, Justice Thomas, writing for the majority, admonished "[w]e are mindful that 'judicial answers' to 'the totally new problems' presented by new technology are necessarily 'truncated,' and that in such circumstances 'we ought not anticipate' questions beyond immediately presented.'" *Id.* at *25. As such, echoing his observation in *Malwarebytes* that §230

was ***"enacted at the dawn of the dot-com era"*** and ***"Courts have extended the immunity in § 230***

***far beyond anything that plausibly could have been intended by Congress***," Id. at 18, in *Paxton,*

Justice Thomas underscored:

> In the past "quarter century" since the Supreme Court weighed in on the
> Communications Decency Act (CDA), the internet has expanded exponentially…
> In 2024, 95 percent of American teens had access to a smartphone, allowing many
> to access the internet at almost any time and place…The content easily accessible
> to adolescents online includes massive libraries of pornographic videos…the Court
> …could not have conceived of these developments, much less conclusively resolve
> how States could address them."

See *Paxton,* 606 U.S. at *27.

119.    Further, in *Paxton,* the Supreme Court noted that in  1997, when the Court  found

that the Communications Decency Act of 1996 (CDA), which criminalized using the internet to

transmit 'obscene or indecent messages' to a minor, "the CDA's "age verification defense was

***illusory*** because, in many cases, existing technology did not include any effective method for a

sender  to prevent minors from obtaining access to its communications on the Internet without also

denying access to adults." *Id.* at *11. (Emphasis added.) However, as this Complaint details, in

2025, modern, effective, and inexpensive technologies that have made age verification effective

and   inexpensive,   including   Government-Issued   ID   Verification   ($0.50   to   $1.00   per

verification)  and Facial Age Estimation ($0.10 to $0.30 per verification).

120.    As a result, Grindr's continued reliance on a "sham age verification system" is an

act of "intentional misconduct" and "gross negligence". This conscious choice to endanger minors,

including Miranda Corsette, for "unreasonable financial gain" falls outside the protections afforded

to publishers or speakers of third-party content under Section 230.

121.    As detailed herein, Grindr's design and operational decisions created a platform foreseeably dangerous to minors, and caused the kidnapping, torture, rape, and death of Miranda Corsette.

122.    Accordingly, Grindr is not entitled to immunity under § 230(c)(1) for its acts of **affirmative misconduct**. Plaintiff seeks to impose liability for Grindr's negligent design and operational decisions, which fall outside the scope of protections afforded to publishers or speakers of third-party content. *See T.V.*, 2024 WL 48106, at *48 (pointing out that defective product design claims against a platform are not barred by § 230(c)(1)).

123.    All claims arise from Grindr's **affirmative misconduct**, including **defective platform design**, failure to implement industry-standard safety measures, advertisements, and misrepresentations about platform safety, not from Grindr's role as a publisher or speaker of third-party content, rendering 47 U.S.C. § 230(c)(1) inapplicable

124.    Accordingly, Grindr is not entitled to immunity under § 230(c)(1) for its acts of affirmative misconduct. Plaintiff seeks to impose liability for Grindr's negligent design and operational decisions, which fall outside the scope of protections afforded to publishers or speakers of third-party content. *See T.V.* at 48. (pointing out that defective product design claims against a platform are not barred by § 230(c)(1)).

125.    All claims arise from Grindr's affirmative misconduct, including defective platform design, failure to implement industry-standard safety measures, advertisements, and misrepresentations about platform safety, not from Grindr's role as a publisher or speaker of third-party content, rendering 47 U.S.C. § 230(c)(1) inapplicable.

## COUNT I
## WRONGFUL DEATH – STRICT LIABILITY PRODUCT DESIGN DEFECT

126.   Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

127.   This count is based on Grindr's own design, operational decisions, and representations, not third-party content, and is not barred by 47 U.S.C. § 230.

128.   At all times relevant, Grindr was a designer, manufacturer, distributor, importer, seller, and/or retailer of the Grindr Services it provided to consumers.

129.   Grindr Services, a downloadable software application, is a 'product' under Florida law, as it comprises tangible hardware and software placed in the stream of commerce, consistent with *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021).

130.   Each designer, manufacturer, distributor, importer, or seller in the chain of distribution is liable for injury caused by a defective product.

131.   A product is defective because of a design defect if it is in a condition unreasonably dangerous to the user and the product is expected to and does reach the user without substantial change affecting that condition.  A product is unreasonably dangerous because of its design if (1) the product fails to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the manufacturer, or (2) the risk of danger in the design outweighs the benefits.

132.   Ordinary consumers expect social networking apps marketed as safe to include robust age verification and safety features to protect minors, expectations Grindr's design fails to

meet by using ineffective self-reported age gates and hyper-precise geolocation.

133.  At all times relevant, Grindr Services was unreasonably dangerous to Miranda Corsette and the ordinary consumer.

134.  The defective design of Grindr's geolocation services, as detailed herein, renders the product unreasonably dangerous by enabling hyper-precise location tracking without robust age verification, geofencing, temporal scrambling, or foreseeably endangering minors, such as Miranda Corsette.

135.  At all times relevant, Miranda Corsette accessed, downloaded, used, purchased, and/or subscribed to Grindr Services without substantial change affecting the product.

136.  At all times relevant, Grindr Services failed to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by Grindr.

137.  Grindr's design, lacking safeguards like biometric age verification used by apps like Yubo, deviates from consumer expectations for safe platforms, rendering it unreasonably dangerous, as minors foreseeably face predation."

138.  At all times relevant, Grindr knew or should have known that person(s) under the age of eighteen (18) years – including Miranda Corsette - accessed, downloaded, used, purchased, and/or subscribed to Grindr Services and that condition was unreasonably dangerous to Miranda Corsette and the ordinary consumer.

139.  At all times relevant, Grindr Services were unreasonably dangerous because the danger in the design outweighed the benefits.

140.    At all times relevant, Grindr knew or should have known that person(s) under the age of eighteen (18) years – including Miranda Corsette - accessed, downloaded, used, purchased, and/or subscribed to Grindr Services and engaged in sexual relationships and activity with adult users of Grindr Services.

141.    As a direct and proximate result of the previously mentioned defective product, Miranda Corsette suffered severe emotional distress and bodily injuries, culminating in her death.

142.    The statutory survivors of Miranda Corsette, deceased, are as follows:

a.    The Estate of Miranda Corsette, for the payment of medical expenses, burial, and funeral expenses as defined by Fla. Stat. § 768.21.

b.    Miranda Corsette's son, A.C. – mental pain and suffering, anguish, loss of decedent's parental companionship, instruction, and guidance, loss of decedent's support and services, all both past and future as defined by Fla. Stat. § 768.21.

143.    As a direct and proximate result of the subject incident, and the previously mentioned defective product of Grindr in causing the death of the Miranda Corsette, the survivors of Miranda Corsette, have lost the support, love, affection, comfort, and companionship of Miranda Corsette, and have experienced mental pain and suffering in the past and will continue to suffer such losses in the future.

144.    Grindr willfully, wantonly, and recklessly designed a defective platform, motivated solely by unreasonable financial gain, by creating a sham age verification system and hyper-precise geolocation features that endangered minors like Miranda Corsette Grindr's

44

policymakers had actual knowledge of the unreasonably dangerous nature of these design choices and their high likelihood of injury, yet pursued them, constituting intentional misconduct and gross negligence. Grindr's willful misconduct, prioritizing profits over safety, justifies punitive damages. Punitive damages, including up to four times compensatory damages, are warranted to punish Grindr's dangerous design and deter future harm.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands a trial by jury and judgment against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times the compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death.

<u>**COUNT II**</u>
<u>**WRONGFUL DEATH – NEGLIGENCE AND NEGLIGENCE PER SE PRODUCT DESIGN DEFECT**</u>

145.    Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

146.    This count is based on Grindr's own design, operational decisions, and representations, not third-party content, and is not barred by 47 U.S.C. § 230.

