UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RITA MARIA FARNHAM,
as Personal Representative of the
Estate of Miranda Corsette,

    Plaintiff,

v.                                            Case No: 8:25-cv-1260-TPB-AEP

GRINDR, LLC,

    Defendant.
_____/

## ORDER GRANTING IN PART "DEFENDANT'S MOTION TO COMPEL ARBITRATION OR ALTERNATIVELY, TO TRANSFER VENUE"

This matter is before the Court on "Defendant's Motion to Compel Arbitration or Alternatively, to Transfer Venue," filed on August 13, 2025. (Doc. 35). Plaintiff Rita Maria Farnham, as personal representative of the estate of Miranda Corsette, filed a response in opposition on September 8, 2025. (Doc. 44). Defendant Grindr, LLC filed a reply on September 22, 2025. (Doc. 49). Plaintiff filed a sur-reply on September 26, 2025. (Doc. 50). Defendant filed a notice of supplemental authority on September 30, 2025. (Doc. 51). After reviewing the motion, response, reply, sur-reply, notice of supplemental authority, court file, and the record, the Court finds as follows:

### Background

This case stems from the brutal torture and murder of Miranda Corsette, a 16-year-old girl from Pinellas County, Florida. On February 14, 2025, Corsette met Steven Gress, a 35-year-old man, on Grindr, a dating app designed to facilitate primarily homosexual romantic encounters between men, women, and transgender

individuals.[1] Although Plaintiff does not identify the man by name in the amended complaint, his identity is widely known and easily accessible through basic internet searches as the events have generated substantial news coverage. After meeting on the app, Gress invited Corsette to his duplex in St. Petersburg, Florida. Corsette accepted his offer and was thereafter introduced to Gress's domestic partner, Michelle Brandes, a woman, who is also unidentified in the amended complaint but whose identity is widely known and easily accessible.

Corsette, Gress, and Brandes lived together for a few days before their relationship turned violent. Allegedly, the three got into a dispute, and as a result, Gress and Brandes severely beat Corsette. The beating was extreme, torturous, and continued for several days. On or about February 24, 2025, Corsette was killed when a pool ball wrapped in a sock was shoved into her mouth, and then her head and face were wrapped in saran wrap, obstructing Corsette's airways and suffocating her. Following her death, Gress transported Corsette's body to another location before he dismembered Corsette's body with a chainsaw. He then disposed of the remains in a dumpster in Ruskin, Florida, which was eventually taken to an incinerator. Gress and Brandes have been charged with first-degree murder, and their criminal trials are currently pending.

Plaintiff Rita Maria Farnham, the personal representative of Corsette's estate, brings claims against Defendant for wrongful death due to product defect (Count I),

---

[1] According to the amended complaint, Grindr, LLC is a California limited liability company that operates Grindr, a geo-social networking application available on iOS and Android platforms.

wrongful death due to negligent product design (Count II), wrongful death due to negligence (Count III), negligence (Count IV), intentional infliction of emotional distress (Count V), negligent infliction of emotion distress (Count VI), negligent misrepresentation (Count VII), liability under 18 U.S.C. § 1595 (Count VIII), liability under the Florida Deceptive and Unfair Trade Practices Act (Count IX), negligent design of geo-social networking application (Count X), and strict liability defective design (Count XI). Defendant has moved to compel arbitration, or alternatively, to transfer venue the Central District of California.

## Legal Standard

The United States Supreme Court has explained that arbitration provisions are "a species" of forum selection clauses. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 698 (2007) (Ginsburg, J., dissenting) (internal citations omitted); *see also VI MedRx, LLC v. Hurley Consulting Assocs., Ltd.*, No. 3:11-cv-1034-J-37TEM, 2012 WL 10494, at *2 (M.D. Fla. Jan. 3, 2012). The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). In fact, the Eleventh Circuit Court of Appeals has "recognized that the FAA creates a presumption of arbitrability such that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (internal quotations omitted). "Under the FAA, a party seeking to compel arbitration must demonstrate that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement."

*Garcia v. Church of Scientology Flag Serv. Org., Inc.*, No. 8:13-cv-220-T-27TBM, 2015 WL 10844160, at *3 (M.D. Fla. Mar. 13, 2015) (internal quotations omitted)).