147.    Based on the allegations articulated in the preceding paragraphs, Grindr is also liable under negligence and negligence per se theories for the defectively

designed Grindr Services.

148.  At all times relevant, Grindr owed a duty of care to Miranda Corsette to exercise reasonable care to prevent foreseeable and known harms, including, but not limited to, the online sexual grooming of children. As such, Grindr owed Miranda Corsette a duty due to its special relationship with minor users, created by marketing to youth and operating a platform accessible to minors, foreseeably endangering them absent safeguards.

149.  At all times relevant, Grindr owed a duty of care (negligence per se) to Miranda Corsette not to violate laws and to exercise reasonable care to prevent foreseeable and known harms, including, but not limited to, the online sexual grooming of children.

150.  At all times relevant, Grindr breached these duties by providing defectively designed services, tools, and products to Miranda Corsette that rendered no protection from the known and reasonably foreseeable harms. Specifically, Grindr's lack of proper age verification and defective geolocation system, lacking geofencing and other safeguards, enabled a predator to locate and exploit Miranda Corsette, causing her death.

151.  As a direct and proximate result of each of the previously mentioned breached duties, Miranda Corsette suffered severe emotional distress and bodily injuries, culminating in her death.

152.  The statutory survivors of Miranda Corsette, deceased, are as follows:

a.    The Estate of Miranda Corsette, for the payment of medical expenses, burial, and funeral expenses as defined by Fla. Stat. § 768.21.

b.    Miranda Corsette's son, A.C. – mental pain and suffering, anguish,

loss of decedent's parental companionship, instruction, and guidance, loss of decedent's support and services, all both past and future as defined by Fla. Stat. § 768.21.

153.  As a direct and proximate result of the subject incident, and the previously mentioned negligence and negligence per se of Grindr in causing the death of the Miranda Corsette, the survivors of Miranda Corsette, have lost the support, love, affection, comfort, and companionship of Miranda Corsette, and have experienced mental pain and suffering in the past and will continue to suffer such losses in the future.

154.  Grindr willfully, wantonly, and recklessly created a dangerous platform through negligent design choices, motivated solely by unreasonable financial gain, by implementing ineffective age verification and geolocation systems that exposed minors to predators. Grindr's policymakers had actual knowledge of the high likelihood of injury, yet pursued these choices, constituting intentional misconduct and gross negligence.

155.  Grindr's willful misconduct, prioritizing profits over safety, justifies punitive damages. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's reckless conduct.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury,  and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture,

and death.

**COUNT III**
**WRONGFUL DEATH – NEGLIGENCE**

156.   Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

157.   This count is based on Grindr's own design, operational decisions, and representations, not third-party content, and is not barred by 47 U.S.C. § 230.

158.   At all times relevant, Grindr owed a duty of care to Miranda Corsette to exercise reasonable care to prevent foreseeable and known harms resulting from Grindr Services, including, but not limited to, the online sexual grooming of children.

159.   At all times relevant, Grindr undertook a duty to ensure that persons under the age of eighteen (18) years do not access, download, use, purchase, and/or subscribe to Grindr Services.

160.   Grindr's duty arises from its voluntary undertaking to market Grindr Services as a safe space, creating a foreseeable risk when failing to protect minors like Miranda Corsette.

161.   At all times relevant, Grindr undertook a duty to design and operate Grindr Services to prevent harmful interactions, including by implementing effective age verification and geolocation safeguards to protect minors.

162.   At all times relevant, Grindr undertook a duty to ensure that Grindr Services was safe for users of Grindr Services, including persons under the age of eighteen (18) years accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.

163.   Grindr's acts and omissions breached each of the duties above. Below are some,

48

but not all, of Grindr's acts and omissions that breached the aforesaid duties of care owed to Miranda Corsette:

a. Grindr knowingly, intentionally, and negligently designed Grindr Services with a sham age verification system that enabled persons under the age of eighteen (18) years, including Miranda Corsette, to access, download, use, purchase, and/or subscribe to the platform;

b. Grindr knowingly, intentionally, and negligently created a platform with hyper-precise geolocation and predatory features, such as 'Twink Tribe' tags, that facilitated sexual relationships and activity between minors and adult users;

c. Grindr knowingly, intentionally, and negligently implemented a defective design lacking industry-standard safeguards, such as robust age verification, geofencing, or temporal scrambling, foreseeably exposing minors to exploitation;

d. Grindr knowingly, intentionally, and negligently engineered Grindr Services to enable adult users to engage in or attempt sexual relationships with minors, including Miranda Corsette, through its design choices;

e. Grindr knowingly, intentionally, and negligently misrepresented that Grindr Services were safe, inducing minors like Miranda Corsette to use the platform;

f. Grindr knowingly, intentionally, and negligently misrepresented that Grindr Services enforced safety standards, despite designing a platform conducive to predation;

g. Other acts and omissions by Grindr described in the foregoing and subsequent paragraphs of Count III.

164. The negligent actions and conditions were caused and created by Grindr.

165. As a direct and proximate result of each of the previously mentioned

breached duties, Miranda Corsette suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

166.    The statutory survivors of Miranda Corsette, deceased, are as follows:

a.    The Estate of Miranda Corsette, for the payment of medical expenses, burial, and funeral expenses as defined by Fla. Stat. § 768.21.

b.    Miranda Corsette's son, A.C. – mental pain and suffering, anguish, loss of decedent's parental companionship, instruction, and guidance, loss of decedent's support and services, all both past and future as defined by Fla. Stat. § 768.21.

167.    As a direct and proximate result of the subject incident, and the previously mentioned negligence of Grindr in causing the death of the Miranda Corsette, the survivors of Miranda Corsette, have lost the support, love, affection, comfort, and companionship of Miranda Corsette, and have experienced mental pain and suffering in the past and will continue to suffer such losses in the future.

168.    Grindr willfully, wantonly, and recklessly created a dangerous platform, motivated solely by unreasonable financial gain, by designing sham age verification, hyper-precise geolocation, and predatory 'Twink Tribe' features that enabled predators to target and torture and suffocate minors like Miranda Corsette Grindr's policymakers had actual knowledge of the unreasonably dangerous nature of these design choices and their high likelihood of injury, constituting intentional misconduct and gross negligence.

169.    Grindr's willful misconduct, prioritizing profits over safety, justifies punitive damages. Punitive damages, including up to four times compensatory damages are warranted to

punish Grindr's reckless conduct and endangerment of children, including Miranda Corsette.

**WHEREFORE**, Plaintiff, Deana Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury,  and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture and death.

## COUNT IV
## NEGLIGENCE

170.    Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

171.    This count is based on Grindr's own design, operational decisions, and representations, not third-party content, and is not barred by 47 U.S.C. § 230.

172.    In the alternative to the foregoing wrongful death claims, Plaintiff brings this cause of action for negligence.

173.    At all times relevant, Grindr owed a duty of care to Miranda Corsette to exercise reasonable care to prevent foreseeable and known harms resulting from Grindr Services, including, but not limited to, the online sexual grooming of children. Grindr's control over platform design and access imposed a duty to prevent minor exploitation, a duty breached by its defective features.

174.    At all times relevant, Grindr undertook a duty to ensure that persons under the age of eighteen years do not access Grindr Services.

175.  At all times relevant, Grindr undertook a duty to ensure Grindr Services were designed and operated to prevent predatory interactions, including through robust age verification and geolocation safeguards to protect minors.

176.  At all times relevant, Grindr undertook a duty to ensure that Grindr Services was safe for users of Grindr Services, including persons under the age of eighteen (18) years accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.