## Analysis

"The existence of a valid arbitration agreement is a threshold issue for determining the propriety of a motion to compel arbitration." *Adams v. Lashify, Inc.*, No. 6:23-cv-243-PGB-DCI, 2023 WL 5573822, at *2 (M.D. Fla. Aug. 29, 2023). Defendant argues that Corsette entered into a valid arbitration agreement by agreeing to the terms and conditions when creating her Grindr account. In this case, Defendant has presented evidence of a presumptively valid arbitration agreement electronically signed by Corsette when she created her Grindr account. The agreement broadly covers any dispute, claim, or controversy between Corsette and Defendant, and Corsette agreed to resolve disputes through arbitration.

Plaintiff does not contest the authenticity of the arbitration agreement. Rather, she opposes submitting this dispute to arbitration on other grounds, including (1) the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA"); (2) public policy, (3) the arbitration agreement is invalid because Corsette was a minor at the time she agreed to the arbitration agreement, (4) Plaintiff's tort claims fall outside the scope of the arbitration agreement, and (5) unconscionability.

### *EFAA*

The EFAA allows a plaintiff in a sexual assault or sexual harassment-related suit to elect to litigate in a judicial forum rather than an arbitral one. 9 U.S.C. § 402(b). The EFAA specifically provides that "no predispute arbitration agreement … shall be valid or enforceable with respect to a case which is filed

under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." *Id.*

Plaintiff contends that this case involves a sexual assault dispute within the meaning of the EFAA. The Court disagrees. The enactment of the EFAA "was primarily intended to preclude arbitration in employment disputes." *M.D. v. Verizon Commc'ns Inc.*, No. 5:24-cv-474-BO-BM, 2025 WL 2712831, at *2 (E.D.N.C. Sep. 23, 2025). And as to its application to consumers, "the EFAA's purpose was to cover situations where 'a consumer who signs an arbitration clause . . . is assaulted at a business.'" *Id.* The concerns underlying the EFAA – the obscuring of sexual assault and sexual harassment misconduct by companies – simply does not apply to the instant case as there are no allegations of sexual harassment by Grindr or Grindr employees, and Gress and Brandes had no legal relationship to Grindr. Plaintiff alleges that Grindr enabled Gress's and Brandes's sexual assault by giving them access to Corsette – even though this may be a wrong, it is not one intended to fall within the scope of the EFAA. *See id.* Consequently, the Court concludes that the EFAA does not bar the arbitration of Plaintiff's claims.

*Public Policy*

Plaintiff argues that Grindr's terms of service – including the arbitration provision – are void against public policy because Grindr's terms of service waive punitive damages, cap compensatory damages, designate arbitration, apply California law, and provide for a California venue. Plaintiff complains that California law

categorically eliminates entire categories of recovery, such as punitive damages and survivors' grief and sorrow.

Although California law may be less favorable, the application of California law does not deprive Plaintiff of a remedy. *See Lebedinsky v. MSC Cruises, S.A.*, 789 F. App'x 196, 202-3 (11th Cir. 2019); *see also Smith v. Mt. Hawley Ins. Co.*, No: 8:22-cv-1386-CEH-TGW, 2022 WL 16856418, at *5 (M.D. Fla. Nov. 10, 2022) (quoting *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1297 (11th Cir. 1998)). Ultimately, California is an adequate venue so long as it allows for litigation of the dispute and potentially offers redress for a plaintiff's injuries. *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2001).

"'An adequate forum need not be a perfect forum,' but it must provide a satisfactory remedy." *Id.* (quoting *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1179, 1283 (11th Cir. 2001)). California may not be perfect, but it is certainly adequate here. As such, the Court concludes that the arbitration agreement at issue in this case is not void against public policy.

*Formation Issues, Including Corsette's Status as Minor*

Plaintiff also opposes arbitration by arguing that no enforceable agreement to arbitrate exist between Corsette and Grindr because Grindr's terms expressly exclude minors, precluding offer, mutual assent, and satisfaction of the adulthood condition precedent and rendering any agreement void *ab initio*.