177.  Grindr's acts and omissions breached each of the duties above. Below are some, but not all, of Grindr's acts and omissions that breached the aforesaid duties of care owed to Miranda Corsette:

a. Grindr knowingly, intentionally, and negligently designed Grindr Services with a sham age verification system that enabled persons under the age of eighteen (18) years, including Miranda Corsette, to access, download, use, purchase, and/or subscribe to the platform;

b. Grindr knowingly, intentionally, and negligently created a platform with hyper-precise geolocation and predatory features that facilitated sexual relationships and activity between minors and adult users;

c. Grinder knowingly, intentionally, and negligently implemented a defective design lacking industry-standard safeguards, such as robust age verification, geofencing, or temporal scrambling, foreseeably exposing minors to exploitation;

d. Grindr knowingly, intentionally, and negligently engineered Grindr Services to enable adult users to engage in or attempt sexual relationships with minors, including Miranda Corsette,

through its design choices;

e. Grindr knowingly, intentionally, and negligently misrepresented that Grindr Services were safe, inducing minors like Miranda Corsette to use the platform;

f. Grindr knowingly, intentionally, and negligently misrepresented that Grindr Services enforced safety standards, despite designing a platform conducive to predation;

g. Other acts and omissions by Grindr described in the foregoing and subsequent paragraphs of Count IV.

178. The negligent actions, omissions, and conditions were caused or allowed to exist by Grindr, or were known to Grindr, or had existed for a sufficient length of time that Grindr should have known of the negligent actions, omissions, and conditions.

179. As a direct and proximate result of each of the previously mentioned breached duties, Miranda Corsette suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, loss of capacity for the enjoyment of life. These injuries, directly caused by Grindr's reckless platform design, culminated in Miranda Corsette's torture, rape, and murder, as detailed herein.

180. These losses are recoverable by the Estate of Miranda Corsette.

181. Grindr willfully, wantonly, and recklessly created a dangerous platform, motivated solely by unreasonable financial gain. By designing ineffective age verification, hyper-precise geolocation, and predatory features that cause predators to exploit children, torture, suffocate, and murder, Miranda Corsette Grindr's policymakers had actual

53

knowledge of the high likelihood of injury, constituting gross negligence. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's reckless endangerment of Miranda Corsette.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

182.    Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

183.    This count is based on Grindr's own design, operational decisions, and representations, not third-party content, and is not barred by 47 U.S.C. § 230.

184.    In the alternative to the foregoing wrongful death claims, Plaintiff brings this cause of action for Intentional Infliction of Emotional Distress.

185.    Grindr's conduct was extreme and outrageous, as it deliberately maintained a platform with sham age verification and predatory features like 'Twink Tribe,' despite actual knowledge of minor exploitation from prior incidents (SAC ¶¶ 41, 86) and the 2024 T.V. v. Grindr ruling, evidencing deliberate indifference to minors like Miranda Corsette.

186.    At all times relevant, Grindr was intentional and reckless in the actions and

omissions that ignored and allowed Miranda Corsette and other minors to access, download, use, purchase, and/or subscribe to Grindr Services.

187.    At all times relevant, Grindr was intentional and reckless in designing and operating Grindr Services with a sham age verification system, hyper-precise geolocation, and predatory features like the 'Twink Tribe' that enabled child predators to find minors on the platform, including Miranda Corsette, thereby foreseeably causing severe emotional distress.

188.    Grindr's intentional refusal to implement safeguards, knowing its platform facilitated predation, was directed at vulnerable minors like Miranda Corsette, a 16-year-old girl, through youth-oriented marketing and features like 'Twink Tribe' intended to appeal to and attract predators.

189.    Grindr knew of specific predation incidents, including user reports and governmental agency reports (SAC ¶¶ 41, 86), yet prioritized profits, constituting intentional misconduct foreseeably causing Miranda Corsette's severe emotional distress.

190.    Miranda Corsette experienced emotional distress as a result of Grindr's actions and omissions.

191.    At all times relevant, Grindr's actions and omissions directly caused Miranda Corsette's emotional distress.

192.    At all times relevant, Grindr was in the exclusive position to stop the harm Miranda Corsette experienced, but refused to do so.

193.    At all times relevant, Grindr acted intentionally and recklessly in designing and operating Grindr Services with a sham age verification system, hyper-precise

geolocation, and predatory features like the 'Twink Tribe' that enabled minors, including Miranda Corsette, to access the platform and engage with adult predators, foreseeably causing severe emotional distress.

194.    At all times material hereto, Grindr was in the exclusive position to stop the harm Miranda Corsette experienced but refused to do so.

195.    As a direct and proximate result of Grindr's intentional conduct, Miranda Corsette suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

196.    These losses are recoverable by the Estate of Miranda Corsette.

**WHEREFORE**, Plaintiff, Deana Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury,  and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death.

**COUNT VI**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

197.    Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

198.    This count is based on Grindr's own design, operational decisions, and

representations, not third-party content, and is not barred by 47 U.S.C. § 230.

199.    In the alternative to the foregoing wrongful death claims, Plaintiff brings this cause of action for Negligent Infliction of Emotional Distress.

200.    At all times relevant, Grindr owed a duty of care to Miranda Corsette to abide by its terms of use and to prevent Miranda Corsette and other persons under the age of eighteen (18) years from accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.

201.    Grindr's duty to prevent emotional distress to minors like Miranda Corsette likewise stems from knowingly attracting vulnerable users to its platform.

202.    Grindr breached this duty of care to Miranda Corsette.

203.    At all times relevant, Grindr was negligent in the actions and omissions that ignored Miranda Corsette and other persons under the age of eighteen (18) years accessing, downloading, using, purchasing, and/or subscribing to Grindr Services.

204.    Miranda Corsette experienced severe emotional distress as a direct result of Grindr's breached duties, actions, and omissions.

205.    At all times relevant, Grindr's design and operation of Grindr Services with a sham age verification system, hyper-precise geolocation, and predatory features like the 'Twink Tribe' were extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, enabling minors like Miranda Corsette to be targeted by predators.

206.    At all times relevant, Grindr was negligent in designing and operating Grindr Services with ineffective age verification, geolocation, and predatory features that enabled minors, including Miranda Corsette, to access the platform and engage with adult predators, foreseeably causing severe emotional distress.

207.   At all times relevant, Grindr was in the exclusive position to stop the harm Miranda Corsette experienced, but refused to do so.

208.   Miranda Corsette's use of Grindr Services resulted in Miranda Corsette 's exposure to and engagement in sexual relationships and activities with adults; thus, such use directly and proximately caused and substantially contributed to her torture, battering, suffocation, and death. *See Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 848-51 (Fla. 2007)( The outside force need not be applied by the defendant; for example, in an action against a hotel owner, the Florida Supreme Court held that a hotel guest who was robbed by an unknown assailant across the street from the hotel satisfied the physical impact requirement.)

209.   As a direct and proximate result of Grindr's negligent conduct, Miranda Corsette suffered severe emotional distress and bodily injuries culminating in and causing her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

210.   These losses are recoverable by the Estate of Miranda Corsette.

211.   Grindr willfully, wantonly, and recklessly endangered minors' emotional well-being, motivated solely by unreasonable financial gain, by designing a platform with sham verification, geolocation, and predatory features that caused Miranda Corsette's torture, rape, suffocation, and death. Grindr's policymakers had actual knowledge of the high likelihood of harm, constituting gross negligence. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's reckless conduct.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury,  and judgement against Defendant Grindr, LLC for suit costs,

pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION**

212.    Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

213.    This count is based on Grindr's own design, operational decisions, and representations, not third-party content, and is not barred by 47 U.S.C. § 230.

214.    In the alternative to the foregoing wrongful death claims, Plaintiff brings this cause of action for Negligent Misrepresentation.

215.    At all times relevant, Grindr made statements in its Terms and Conditions of Service Agreement, marketing materials, help center articles, onboarding screens, and user guidelines. Grindr knew and intended that these statements would be relied upon by users, including minors, to create the appearance of a secure and monitored platform.

216.    At all times relevant, Grindr specifically and repeatedly made safety assurances, including, but not limited to, promises that it enforced community standards, prohibited underage access, and acted swiftly to remove dangerous users, thereby leading users like Miranda Corsette to reasonably believe that the Grindr Services were safe to use.