Florida law does not treat the failure to fulfill a condition precedent as an issue of contract formation – instead, it is an affirmative defense to be decided by the

arbitrator. *See Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 996-97 (11th Cir. 2012).

In addition, the arbitration provision states: "You and Grindr agree that any dispute arising out of or relating in any way to Your use of or access to the Grindr Services, including the *validity*, scope, interpretation, breach, enforcement, or termination of this Agreement, or otherwise relating to Grindr in any way" will be resolved in arbitration (emphasis added). Similar delegation language has been upheld by the Eleventh Circuit because it clearly demonstrates the parties' intent to arbitrate the gateway issue of arbitrability. *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017); *Parnell v. CashCall, In*c., 804 F.3d 1142, 1148 (11th Cir. 2015); *see also Schuster v. Uber Techs., Inc.*, No. 8:18-cv-2389-T-35JSS, 2019 WL 545441, at *2 (M.D. Fla. Feb. 7, 2019).

Consequently, the Court concludes that the formation issues raised by Plaintiff, including Corsette's status as a minor, are properly decided by the arbitrator rather than the Court.[2]

### *Scope and Tort Claims*

Plaintiff argues that the tort claims asserted in the instant case are outside of the scope of the arbitration agreement. Parties may agree to arbitrate gateway questions of arbitrability, including the scope of the arbitration agreement. *Jones*, 866

---

[2] The Court notes that contracts entered into by minors are *voidable*, not void *ab initio*. *See Global Travel Marketing Inc. v. Shea*, 908 So.2d 392, 402 (Fla. 2005) (citing *Lee v. Thompson*, 168 So. 848, 850 (Fla. 1936)); *see also Mossler Acceptance Co. v. Perlman*, 47 So.2d 296, 298 (Fla. 1950). Moreover, infancy is a defense to enforceability and does not relate to contract formation. *See id.; see also Orellana v. Roblox Corp.*, 769 F. Supp. 2d 1273, 1284 (M.D. Fla. March 4, 2025).

F.3d at 1264 (citing *Rent-a-Center, W., Inc. v. Jackson*, 560 U.S. 63, 68-69 (2010)). The Court again emphasizes the language of the arbitration provision, which states: "You and Grindr agree that any dispute arising out of or relating in any way to Your use of or access to the Grindr Services, including the validity, *scope*, interpretation, breach, enforcement, or termination of this Agreement, or otherwise relating to Grindr in any way" will be resolved in arbitration (emphasis added). Whether the tort claims at issue fall within the scope of arbitrability is a question for the arbitrator.

*Unconscionability*

Plaintiff argues that the arbitration provision of the terms and conditions is unconscionable. "[T]o invalidate an arbitration clause, a party must establish both procedural and substantive unconscionability." *Garcia*, 2015 WL 10844160, at *5; *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (Cal. 2000) (explaining both procedural and substantive unconscionability must be present for a court to exercise its discretion to refuse to enforce a contract or clause). "Procedural unconscionability 'relates to the manner in which the contract was entered,' and substantive unconscionability asks whether the terms of the agreement are themselves too unfair to enforce." *Garcia*, 2021 WL 5074465, at *6.

When evaluating whether an agreement is unconscionable, both California and Florida employ a balancing, or "sliding scale," approach. *See, e.g.*, *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 247 (Cal. 2012); *Armendariz*, 24 Cal.4th at 114; *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014). "[B]oth the procedural and substantive aspects of unconscionability must be present, although not necessarily to the same degree, and both should be evaluated

interdependently rather than as independent elements." *Id.* at 1161. Ultimately, "[t]he overarching unconscionability question is whether an agreement is imposed in such an unfair fashion and so unfairly one-sided that it should not be enforced." *OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 124 (Cal. 2019); *see also Basulto*, 141 So.3d at 1157 (Unconscionability is used "to prevent the enforcement of contractual provisions that are overreached by one party to gain 'an unjust and undeserved advantage which it would be inequitable to permit him to enforce.'"). "The burden of proving unconscionability rests upon the party asserting it." *OTO*, 8 Cal. 5th at 126; *see also SA-PG Sun City Center, LLC v. Kennedy*, 79 So.3d 916, 919 (Fla. 2d DCA 2012).