217.    At all times relevant, Miranda Corsette and other users of Grindr Services were exposed to and reasonably relied upon Grindr's ubiquitous and repeated representations

concerning the safety and monitoring of Grindr Services, including statements incorporated into mandatory agreements and prominently displayed safety messaging across the platform.

218.    Upon information and belief, Miranda Corsette, like other users of Grindr Services, was exposed to Grindr's representations regarding user safety and enforcement of community standards through multiple channels, including, but not limited to, Grindr's onboarding screens during account creation, safety tips and community guideline reminders displayed within the application, publicly available Terms and Conditions of Service, and safety-related marketing statements promoted through Grindr's official website and customer communications.

219.    These representations included specific assurances by Grindr that "Safety is not merely the responsibility of users, and Grindr is continuously seeking to develop and improve security features — not only to protect users, but also to provide them with critical safety information needed to ensure a safe experience." Grindr also marketed and promoted Grindr Services as a "safe place" for users to meet others, repeatedly representing that it actively enforced community standards and swiftly addressed safety threats.

220.    Grindr made these statements with the intent that users, including vulnerable individuals such as minors, would rely upon them when deciding to access, download, use, and/or subscribe to Grindr Services.

221.    On or before February 14, 2025, when Miranda Corsette accessed and downloaded the Grindr Services application, she was presented with onboarding screens that required her to accept Grindr's Terms and Conditions of Service Agreement. This agreement included assurances that Grindr enforced community standards and prohibited underage access to ensure user safety.

222.    During the account creation process, Miranda Corsette encountered in-app prompts and safety tips stating that Grindr was a "safe space" and actively monitored to remove dangerous users, reinforcing her belief that the platform was secure for her use.

223.    Miranda Corsette was further exposed to Grindr's safety representations through Grindr's official website, advertising, and social media posts, accessible via her mobile device, which promoted Grindr as committed to user protection, including the assurance that "Grindr is continuously seeking to develop and improve security features" to ensure a safe experience, as displayed on Grindr's public-facing pages, promotional campaigns, and help center articles.

224. Miranda Corsette actually relied upon their assurances of safety, including Grindr's representations that it enforced community standards, prohibited underage access, and actively monitored the platform, when she accessed, downloaded, and used Grindr Services on or about February 14, 2025, and were reinforced before and after by Grindr's conspicuous claims in its advertising, social media posts, directly influencing her decision to create an account and engage with other users, including the adult male who exploited and murdered her.

225.    Miranda Corsette encountered and relied on Grindr's safety assurances during account creation on February 14, 2025, including onboarding prompts stating 'Grindr is a safe space' and Terms claiming community standards enforcement, which she accepted.

226.    Miranda Corsette's exposure to these assurances occurred at critical decision points—app installation, account setup, and ongoing navigation—where Grindr's representations in its advertising and social media posts, alongside in-app messaging, were designed to instill and maintain confidence in the platform's safety for vulnerable users like Miranda Corsette, a 16-year-old minor.

227    Miranda Corsette's reliance was justifiable, as Grindr's safety assurances were prominently displayed in-app and in marketing, with no contradictory information reasonably available to a 16-year-old minor.

228.    Miranda Corsette, being a minor child, had no reasonable means to independently verify the accuracy of Grindr's safety representations. Minors, like Miranda Corsette, were wholly dependent on Grindr's superior knowledge and internal enforcement practices to ensure that Grindr Services operated as represented. Accordingly, Miranda Corsette's reliance on Grindr's public assurances of safety was not only actual but reasonable under the circumstances.

229.    At all times relevant, Grindr's statements and conduct materially misstated or exaggerated facts relating to the oversight, enforcement, and safety of its Services, falsely suggesting active monitoring and meaningful enforcement when, in fact, Grindr had abdicated these duties.

230.    Grindr knew or should have known that its user base would foreseeably rely upon its public assurances of safety when deciding to access, download, use, or subscribe to Grindr Services.

231.    Grindr was negligent and/or lacked due diligence when making statements about the safety of Grindr Services, given its actual practices of failing to enforce safety policies, including the failure to implement adequate safeguards to prevent persons under the age of eighteen (18) from accessing and using Grindr Services.

232.    Grindr owed a duty of care to Miranda Corsette beyond a purported contract, arising from Grindr's position of superior knowledge, exclusive control over platform safety features, and its voluntary undertakings to assure users of the platform's security.

233.     Grindr occupied a special position of confidence and trust in relation to Miranda Corsette by making targeted representations about platform safety that were intended to induce reliance by all users, including vulnerable minors.

234.     Grindr was in the unique and exclusive position to prevent the injuries and damages to Miranda Corsette but failed to do so despite being on actual and constructive notice that its platform was unsafe for minors and inadequately monitored.

235.     Miranda Corsette actually relied on Grindr's representations. Miranda Corsette accessed, downloaded, used, and subscribed to Grindr Services based on the understanding and belief, induced by Grindr's widespread and repeated statements, that Grindr was a safe environment subject to active policy enforcement.

236.     Miranda Corsette 's reliance on Grindr's representations was reasonable. A reasonable user, particularly a vulnerable minor such as Miranda Corsette, would have accepted the truth of Grindr's assurances concerning the enforcement of safety policies. Grindr's official documents, in-app messaging, and marketing communications presented these safety representations in a manner calculated to elicit reliance, and no reasonable user would expect that an internationally marketed platform would knowingly misrepresent such critical matters.

237.     Had Miranda Corsette known the facts — that Grindr Services were not adequately monitored or enforced and that minors were regularly able to access and use the Services — Miranda Corsette would not have accessed, downloaded, used, purchased, or subscribed to Grindr Services.

238.     As a direct and proximate result of Grindr's negligent misrepresentations, Miranda Corsette suffered severe emotional distress and bodily injuries culminating in and causing her

death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

239.    As such, Miranda Corsette's reliance on Grindr's misrepresentations directly caused her to access the platform, where she was targeted by a predator, resulting in severe emotional distress and physical injuries culminating in her death.

240.    These losses are recoverable by the Estate of Miranda Corsette.

241.    Grindr willfully, wantonly, and recklessly misrepresented its platform's safety, motivated solely by unreasonable financial gain, by promoting it as safe while designing dangerous features like sham age gates. Grindr's policymakers had actual knowledge that these misrepresentations posed a risk to minors, constituting gross negligence. Punitive damages, including up to four times compensatory damages are warranted to punish Grindr's deceptive conduct.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury,  and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death.

**COUNT VIII**
**CIVIL LIABILITY UNDER 18 U.S.C. § 1595 – PARTICIPATION IN A SEX TRAFFICKING VENTURE**

242.    Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

243.    Under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), and pursuant to the Fight Online Sex Trafficking Act (FOSTA), Pub. L. 115-164, which amends 47 U.S.C. § 230 to permit civil claims against platforms knowingly facilitating sex trafficking in violation of 18 U.S.C. § 1591, a civil action may be brought against any person or entity who knowingly benefits, financially or by receiving anything of value, from participation in a venture which that person or entity knew or should have known has engaged in an act in violation of 18 U.S.C. § 1591. This statute is specifically designed to protect troubled teens like Miranda Corsette, a vulnerable young girl caught in the throes of youthful struggles, from predators who deliberately target them precisely because of their vulnerabilities, ensuring such vulnerable youth are shielded from exploitation.

244.    A 35-year-old adult male used Grindr Services to locate, contact, and exploit Miranda Corsette, a 16-year-old female minor. The Grindr user engaged in sex acts with Miranda Corsette, offered her shelter in his apartment for nearly a week, and ultimately caused her death.

245.    According to sworn law enforcement records, a resident of the apartment where the Grindr user lived informed detectives that the Grindr user routinely targeted 'disadvantaged women and girls who were either homeless or vulnerable due to their circumstances.' This pattern is documented and corroborated.

246.    Miranda Corsette's vulnerability due to her young age and circumstances placed her squarely within the demographic that the Grindr user routinely targeted for sexual exploitation.

Grindr knew of Miranda Corsette's victimization by a trafficking venture on its platform through user reports and algorithmic detection of her minor status, yet continued to profit directly or indirectly from her account.

247.    After locating Miranda Corsette on Grindr, the Grinder user offered her a place to stay.

248.    The offer of lodging or a place to stay constituted 'things of value' under 18 U.S.C. § 1591(a)(2). The Grindr user provided it in exchange for sex and to maintain continued access and control over Miranda Corsette for ongoing sexual exploitation.

249.    Defendant Grindr, LLC knowingly participated in this sex trafficking venture by designing, marketing, and maintaining a platform that lacked meaningful age verification, promoted youth-targeting classifications such as 'Twink,' enabled real-time location-based access to nearby users, and failed to implement even minimal safeguards to prevent adult-minor contact.

250.    Grindr's participation in the sex trafficking venture was facilitated by its geolocation system, as detailed herein, which lacked geofencing, temporal scrambling, and robust age verification, allowing predators like a Grindr user to target minors like Miranda Corsette with ease.

251.    Grindr's operational practices, including its deliberate design of a platform with ineffective age verification, hyper-precise geolocation, and youth-targeting features like 'Twink' tags, created a virtual environment where trafficking thrived, much like a business that designs its premises to facilitate illegal activity. Grindr's platform, by prioritizing user engagement and profit over safety, foreseeably enabled predators to exploit minors like Miranda Corsette through its defective features.

252.    Grindr knowingly benefited financially and otherwise from this venture, including

66

through subscription payments from the Grindr user, monetization of data linked to user engagement between adults and minors, and growth in platform valuation resulting from lax onboarding and unrestricted access. Grindr's business model was structured to profit directly from the unchecked presence of minors and predators on its platform, generating revenue from subscriptions, advertising, and data analytics fueled by illicit interactions, in a manner akin to businesses that profit from renting space to known traffickers while ignoring overt signs of exploitation.

253    Grindr was on actual and constructive notice, long before Miranda Corsette's death, that its platform was being used to facilitate the sexual exploitation of minors. It was warned by the media, advocacy groups, and, most notably, by this Court in *T.V. v. Grindr*, No. 3:22-cv-864-WGY-PDB, 2024 WL 48106 (M.D. Fla. Aug. 13, 2024). Grindr's corporate leadership, like entities that knowingly allow trafficking to persist for profit, received repeated alerts through industry studies, regulatory inquiries, and internal data showing that minors routinely bypassed its sham age gates and were targeted by adult predators. These warnings, including reports of minors soliciting or being solicited in patterns detectable by basic algorithmic monitoring, constituted unmistakable indicators of trafficking that Grindr willfully disregarded.

254.    Grindr deliberately chose not to act. It did not implement biometric age checks, did not restrict geolocation matching, did not eliminate categories facilitating the targeting of youthful users, and did not suspend accounts linked to grooming behavior. This inaction was not mere negligence but a calculated corporate strategy to maintain a low-friction onboarding process that maximized user acquisition, even at the cost of enabling rampant trafficking, mirroring businesses that prioritize revenue over addressing clear evidence of criminal activity on their premises.

255.    Grindr's corporate decisions—driven by profit, user growth, and monetization—

67

were not passive. They constituted affirmative, knowing participation in a system that foreseeably and repeatedly placed minors in sexual contact with adult predators. By designing and maintaining a platform that effectively served as a digital marketplace for predators to locate and exploit vulnerable minors, Grindr actively facilitated the trafficking venture, much like entities that knowingly provide infrastructure for trafficking operations while ignoring cries for help or visible signs of abuse.

256.    As a direct and proximate result of Grindr's knowing participation in this sex trafficking venture, Miranda Corsette was sexually exploited and lost her life. Her estate and surviving family members have suffered incalculable harm. Grindr's failure to address the glaring "red flags" of minor exploitation on its platform, coupled with its profit-driven design choices, created the very conditions that enabled the Grindr user to target and destroy Miranda Corsette, a troubled teen whose life was stolen by a predator exploiting her youthful vulnerabilities, in direct contravention of the TVPRA's purpose to protect such vulnerable youth from those who prey on their fragility, leaving her family without closure or her remains for burial.

257.    Grindr willfully, wantonly, and recklessly facilitated a sex trafficking venture, motivated solely by unreasonable financial gain, by designing a platform that enabled predators to exploit minors like Miranda Corsette Grindr's policymakers had actual knowledge of the unreasonably dangerous nature of these design choices, constituting intentional misconduct. Punitive damages, including up to four times compensatory damages, are warranted to punish Grindr's reprehensible conduct.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor *De Son Tort* of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury, and judgment against Defendant, Grindr, LLC, for suit costs,

pre-judgment interest, compensatory damages, and punitive damages in an amount sufficient to punish and deter Grindr's willful, wanton, and reckless facilitation of a sex trafficking venture and its creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death.

<u>**COUNT IX**</u>
<u>**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**</u>

258.    Plaintiff incorporates paragraphs 1–14, 23–25, 35–37, 66, 119, and 251–252 as if fully set forth herein.

259.    This count is based on Grindr's own design, operational decisions, and representations, not third-party content, and is not barred by 47 U.S.C. § 230.

260.    Plaintiff brings this cause of action against Defendant, Grindr, LLC, for violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–501.213 ("FDUTPA").

261.    As such, damages related to this count are limited to economic losses from subscription fees, excluding personal injury damages.

262.    At all times relevant, Grindr engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8), by operating Grindr Services, a geo-social networking application available for download and subscription on iOS and Android platforms, generating revenue through subscriptions (e.g., Grindr XTRA, Grindr Unlimited) and advertising.

**Statutory Framework: Intersection of FDUPTA and § 501.1737, Fla. Stat. (2024)**

263.    Florida's newly enacted § 501.1737, effective 2024, imposes strict obligations on commercial entities that publish or distribute sexually explicit material deemed "harmful to minors." Under the statute:

> A commercial entity that knowingly and intentionally publishes or distributes material harmful to minors on a website or application that contains a substantial portion of such material shall use reasonable age verification methods to verify that the user is 18 years of age or older and prevent access to the material by a person younger than 18 years of age.

§ 501.1737(2), Fla. Stat.)

264.    The statute defines "material harmful to minors" in accordance with § 847.001(6), Fla. Stat., to include any content that:

a.  Appeals to the prurient interest, applying contemporary community standards;

b.  Depicts or describes sexual conduct in a patently offensive way, as defined in § 847.001(19); and

c.  Lacks serious literary, artistic, political, or scientific value for minors.

265.    Where such material comprises more than one-third (33.3%) of a site or app's content, the operator must use anonymous or standard digital age verification, performed by a U.S.-based third-party vendor. Critically, the law prohibits retention or use of any identifying information beyond age confirmation. (§ 501.1738, Fla. Stat.)

### PER SE FDUTPA VIOLATION

266.    Violation of the age-verification mandate is expressly designated as a *per se* violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) as it states in relevant part:" A violation of subsection (2) or subsection (3) shall be an unfair and deceptive trade practice actionable under part II of this chapter." See § 501.1737(5)(a), Fla. Stat.

267.    FDUTPA, codified at § 501.201 et seq., prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." A statutory violation designated by law as deceptive or unfair constitutes a per se basis for liability under FDUTPA. See § 501.203(3)(c), Fla. Stat.

268.    Accordingly, no independent showing of deception, reliance, or bad faith is required—only a showing that the defendant failed to comply with § 501.1737's age-verification requirements. This private right of action entitles consumers or guardians to statutory damages, actual damages and attorneys' fees.

269.    Grindr committed deceptive acts and unfair practices in the conduct of its trade or commerce, in violation of Fla. Stat. § 501.204(1), by:

a.    Knowingly and recklessly publishing material harmful to minors, including pornographic content such as images of a young-looking woman with semen on her face, references to a "Cum Calculator," and blog posts promoting sexual activities, as defined by Fla. Stat. § 847.001(8), without implementing reasonable age verification methods to prevent access by persons under the age of eighteen (18) years, in violation of Fla. Stat. § 501.1737 (House Bill 3, effective July 1, 2024);

b. Maintaining an ineffective, self-reported age verification system that allowed minors to access Grindr Services easily, requiring only a self-reported birthdate without cross-checking against official documentation;

c. Misrepresenting Grindr Services as a "safe space" for users through statements in its Terms and Conditions of Service Agreement, marketing materials, onboarding screens, and public communications, claiming to enforce community standards and protect users, when in fact Grindr failed to implement adequate safeguards;

d. Representing to the public that "Safety is not merely the responsibility of users, and Grindr is continuously seeking to develop and improve security features – not only to protect users, but also to provide them with critical safety information needed to ensure a safe experience.";

e. Prioritizing financial gain over user safety by deliberately refusing to adopt inexpensive, industry-standard age verification technologies, such as biometric ID verification or facial age estimation costing $0.10 to $1.00 per verification, despite their availability and effectiveness (Am. Compl. ¶ 66).

270.   Grindr's violation of Fla. Stat. § 501.1737 constitutes a *per se* violation of FDUTPA, under Fla. Stat. § 501.203(3)(c). Specifically, Grindr Services knowingly or recklessly published material harmful to minors, as defined by Fla. Stat. § 847.001(8), including but not limited to the following:

a.   A promotional video on the X platform featuring a young-looking woman with semen dripping from her face;

b.   "Cum Calculator" encouraging users to track nutritional intake from semen;

c.   Grindr's "National Send Nudes Day" campaign urging users to *send nudes to…your boyfriend, girlfriend, best friend, side hoe."*

d.    Blog posts such as:

i.  "Benefits of Swallowing Cum,"

ii. "Is Semen Good for Your Skin?,"

iii. "How to Make Semen Taste Better," and

iv. "What Does Cum Taste Like?"

271. Further, Grindr's platform facilitates frequent exchanges of explicit nude photos, including those known as "dick pics," through direct messaging and a private "Gallery" feature, some of which may constitute child pornography due to the presence of minors enabled by inadequate age verification, Julie Kvedar, *Back to the Grind: Rethinking Grindr's Accountability for User Content*, 29 S. Cal. Interdisc. L.J. 541, 543, 558–59 (2020).

272.     This content appeals to prurient interests, is patently offensive to prevailing community standards for minors, and lacks serious literary, artistic, political, or scientific value for minors.

273.     Grindr failed to implement "reasonable age verification methods," such as government-issued ID checks, biometric authentication, or third-party database cross-referencing, as required by Fla. Stat. § 501.1737(2), relying instead on a self-reported age gate that minors easily bypassed.

274.     Grindr's illusory age verification, requiring only a self-reported birthdate, exacerbates the risk of minors accessing and sharing explicit content, potentially leading to the distribution of child pornography, a federal crime under 18 U.S.C. § 2252(a)(2), *Id.* at 558–59.

275.     Grindr's deceptive practices caused Miranda Corsette to incur economic damages by paying for subscriptions, such as Grindr XTRA, on February 14, 2025, which she would not have made absent Grindr's misrepresentations.

276.     Grindr's acts and practices were deceptive because they misled Miranda Corsette, a minor acting reasonably under the circumstances, to believe Grindr Services were safe. Miranda Corsette relied on Grindr's onboarding screens, in-app safety tips, and marketing assurances of active monitoring and underage access prevention when she accessed the platform on or about February 14, 2025, and when she purchase or subscribe to Grindr Services.

277.     Grindr's acts and practices were unfair because they offended established public policy, were immoral, unethical, oppressive, and substantially injurious to consumers, particularly minors.

278.     By hosting pornographic content, failing to verify user ages, and designing a platform that facilitated access to harmful material, Grindr violated societal expectations and

industry standards for protecting minors from harmful online environments and adult sexual predators who prey upon minors, including Miranda Corsette. *Id.* at 543, 558–59.

279.    Grindr's violation of Fla. Stat. § 501.1737 regulates commercial conduct, not speech, and is constitutional.

280.    Grindr knew or should have known that its practices were deceptive and unfair, as it was on notice of the risks to minors through industry standards for age verification and scholarly analysis highlighting the platform's facilitation of pornographic content due to inadequate age verification, *Id.* at 558–59.

281.    Damages are limited to economic losses from subscription fees, excluding personal injury damages.

282.    As a direct and proximate result of Grindr's deceptive and unfair trade practices, including its per se violation of Fla. Stat. § 501.1737, Miranda Corsette accessed Grindr Services and incurred direct economic damages by paying for subscriptions or in-app purchases, such as Grindr XTRA or Grindr Unlimited, on or about February 14, 2025. Miranda Corsette relied on Grindr's misrepresentations that the platform was safe and actively monitored, inducing her to make these payments when in fact Grindr's services were not safe, nor were they actively monitored.

283.    Had Miranda Corsette known the true nature of Grindr's practices, including its failure to prevent minor access and its hosting of pornographic content, she would not have purchased or subscribed to Grindr Services.

284.    The Estate of Miranda Corsette suffered actual damages recoverable under FDUTPA, limited to the direct economic losses incurred by Miranda Corsette for subscription fees

or in-app purchases made to access Grindr Services, which were induced by Grindr's deceptive and unfair practices.

285.    Plaintiff is entitled to actual damages, attorney's fees, and costs under Fla. Stat. § 501.211(2), as well as pre-judgment interest, due to Grindr's violations of FDUTPA.

286.    Grindr's conduct is not shielded by 47 U.S.C. § 230, as this count arises from Grindr's own deceptive and unfair practices, including its platform design, marketing representations, and failure to implement age verification, rather than liability for third-party content.

287.    Grindr committed deceptive acts and unfair practices in violation of Fla. Stat. § 501.204(1), including:

a. Failing to implement reasonable age verification methods, in violation of Fla. Stat. § 501.1737, allowing minors like Miranda Corsette to access its adult-oriented platform;

b. Misrepresenting Grindr Services as a "safe space" in its Terms and Conditions, marketing materials, and onboarding screens, despite lacking adequate safeguards; c. Publishing material harmful to minors, such as explicit content and features like the "Cum Calculator," without proper age verification.

288.    These practices directly caused Miranda Corsette to suffer economic harm by inducing her to pay subscription fees for Grindr Services on or about February 14, 2025, under the false belief that the platform was safe.

**Standing for Declaratory Relief**

289.    The Estate of Miranda Corsette has standing to seek declaratory relief under FDUTPA because Miranda Corsette suffered a concrete economic injury—payment of subscription fees—caused by Grindr's deceptive and unfair practices during her lifetime. This past

injury establishes an actual controversy redressable by a declaratory judgment, satisfying Article III requirements. See *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937).

290.    The Estate seeks declaratory relief that Grindr's practices violate FDUTPA to protect the consuming public, pursuant to Fla. Stat. § 501.211(1).

291.    Unlike injunctive relief, which requires a likelihood of future harm, declaratory relief focuses on resolving existing legal disputes based on past harm. See *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Here, the Estate seeks to clarify Grindr's violations of FDUTPA stemming from Miranda Corsette's economic losses, not to prevent future injury to Miranda Corsette, who is deceased.

### Utility of Declaratory Relief in This Litigation

292.    A declaratory judgment is sought to resolve the following critical questions of law, providing clarity on the parties' legal rights and obligations without encroaching on the jury's role in determining factual disputes. These legal determinations will streamline the litigation, particularly with respect to negligence per se and duty-related claims:

### a. Is Miranda Corsette within the class of persons protected by Fla. Stat. § 501.211(2)?

293.    A declaration that Miranda Corsette, as a minor who accessed Grindr Services and suffered economic harm, is within the class of persons protected by Florida Statute § 501.211(2) will resolve a purely legal question: whether Miranda Corsette meets the statutory definition of a person entitled to relief under FDUTPA. Section 501.211(2) grants a private right of action to "any person who has suffered a loss as a result of a violation of this part." As a consumer allegedly harmed by Grindr's deceptive practices, Miranda Corsette's inclusion in this class is a matter of statutory interpretation, not a factual dispute. This declaration will confirm her legal standing and

establish that she is among the class FDUTPA intends to protect, a key element for a negligence per se claim.

### b.    Does Fla. Stat. § 501.211(2) apply to Grindr?

294.    A declaration that Florida Statute § 501.211(2) applies to Grindr will determine whether Grindr's operation of a geo-social networking platform constitutes "trade or commerce" under Fla. Stat. § 501.203(8), subjecting it to FDUTPA's prohibitions on deceptive and unfair practices. This is a legal question based on the statute's scope and Grindr's business activities, requiring no factual findings about specific conduct. Resolving this will establish that Grindr is governed by FDUTPA, providing a foundation for assessing its statutory duties in this case.

### c.    Does Grindr have a statutory duty to Miranda Corsette under FDUTPA?

295.    A declaration that Grindr has a statutory duty to Miranda Corsette under FDUTPA will clarify whether Fla. Stat. § 501.204(1)—which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce"—imposes a legal obligation on Grindr to protect users like Miranda Corsette from deceptive practices. This is a question of law, derived from the statute's language and purpose, and does not require the court to determine whether Grindr breached that duty (a factual issue reserved for the jury). Establishing this duty is essential for both FDUTPA claims and negligence-related arguments.

### d.    Does Fla. Stat. § 501.1737 apply to Grindr?

296.    A declaration that Florida Statute § 501.1737 applies to Grindr will resolve whether Grindr's platform, which publishes material that may be harmful to minors, falls within the statute's scope. Fla. Stat. § 501.1737 requires platforms that knowingly publish such material without serious artistic, scientific, or other value to implement reasonable age verification methods. This is a legal question concerning the statute's applicability to Grindr's operations, not

whether Grindr violated the statute (a factual issue for the jury). Resolving this will confirm that Grindr has a legal duty under Florida law to implement reasonable age verification, supporting claims of negligence per se and clarifying its obligations under FDUTPA.

**Specific Declarations Sought**

297.    Plaintiff respectfully requests that the Court declare:

a. Miranda Corsette is within the class of persons protected by Fla. Stat. § 501.211(2);

b. Fla. Stat. § 501.211(2) applies to Grindr's operation of Grindr Services;

c. Grindr has a statutory duty to Miranda Corsette under FDUTPA to avoid deceptive and unfair practices;

d. Fla. Stat. § 501.1737 applies to Grindr, meaning Grindr's platform falls within the statute's scope and is subject to its age verification requirements.

**How These Declarations Assist the Litigation**

298. These declarations are strictly legal in nature—interpreting FDUTPA's scope, applicability, and duties—ensuring the court does not invade the jury's province. By providing this legal clarity, the court will facilitate a more efficient and focused resolution of Miranda Corsette's claims, particularly those tied to negligence per se and duty. Specifically:

a.   Negligence Per Se: A declaration that Fla. Stat. § 501.1737 applies to Grindr will establish that Grindr has a statutory duty to implement reasonable age verification. This legal finding will support a negligence per se claim by confirming the existence of a duty, leaving the jury to determine whether Grindr breached that duty and caused harm.

b.   Duty in Negligence Claims: Declarations that FDUTPA applies to Grindr and imposes a statutory duty will clarify the legal standard of care Grindr owes to users like Miranda Corsette, streamlining negligence claims.

c.  Public Interest: These rulings will serve the public interest by reinforcing FDUTPA's purpose of protecting consumers from deceptive practices (*Davis v. Powertel, Inc.*, 776 So. 2d 971, 975 (Fla. 1st DCA 2000)), potentially deterring similar conduct by Grindr and other platforms.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury, and judgement against Defendant Grindr, LLC for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous platform motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death.

<u>**COUNT X**</u>
<u>**NEGLIGENT DESIGN OF GEO-SOCIAL NETWORKING APPLICATION**</u>

299.  Plaintiff incorporates each allegation in paragraphs 1 through 125 as if fully set forth herein.

300.  Defendant, Grindr, LLC, was at all times relevant to this suit, and now is, engaged in the business of designing and operating a geo-social networking application, known as Grindr Services, available on iOS and Android platforms, which enables users to locate and connect with nearby individuals for immediate sexual encounters through hyper-precise geolocation technology and a user registration process that includes age verification.

301.  Grindr is the designer and sole distributor of the Grindr application, placing it into the stream of commerce and deriving revenue and profits from its distribution and use, including through subscriptions (e.g., Grindr XTRA, Grindr Unlimited) and targeted

advertising.

302.    The Grindr application is a product under Florida product liability law, as it is a tangible, mass-produced digital application designed and distributed by Grindr into the stream of commerce, consistent with *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86–87 (Fla. 1976), which holds that strict liability applies when a manufacturer places a product on the market, knowing it is to be used without inspection for defects, and it causes injury due to a defect.

303.    Grindr's role as the designer and distributor, profiting from the application's use, places it in the best position to ensure safety and bear the cost of injuries, as recognized in *Samuel Friedland Family Enter. v. Amoroso*, 630 So. 2d 1067, 1068–69 (Fla. 1994).

304.    Grindr's application is not merely incidental to a service but is the core product designed, mass-marketed, and distributed by Grindr to facilitate its business model, making it subject to product liability for design defects, per *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 502–03 (Fla. 2015).

305.    Section 230 of the Communications Decency Act, 47 U.S.C. § 230, does not preempt product liability claims against Grindr, as it contains no mention of product liability and does not expressly displace common law product liability under Florida law, which requires clear legislative intent to override, per *Kitchen v. K-Mart Corp.*, 697 So. 2d 1200, 1207 (Fla. 1997).

306.    There is no provision in Section 230 that sets forth that Grindr's application is safe or free from defects, nor any indication of intent to insulate Grindr from product liability claims associated with the design of its application.

307.    Extending Section 230 to shield Grindr from liability for its defective product design would stretch the statute far beyond its original meaning, which is limited to immunity for third-party content, as cautioned by Justice Thomas in *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S. Ct. 13, 14 (2020).

308.    Plaintiff's claims focus on the tangible design of the Grindr application, consistent with the Restatement (Third) of Torts § 19, comment d (1998), recognizing computer software as a product for strict liability purposes.

309.    Users of Grindr Services create accounts by submitting a self-reported birthdate, with no cross-checking against official documentation or third-party verification at sign-up, enabling minors, such as Miranda Corsette, to easily bypass age restrictions and access the platform, exposing them to adult users, such as the 35-year-old male who targeted Miranda Corsette.

310.    Grindr's age verification system, relying solely on self-reported birthdates, is far behind 2025 industry standards, which include technologies like Yoti's facial age estimation (99.93% accuracy for 13–17-year-olds, costing $0.10– $0.30 per verification) and Jumio's ID verification (99.9% accuracy, costing $0.50–$1.00 per verification), allowing minors to access the adult-oriented platform undetected.

311.    Grindr's design facilitates predatory interactions through hyper-precise geolocation technology, accurate to within a few feet, which arranges user profiles from nearest to farthest, enabling predators to locate vulnerable users, including minors, in real-time.

312.    Features like "Twink Tribe," which help predators find underage Grindr

users, further attract predators to target minors, creating a dangerous environment for vulnerable users.

313.    Grindr, LLC owed a duty to the general public and specifically to Miranda Corsette to exercise reasonable care in the design and operation of its platform, to ensure that minors could not access its adult-oriented services and that the app's features did not facilitate predatory interactions, as Grindr's conduct created a foreseeable zone of risk to vulnerable users, per *McCain v. Florida Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992).

314.    Grindr breached its duty to Miranda Corsette in that the aforementioned company, among other actions and inactions:

a. Failed to implement robust age verification technologies, such as Yoti's facial age estimation or Jumio's ID verification, despite knowing that 90% of teens bypass self-reported age gates (Pew Research Center, 2024), allowing minors like Miranda Corsette to access the platform;

b. Failed to include warnings that the app's self-reported age verification and hyper-precise geolocation features enabled predators to target minors;

c. Promoted predatory behavior through hyper-precise geolocation, which allowed users to pinpoint minors like Miranda Corsette in real-time without safeguards like geofencing or temporal location scrambling, costing $0.05–$0.10 per user;

d. Promoted exploitation of minors through features like "Twink Tribe" tags, which sexualized youthful appearances and, combined with ineffective age verification, attracted predators targeting minors like Miranda Corsette;

e. Failed to implement geofencing or temporal location scrambling to restrict

interactions in high-risk areas, such as schools or playgrounds, or obscure precise user locations, enabling predators to locate minors;

f. Failed to monitor or suspend accounts exhibiting grooming patterns, despite the foreseeability of minors accessing the platform due to sham age verification.

315.    The negligent design of Grindr's platform, a product under Florida law, directly and proximately caused harm to Miranda Corsette by enabling her to access the adult-oriented app undetected on or about February 14, 2025, due to ineffective age verification, and by allowing a 35-year-old male predator to locate and target her using hyper-precise geolocation and youth-oriented features like "Twink Tribe."  Thus, the criminal acts committed against M.C. by an adult Grindr user were a reasonably expected manifestation of the very risk Grindr created and failed to guard against.

316.    These design flaws made it easy for the predator to identify Miranda, a 16-year-old minor at 5'3" and 90 pounds, as a vulnerable target, leading to an in-person meeting that same day, her subsequent abduction, week-long torture, rape, and murder by suffocation, and the desecration of her remains, as the app's design foreseeably facilitated predatory interactions with a minor.

317.    Grindr was aware of the risks posed by its design, as evidenced by prior incidents, user complaints, a 2019 UK inquiry linking Grindr to over 60 child sexual abuse cases, and a 2024 federal court ruling (*T.V. v. Grindr, LLC*, No. 3:22-cv-864-WGY-PDB, 2024 WL 48106), yet chose not to implement safeguards, prioritizing user growth and profits, making the harm to Miranda Corsette a foreseeable consequence of its design choices.

318.    As a direct and proximate result of the negligence of Grindr, LLC, Plaintiff, Miranda Corsette, suffered severe emotional distress and bodily injuries culminating in her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life. These losses are recoverable by the Estate of Miranda Corsette.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury, and judgment against Defendant, Grindr, LLC, for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous product motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death.

## COUNT XI
## STRICT LIABILITY DEFECTIVE DESIGN

319.    Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, realleges paragraphs 1 through 125  and incorporates the same by reference herein.

320.    Plaintiff claims that Grindr, LLC is liable to Plaintiff under the theory of strict products liability.

321.    Grindr was at all times relevant to this suit, and now is, engaged in the business of designing and placing into the stream of commerce a digital application, known as Grindr Services, for sale to, and use by, members of the public, including the Grindr

application used by the adult male who targeted Miranda Corsette.

322.    The application is a product under Florida product liability law, as it is a tangible, mass-produced digital application designed and distributed by Grindr, which derives revenue and profits from its use, placing Grindr in the best position to control risks, per *West v. Caterpillar Tractor Co*., 336 So. 2d 80, 86–87 (Fla. 1976), and *Aubin v. Union Carbide Corp*., 177 So. 3d 489, 502–03 (Fla. 2015).

323.    The Grindr application's age verification and geolocation systems were defective and unreasonably dangerous when it entered into the stream of commerce, as it relied on self-reported birthdates for age verification, allowing minors like Miranda Corsette to access the platform, and facilitated predatory interactions through hyper-precise geolocation data, accurate to within a few feet, and features like "Twink Tribe" that was designed to facilitate a subset of Grindr users who are sexually attracted to children or users that look like children to find them on the Grindr application.

324.    The Restatement (Third) of Torts § 19, comment d, recognizes computer software as a product.

325.    Section 230 of the Communications Decency Act does not insulate Grindr from product liability claims, as it contains no mention of product liability and does not expressly preempt Florida's common law of product liability, which requires clear legislative intent to displace, per *Kitchen v. KMart Corp*., 697 So. 2d 1200, 1207 (Fla. 1997).

326.    The defective and unreasonably dangerous nature of the Grindr app's design

was an actual and proximate cause of Miranda Corsette's injuries and damages, as it allowed her to create an account undetected on or about February 14, 2025, due to sham age verification, and enabled a 35-year-old male violent convicted felon and predator to locate and target her using the app's hyper-precise geolocation and youth-oriented targeting features including, but not limited to "Twink Tribe" and "Daddy Tribe" and contained inadequate safety measures to counteract this danger. Thus, the criminal acts committed against M.C. by an adult Grindr user were a reasonably expected manifestation of the very risk Grindr created and failed to guard against.

327.    These defects, known or should have been known to Grindr, ignored available technologies like Yoti's facial age estimation (99.93% accuracy, $0.10–$0.30 per verification) and Jumio's verification (99.9% accuracy, $0.50–$1.00 per verification), and failed to incorporate technologies such as facial age recognition,  geofencing or temporal scrambling, facilitating an immediate in-person meeting that led to Miranda's abduction, week-long torture, rape, murder by suffocation, and the desecration of her remains.

328.    Grindr's knowledge of the risks, through prior incidents, user complaints, a 2019 UK inquiry linking Grindr to over 60 child sexual abuse cases, and a 2024 federal court ruling (T.V. v. Grindr, LLC, No. 3:22-cv-864-WGY-PDB, 2024 WL 48106), underscores that the defects were foreseeable, yet Grindr chose not to implement safeguards, prioritizing profits over safety, directly causing the harm to Miranda Corsette.

329.    As a direct and proximate result of those deviations and departures from the standard of care, Plaintiff, Miranda Corsette, suffered severe emotional distress and bodily

injuries culminating in her death, pain and suffering, mental anguish, disability, disfigurement, and loss of capacity for the enjoyment of life.

330.    These losses are recoverable by the Estate of Miranda Corsette.

**WHEREFORE**, Plaintiff, Denean Wetton, as Executor De Son Tort of the Estate of Miranda Corsette, a minor, and on behalf of the Estate of Miranda Corsette and the survivors of the Estate, demands trial by jury, and judgment against Defendant, Grindr, LLC, for suit costs, pre-judgment interest, compensatory damages, and punitive damages up to four times compensatory damages to punish Grindr's willful, wanton, and reckless creation of a dangerous product motivated by unreasonable financial gain that caused Miranda Corsette's rape, torture, and death

Dated: July 8, 2025.

**KAISER ROMANELLO, P.A.**
By: /s/  *Lorne Adam Kaiser*
Lorne Adam Kaiser
*Kaiser Romanello, P.A.*
Attorneys for Plaintiff
11555 Heron Bay Boulevard, Suite 200
Parkland, Florida 33076
Telephone: 954.603.0100
Facsimile: 954.827.0472
Email: lkaiser@kaiserromanello.com
Florida Bar No.: 0568491

## CERTIFICATE OF SERVICE

I hereby certify that, on July 8, 2025, I served a copy of the foregoing to Defendant via email correspondence to AmbikaKumar@dwt.com.

KAISER ROMANELLO, P.A.
Attorneys for Plaintiff
11555 Heron Bay Boulevard, Suite 200
Parkland, Florida 33076
Telephone: 954.603.0100
Facsimile: 954.827.0472
lorne@injurymatters.com

By: /s/ *Lorne Adam Kaiser*

Lorne Adam Kaiser, Esquire
Florida Bar Number 0568491