<u>Procedural Unconscionability</u>

Plaintiff contends that the agreement is procedurally unconscionable due to unequal power, no meaningful choice, and Corsette's inability to comprehend or negotiate. "The central question with respect to the procedural component of unconscionability 'is whether the complaining party lacked a meaningful choice when entering into the contract.'" *Garcia*, 2015 WL 10844160, at *5 (quoting *Basulto*, 141 So. 3d at 1157 n.3). A contract of adhesion strongly indicates that the contract is procedurally unconscionable, but "the presence of an adhesion contract alone does not require a finding of procedural unconscionability." *Garcia*, 2021 WL 5074465, at *6 (quoting *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 40 (Fla. 4th DCA 2005)). Rather, the important question is whether the circumstances created such oppression or surprise that closer scrutiny of the fairness of the agreement is required. *OTO, L.L.C.*, 8 Cal.5th at 126. Unequal bargaining power on its own is *not* enough to render an arbitration agreement unenforceable. *Caley v. Gulfstream*

*Aerospace Corp*, 428 F.3d 1359, 1377 (11th Cir. 2005) (quoting *Gilmer v. Interstate/Johnson Lan Corp.*, 500 U.S. 20, 32-33 (1991)).

When considering this issue, it is important to recognize that Corsette created at least three Grindr accounts. Thus, she had the opportunity to review the arbitration agreement at least three times. A failure to comprehend or negotiate arbitration, or unequal bargaining power, does not justify a repeated refusal to read an agreement and should not negate the enforceability of an arbitration agreement. In addition, considering the factors related to oppression, the Court finds that Plaintiff has failed to put forth sufficient argument or evidence to demonstrate unfair oppression related to the arbitration provisions.[3] Consequently, procedural unconscionability has not been established here.

Substantive Unconscionability

Even if the Court were to find the arbitration agreement was procedurally unconscionable to some degree, Plaintiff has not demonstrated that the agreement is substantively unconscionable. Substantive unconscionability requires a determination of whether the terms are "unreasonably favorable" to one party over the other. *Garcia*, 2015 WL 10844160, at *5. In making the determination, a court should "ask[] whether the more powerful party overreached and 'gained an unjust and undeserved

---

[3] "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *OTO, L.L.C.*, 8 Cal.5th at 126-27 (quoting *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1348 (Cal. Ct. App. 2015)).

advantage which it would be inequitable to permit him to enforce." *Id.* (quoting *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. 3d DCA 1982)).

The agreement in this case is a bilateral agreement to arbitrate disputes, and it does not appear to include "one-sided terms shielding Grindr from child exploitation accountability." As for Plaintiff's argument that the terms of the arbitration agreement "waive[] jury trials," the Court notes that "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." *See Caley v. Gulfstream Aerospace Corp*, 428 F.3d 1359, 1371 (11th Cir. 2005) (internal quotation and citation omitted).

For the reasons stated, Plaintiff's unconscionability arguments do not provide a basis to invalidate the arbitration agreements at issue here.

## Conclusion

For the reasons discussed above, the arbitration agreement in this case is enforceable. In accordance with Eleventh Circuit precedent, this case is stayed. *See, e.g., Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992); 9 U.S.C. § 3; *Giraud v. Woof Gang Bakery*, No. 8:17-cv-2442-T-26AEP, 2018 WL 2057814 (M.D. Fla. May 3, 2018)). Because the Court has concluded that arbitration is required, Defendant's alternative request to transfer venue is denied as moot.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant's Motion to Compel Arbitration or Alternatively, to Transfer Venue" (Doc. 35) is hereby **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

(2) The motion is **GRANTED** to the extent the Court finds that Defendant may enforce the arbitration agreement in this case.

(3) The motion is **DENIED AS MOOT** as to the alternative request to transfer venue.

(4) This case is **STAYED** pending the completion of arbitration, and the parties are directed to notify the Court within 14 days of the resolution of the arbitration proceedings.

(5) The Clerk is directed to terminate all pending motions and deadlines, and thereafter close this case.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this <u>3rd</u> day of November, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE